Brian S. Kabateck (State Bar No. 152054)
 (bsk@kbklawyers.com)
Richard L. Kellner (State Bar No. 171416)
 (rlk@kbklawyers.com)
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, CA 90017
Telephone:  213.217.5000
Facsimile:   213.217.5010

Glenn C. Nunes (State Bar No. 210453)
 (glenn@nuneslawgroup.com)
THE NUNES LAW GROUP
15760 Ventura Blvd., Suite 860
Encino, CA 91436
Telephone:  818.386.0444
Facsimile:   818.386.0050

Christopher J. Hamner (State Bar No. 197117)
 (chamner@hamnerlaw.com)
HAMNER LAW OFFICES, LLC
15760 Ventura Blvd., Suite 860
Encino, CA 91436
Telephone:  818.386.0444
Facsimile:   818.386.0050

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DAWN FAIRCHILD, ROBERT NACHSHIN, BRIAN GEERS and LAURENCE GERARD, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>AOL, LLC, a Delaware Limited Liability Company; and DOES 1 through 10 inclusive,<br><br>　　　　　　　Defendants. | Case No.: CV 09-03568 CAS (PLAx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT**<br><br>Date:　August 24, 2009<br>Time:　10:00 a.m.<br>Dept.:　5<br><br>Honorable Christina A. Snyder |

# INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Dawn Fairchild, Robert Nachshin, Brian Geers and Laurence Gerard ("Plaintiffs"), on behalf of themselves and as putative representatives of the Settlement Class, hereby move this Court for an order preliminarily approving the settlement reached in this case. This case will settle, on a national basis, claims by individuals against Defendant AOL, LLC ("AOL") related to AOL's wrongful insertion of footers containing promotional messages into e-mails sent by Plaintiffs and the Settlement Class, and AOL's failure to provide adequate notice to the Class Members on how to opt out from having such footers added to the Class Members' e-mails.

Plaintiffs believe that the proposed settlement is fair, reasonable and adequate. Under the terms of this settlement, AOL will notify all Settlement Class Members of the existence of the e-mail footers and their ability to remove these footers from future e-mails sent by the Settlement Class Members. If AOL continues to insert e-mail footers containing promotional messages into the e-mails sent by its subscribers, AOL will re-send notice to all Settlement Class Members regarding the existence of the footers and their ability to remove them from future e-mails every six months for a period of two years. Further, AOL will inform all future subscribers to its service of the existence of the e-mail footers either as part of registering for an AOL account or as part of an e-mail confirming registration of an AOL account and provide electronic notice of their ability to avoid having e-mail footers added.

If this matter went to trial, the harm that the Class could prove would be the unjust enrichment and improper revenues that AOL sustained as result of its practice. Because the total amount of such damages, if Plaintiffs were entirely successful, would be about $2 million and the class is comprised of approximately 60 million individuals/businesses, the monetary compensation that would be provided to each class member (if it were entirely successful) would be approximately 3 cents,

Plaintiffs instead negotiated that AOL will donate $110,000 to certain charities – which were largely selected by the mediator (so as to avoid any implication of bias). Accordingly, under the settlement, AOL will donate $25,000 each to three charitable organizations: (1) the Legal Aid Foundation for Los Angeles; (2) the Federal Judicial Center Foundation; and (3) the Boys and Girls Club of America (to be shared equally between the Boys and Girls Club of Los Angeles and of Santa Monica). In addition, a total of $35,000 will be donated to charities chosen by the Settlement Class Representatives, who will not be receiving an incentive payment. Neither the Class' recovery nor the charitable donations will be impacted or diminished in any way by the payment of Class Counsel's fees, costs or the administration of this Settlement, because AOL will be separately paying Class Counsel's fees and will administer its obligations at its own expense for purposes of the settlement. Each class member will also prospectively benefit by the fact that AOL will no longer be able to profit from this practice without their consent.

The settlement is the product of intensive arms' length negotiations and was reached with the assistance and approval of the Honorable Dickran M. Tevrizian, a retired United States District Court Judge, who oversaw three separate in person sessions between the parties.

Based upon the foregoing, Plaintiffs requests that this proposed settlement be preliminarily approved by the Court.

## I. NATURE OF THE CASE

On August 13, 2009, Plaintiffs filed a Second Amended Class Action Complaint ("Complaint") against AOL and DOES 1 through 10 in the United States District Court for the Central District of California. The Complaint was filed on behalf of a putative class consisting of all current AOL members and asserts the

Memorandum Of Points And Authorities In Support Of
Plaintiffs' Motion For Preliminary Approval Of Proposed Class Settlement

2

following claims: (1) violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.*; (2) unjust enrichment; (3) violation of California Business and Professions Code, §§ 17200, *et seq.*; (4) breach of contract; (5) violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; and (6) violation of California Business and Professions Code §§ 17529 *et seq*. AOL has yet to respond to the allegations of the Complaint.

Discovery and AOL records establish that Plaintiffs are current members of AOL and each registered an AOL account that allowed Plaintiffs to send e-mails.[1] In or around February 2006, AOL began inserting promotional messages as a footer attached to the end of e-mails sent by AOL members. The footers are separated from the text of the e-mails by a black line and include messages such as "Find phone numbers fast with the New AOL Yellow Pages!" At first, these footers promoted only AOL's own products and services. Beginning in October 2008, the footers began to display advertisements from third parties that paid AOL for advertising space. (Declaration of Richard L. Kellner ("Kellner Decl."), Ex. "A", pp. 9:16-10:21.) Discovery has revealed that AOL has generated under $2 million in revenue from these third-party advertisements since October 2008. (Kellner Decl., Ex. A, pp. 37:6-8.)

AOL did not disclose in its terms of service that it would attach the footers to its members' e-mails. Moreover, until April 2008, AOL did not provide a method for its members to discontinue the ad placements. (*Id.* at pp. 22:10-24:3.) After that time, a paid subscriber could contact AOL and request that AOL stop inserting the footers at

---

[1] Some features of the AOL website are free for all subscribers. Other types of services require subscribers to register for an AOL account and pay a monthly fee. The putative class consists of both "free" and "paid" AOL members.

Memorandum Of Points And Authorities In Support Of
Plaintiffs' Motion For Preliminary Approval Of Proposed Class Settlement

3

the bottom of that subscriber's e-mail. (*Id.*) AOL, however, never notified its paid subscribers of its new policy. (*Id.* at pp. 24:7-26:3.)

In addition to the instant case, another action was filed in this District that arises out of identical allegations on behalf of a putative nationwide class. The case is entitled *Cecchini v. AOL, LLC*, Case No. CV-08-06845, originally filed on October 17, 2008. Because the *Cecchini* case has been dismissed and the plaintiffs there have joined this action, this settlement resolves all claims against AOL relating to footer advertisements on a national basis.

## II. INVESTIGATION DISCOVERY AND MEDIATION

Plaintiffs have conducted a comprehensive factual investigation into the matters set forth in the litigation, including an analysis of relevant documents and related data, as well as taking the deposition of Roy Ben-Yousef, the Vice President of AOL responsible for the e-mail footers. (Kellner Decl., ¶¶ 5-6.)

Immediately upon receipt of the Complaint, counsel for Plaintiffs and AOL engaged in numerous formal and informal settlement discussions, including multiple mediation sessions under the direction of the Honorable Dickran M. Tevrizian, United States District Court Judge for the Central District of California (Retired). (Kellner Decl., ¶ 7.) Judge Tevrizian was instrumental in assisting all Parties reach the determination that (1) the Proposed Settlement was fair and (2) the Selected Charities were appropriate. Plaintiffs determined that the proposed settlement would be fair, reasonable, adequate, and in the best interests of the Settlement Class, and that it is desirable that the litigation be settled in the manner and upon the terms and conditions set forth. (Kellner Decl., ¶¶ 7-8.) Because the gravamen of the Complaint is that AOL should be found liable because it did not disclose in its terms of service that it would attach these footers to its members' e-mail, or notify its members of its opt-out

Memorandum Of Points And Authorities In Support Of
Plaintiffs' Motion For Preliminary Approval Of Proposed Class Settlement

policy, the settlement will fully address the Settlement Class' concerns without the time, risk, and expense of litigation.

### III. THE PROPOSED CLASS SETTLEMENT

The terms of the proposed class settlement are set forth fully in the Class Action Settlement Agreement and the amendments thereto. (Kellner Decl., Exhibit "B"). It calls for the certification by the Court of a Settlement Class consisting of:

*All current AOL members.*

Plaintiffs believe that the proposed settlement is fair, reasonable, and adequate. Under the terms of this settlement, AOL will e-mail the Settlement Class a notice substantially similar to that attached to the Settlement Agreement as Exhibit B. The purpose of the Notice is to inform the Settlement Class of the existence of the footers and their automatic insertion into sent e-mails as well as their ability to remove the footers from future e-mails.

If AOL continues to append footers onto subscribers' outgoing e-mails, AOL will re-send notice to all Settlement Class Members of the existence of the footers and their ability to remove them from future e-mails every six months for a period of two years. Further, AOL will inform all future members of the existence of the e-mail footers either as part of registering for an AOL account or as part of an e-mail confirming registration of an AOL account. Finally, AOL will donate $25,000 to each of the three charities named in the Class Action Settlement Agreement and an additional $35,000 to charities chosen by the Settlement Class Representatives. (*See* Kellner Decl., Ex. B, pp. 7-8.)

Memorandum Of Points And Authorities In Support Of
Plaintiffs' Motion For Preliminary Approval Of Proposed Class Settlement

5

Plaintiffs' Counsel will seek an award of attorneys' fees, however, per the terms of the Settlement Agreement, Plaintiffs' Counsel will not seek an award of attorneys' fees plus disbursements in excess of $320,000 ($160,000 for Kabateck Brown Kellner LLP and $160,000 to be shared between the Nunes Law Group and the Hamner Law Offices).

## IV. LEGAL ARGUMENT

### A. Standards for Settlement Approval

Federal Rule of Civil Procedure 23(e)(1)(A) requires court approval of any settlement of claims brought on a class basis. Approval of a class action settlement occurs in two steps. First, the Court grants preliminary approval of the settlement and conditionally certifies the class. Second, after notice of the settlement is provided to the class, the Court conducts a fairness hearing. *See* Manual for Complex Litigation (4th ed. 2004) § 21.632; and *In re NASDAQ Market Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). A court may approve a class settlement upon a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Pro. 23(e)(1)(C). The decision to grant preliminary approval is committed to the Court's sound discretion. *Officers for Justice v. Civil Service Com 'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

In determining whether a settlement is fair, reasonable, and adequate, a court must consider the following factors: (1) the risk, expense, complexity, and likely duration of further litigation; (2) the amount offered in settlement; (3) the solvency of the defendant; (4) the extent of discovery completed and the stage of the proceedings; (5) the views and experience of counsel; (6) the presence of a governmental participant; and (7) any opposition to the settlement by class members. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). This list of factors is not exclusive, and a

Memorandum Of Points And Authorities In Support Of
Plaintiffs' Motion For Preliminary Approval Of Proposed Class Settlement

6

court may balance and weigh these factors depending on the circumstances of the case. *Torisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

Settlements of complex class actions prior to trial are strongly favored. *See, e.g., Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); and *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Preliminary approval should be granted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re NASDAQ Market Makers*, 176 F.R.D. at 102. "If the court preliminarily approves the settlement, it must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." *In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186, 192 (S.D.N.Y. 2005).

### B. The Proposed Settlement is Fair and Reasonable

As this settlement provides for every class member to receive notice of the existence of the footers and their ability to opt-out, it addresses the issues raised in the Complaint and corrects the improper conduct going forward because AOL also has agreed to notify all new subscribers of the existence of the footers. Moreover, AOL will make substantial charitable donations as recompense for its wrongful conduct and the alleged profits it unjustly obtained from third party advertisers.

While Plaintiffs seek compensatory and general damages in addition to restitution and disgorgement, Plaintiffs acknowledge for settlement purposes that due to the nature of the wrongful conduct, each Class Members' damages will be small and difficult to ascertain. Thus, the primary focus of a recovery at trial would be to

Memorandum Of Points And Authorities In Support Of
Plaintiffs' Motion For Preliminary Approval Of Proposed Class Settlement

7

hold AOL liable for unjust enrichment. The amount of restitution recoverable based on AOL's unjust enrichment would primarily (if not exclusively) focus upon amounts AOL earned for sale of advertising space in its subscribers' e-mail. The evidence shows that AOL received under $2 million in revenue since October 2008 when it began inserting promotional messages from third parties in its subscribers outgoing e-mails. Even if AOL were to pay the entire $2 million in damages to the Class, each of the Class Members would receive approximately 3 cents, before the costs of administering such a settlement were factored in.

Plaintiffs recognize that the cost of administering the settlement checks to such a large class would clearly exceed the amount of potential damages. Pursuant to a suggestion by Judge Tevrizian (who served as the Settlement Mediator), monies will be donated to well-established charities in lieu of a negligible payment made to class members. In addition, and again at the suggestion of Judge Tevrizian, the class representatives have agreed and requested that, even though they have each spent significant time on this matter and have been subject to either depositions and/or confirmatory discovery, they not receive any monies directly as incentive payments, but instead simply direct a total of $35,000 to charities of their choice.

As a result, the settlement provides full prospective redress for AOL members and a means for redressing the alleged unjust enrichment of funds that AOL received from third party advertisers.

And, if there are any Class Members who may seek to recover compensatory or general damages as a result of AOL's wrongful conduct, the Settlement provides a means for these Class Members to opt-out of the settlement so that they can seek their own redress.

The settlement in this case is a fair, reasonable, and adequate compromise that was reached in arms' length negotiations between highly experienced counsel under

Memorandum Of Points And Authorities In Support Of
Plaintiffs' Motion For Preliminary Approval Of Proposed Class Settlement

8

the supervision of distinguished United States District Court Judge Dickran M. Tevrizian (Retired). The settlement reflects not only the assistance and expertise of Judge Tevrizian, but also his approval. Likewise, Plaintiffs' experienced class counsel believe that this settlement provides a significant benefit for the Class and is a fair, reasonable, and adequate result. (Kellner Decl., ¶¶ 7-8.) As the Court is aware, there is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arms' length negotiations. *See* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 at 90 (4th ed. 2002).

### C. The Proposed Class Satisfies the Requirements of Rule 23

Before granting preliminary approval of a settlement, the Court must determine that the proposed settlement class can be certified for settlement purposes. *See Manual for Complex Litigation* (4th ed. 2004) § 21.632; and *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Rule 23 governs the issue of class certification, whether the proposed class is a litigated class or, as here, a settlement class. All criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes. Courts routinely and properly certify classes for settlement purposes only and the proposed certification of the class is completely consistent with the applicable authorities. *Amchem Prods.*, 521 U.S. at 619-29.

Certification is appropriate where the proposed class and the proposed class representatives meet the four prerequisites of Rule 23(a) -- numerosity, commonality, typicality, and adequacy of representations -- and one of the three requirements of Rule 23(b). Certification of a class action for damages requires a showing that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to

Memorandum Of Points And Authorities In Support Of
Plaintiffs' Motion For Preliminary Approval Of Proposed Class Settlement

9

other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. **Numerosity**

The first requirement for maintaining a class action under Rule 23(a) is that the class is so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23 does not require that class actions involve any specific number of putative class members. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982). "A finding of numerosity may be supported by common sense assumptions." *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992).

Here, there are approximately sixty million putative class members. (Kellner Decl., Ex. A, pp. 34:11-35:7; 57:8-9.) These subscribers are geographically dispersed across the country, making joinder impractical. Therefore, the proposed class meets the first prerequisite of Rule 23 for settlement purposes.

### 2. **Commonality**

The second prerequisite to class certification is the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has made clear that the commonality requirement is to be "construed permissively." *Dukes v. Wal-Mart, Inc.*, 774 F.3d 1214, 1225 (9th Cir. 2007). Commonality can be established by showing "that the class is united by a common interest." *See Blackie*, 524 F.2d at 901 (holding, "[S]light differences in class members' positions" will not defeat commonality.) The existence of "shared legal issues" will satisfy the commonality requirement, even if there are "divergent factual predicates." *Dukes*, 774 F.3d at 1225. Because the test of commonality is qualitative rather than

Memorandum Of Points And Authorities In Support Of
Plaintiffs' Motion For Preliminary Approval Of Proposed Class Settlement

10

quantitative, "one significant issue common to the class may be sufficient to warrant certification." *Id.*

The overarching and unifying allegations in this action are that AOL placed promotional messages in the form of e-mail footers into outgoing e-mail messages and failed to notify members of the existence of the footers or their ability to opt-out. These issues are common to all Class Members and this case satisfies the second prerequisite of Rule 23 for settlement purposes.

### 3. **Typicality**

A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Slight factual distinctions between the named plaintiffs and the claims of absent class members do not undermine typicality. *In re Glassine & Greaseproof Paper Antitrust Litigation*, 88 F.R.D. 302, 304 (ED. Pa. 1980). Rather, courts focus on the defendants' conduct and the plaintiff's legal theory. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). "Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." *Dukes*, 774 F.3d at 1225.

When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiffs and the class sought to be represented, the typicality requirement is usually satisfied, irrespective of varying fact patterns which underlie individual claims. *Smith v. Univ. of Washington Law School*, 2 F. Supp. 2d 1324, 1342 (W.D. Wa. 1998) ( "Typicality turns on the defendant's actions toward the plaintiffs' class, not particularized defenses against individual class members.") Furthermore, the test for typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named

Memorandum Of Points And Authorities In Support Of
Plaintiffs' Motion For Preliminary Approval Of Proposed Class Settlement

11

plaintiffs, and whether other class members have been injured by the same course of conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985). The typicality requirement is liberally construed. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). Accordingly, differences that may exist in the amount of injury suffered by each class member do not render plaintiffs' claims atypical. *Armstrong v. Davis,* 275 F.3d 849, 869 (9th Cir. 2001).

In this case, the claims of the representative plaintiffs arise from AOL's insertion of promotional messages in the form of e-mail footers into outgoing e-mails sent by Plaintiffs and the Class Members and AOL's failure to notify its subscribers of their ability to opt-out of the automatic insertion of the footers. Plaintiffs' allegations are typical of those of the Class Members who also had footers inserted automatically into their outgoing e-mails. Plaintiffs assert the same legal claims on behalf of themselves and the proposed class. Therefore, Plaintiffs' claims are typical of the claims of the other members of the Class.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that the representative plaintiffs fairly and adequately represent the interests of the class. Adequacy of the representation "requires that the named representative's attorney be qualified, experienced and generally capable to conduct the litigation, and that the named representative's interests not be antagonistic to the interests of the class." *Jordan*, 669 F.2d at 1323.

Adequacy of representation does not require the representative plaintiffs to "possess encyclopedic knowledge of the legal theories supporting a class' claims." *Longman v. Food Lion, Inc.*, 1994 WL 686624 (M.D.N.C. 1999). Rather, a plaintiff is an adequate class representative if he or she "has a basic understanding of the

Memorandum Of Points And Authorities In Support Of
Plaintiffs' Motion For Preliminary Approval Of Proposed Class Settlement

12

allegations in [the] case." *Yamner v. Botch*, 1994 WL 514035, slip op. at 7 (N.D. Cal. September 15, 1994).

Here, the interests of the representative Plaintiffs are not antagonistic to the Class because they are all similarly interested in obtaining prompt and fair relief from AOL and ensuring that similar conduct does not happen in the future. There is no question that Plaintiffs have a genuine interest in the litigation and a basic understanding of the allegations in this case. (Kellner Decl., Exs. D and E.) Additionally, as set forth in the accompanying Declaration of Richard L. Kellner, Plaintiffs are represented by counsel who are highly qualified in class action litigation. (Kellner Decl., ¶¶ 14-16.) Therefore, the proposed Class meets the adequacy of representation requirement.

### 5. The Action Meets the Requirements of Rule 23(b)

Once the four prerequisites of Rule 23(a) are met, "the potential class must also satisfy at least one provision of Rule 23(b)." *Rosario*, 963 F.2d at 1017; *see also General Tel Co. v. Falcon*, 457 U.S. 147, 161 (1982).

Rule 23(b)(3) states that a class may be certified when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [...] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." These requirements are satisfied here.

The questions of law and fact common to all Class Members are set forth above. These common issues predominate over any individual issues such as the nature and extent of damages. *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment."). The damages issues in this case are easily manageable because Plaintiffs are not seeking individual recovery, but rather, Plaintiffs are

Memorandum Of Points And Authorities In Support Of
Plaintiffs' Motion For Preliminary Approval Of Proposed Class Settlement

13

securing a permanent change in AOL's conduct and policies and several donations to various charities.

Additionally, a class action is clearly superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all Class Members would be impracticable. Finally, because the damages suffered by individual members of the Settlement Class may be indeterminable or in many cases non-existent, the expense and burden of individual litigation would make it impossible for all Settlement Class Members to individually redress the harm done to them.

In short, the Settlement Class is suitable for certification, and the Court should certify the Settlement Class pursuant to Rule 23(b)(3), for purposes of granting preliminary approval to the settlement.[2]

## V.  THE PROPOSED PLAN OF NOTICE

Rule 23(e)(1) states that, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e) requires that notice of a proposed settlement inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing. 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 8.32 at 262-68 (4th ed. 2002). The notice must also indicate an opportunity to opt out, that the judgment will bind all class

---

[2] While Plaintiffs' Complaint also seeks injunctive relief, certification for settlement purposes pursuant to Rule 23(b)(2) is inappropriate for this action because the Complaint sought individual damages for the plaintiffs. *See Besinga v. United States*, 923 F.2d 133, 135 (9th Cir. 1991) ("Where individual damages are sought, generally a class action must be certified under 23(b)(3)"). Therefore, the heightened notice requirements pursuant to Rule 23(c)(2) for classes certified under 23(b)(3) must be met. *Eisen v. Carlisle & Jacqueline*, 417 U.S. at 173-174.

Memorandum Of Points And Authorities In Support Of
Plaintiffs' Motion For Preliminary Approval Of Proposed Class Settlement

14

members who do not opt out, and that any member who does not opt out may appear through counsel. Fed. R. Civ. P. 23(c)(2).

Here, Plaintiffs request approval of the proposed "Official Notice of Pendency of Class Action and Proposed Settlement" (the "Notice"). (Kellner Decl., Exhibit "C",) The Notice meets all of the requirements of Rule 23(e) -- it identifies the Plaintiffs and the Defendant, and describes the lawsuit and the settlement Class in a straightforward manner; it succinctly describes the essential terms of the settlement, and identifies all parties whose against whom claims are being released; it provides Class Members with information on how to opt-out of the Class and provides all applicable deadlines for such action; and it informs Class Members that if they do not exclude themselves from the Class, and the settlement is approved, they will be bound by the resulting judgment. In addition, the Notice instructs Class Members to contact Class Counsel to obtain more detailed information and provides information regarding counsel's fee and expense application. In short, the Notice will provide the necessary information for Class Members to make an informed decision regarding the proposed settlement.

As a general rule, due process requires individualized notice where the names and addresses of class members "may be ascertained through reasonable effort" [*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173, 177 (1974)], and "is appropriate, for example, if class members are required to take action - such as filing claims - to participate in the judgment, or if the court orders a settlement opt-out opportunity under Rule 23(e)(3)." *See* Fed. Rules Civ. Proc. R. 23(e)(1) (Committee Note of 2003).

The Settlement Agreement provides that AOL will serve as Settlement Administrator under the supervision of the Hon. Dickran M. Tevrizian, who shall function as the Settlement Arbitrator. As Settlement Administrator, AOL will be

Memorandum Of Points And Authorities In Support Of
Plaintiffs' Motion For Preliminary Approval Of Proposed Class Settlement

15

responsible for communicating to the Settlement Class via e-mail the Official Notice of Pendency of Class Action and Proposed Settlement, the Final Order and Judgment, and the notices contemplated by the settlement agreement regarding the existence of the footers and the opt-out policy. AOL will also handle returned e-mail not delivered and will provide Settlement Class Counsel with copies of objections, notices of intention to appear, and requests for exclusion from the Settlement Class. The Settlement Agreement details the protocol for implementing the settlement and notifying the Settlement Class. (Kellner Decl., Exhibit B, pp. 6-8.)

The Settlement Agreement contemplates that any notice or communication to the Settlement Class will be sent via e-mail. This notice is adequate and "reasonably calculated to reach the members of the class." *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980). Here, the Settlement Class Members are well-suited to receive e-mail notification because the claims relate to e-mail accounts the Class Members have with AOL and because the entire class consists of AOL subscribers with AOL e-mail accounts. These e-mail accounts can be verified by AOL while the Settlement Class Members' mailing addresses, in many instances cannot. *See Farinella v. PayPal, Inc.*, 2009 U.S. Dist. Lexis 41368, *10-11, n. 10 (E.D.N.Y. Apr. 30, 2009) (finding that class members were "uniquely suited" for e-mail notification because "(1) their interactions with defendants have exclusively or predominantly been via e-mail and over the internet and (2) while the e-mail addresses associated with their PayPal accounts have been verified by the defendants, their mailing addresses have not"). Thus e-mail notice is more practical and efficient in this case than notice via U.S. mail.

Additionally, the Settlement provides for a website to be established which will also post the Notice approved by this Court. Given that the subject matter of this

Memorandum Of Points And Authorities In Support Of
Plaintiffs' Motion For Preliminary Approval Of Proposed Class Settlement

dispute is solely about activities on the Internet, this two-pronged approach of Internet notification is reasonably calculated to reach each member of the class.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court grant preliminary approval of the proposed settlement and enter the Proposed Order for notice and hearing on settlement of class action.

DATED: August 19, 2009          KABATECK BROWN KELLNER LLP


                                _____/s/_____
                                Brian S. Kabateck
                                Richard L. Kellner
                                Alfredo Torrijos
                                Michael V. Storti

                                THE NUNES LAW GROUP


                                _____/s/_____
                                Glenn C. Nunes

                                HAMNER LAW OFFICES, LLC


                                _____/s/_____
                                Christopher J. Hamner

                                Attorneys for Plaintiffs and the Proposed Class

Memorandum Of Points And Authorities In Support Of
Plaintiffs' Motion For Preliminary Approval Of Proposed Class Settlement

17