Mark D. Litvack (SBN 183652)
E-mail: mlitvack@reedsmith.com
Michael A. Garabed (SBN 223511)
E-mail: mgarabed@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: (213) 457-8000
Facsimile: (213) 457-8080

Attorneys for Defendant AOL, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DAWN FAIRCHILD, ROBERT NACHSHIN, BRIAN GEERS and LAURENCE GERARD, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AOL, LLC, a Delaware Limited Liability Company; and DOES 1 through 10 inclusive,<br><br>Defendants. | NO. CV 09-03568 CAS (PLAx)<br><br>**DEFENDANT AOL, LLC'S REPLY TO AND JOINDER IN PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT**<br><br>Date: August 24, 2009<br>Time: 10:00 a.m.<br>Place: Courtroom 5<br><br>Honorable Christina A. Snyder |

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 1 |
| III. | LEGAL ARGUMENT | | 2 |
| | A. | The Settlement Is Reasonable Because Plaintiffs' Claims Lack Merit. | 2 |
| | | 1. AOL Did Not Violate the Electronic Communications Privacy Act. | 2 |
| | | 2. AOL Was Not Unjustly Enriched By Its Practice Of Adding Footers To Its Subscribers' E-mails; Damages For Unjust Enrichment Are Negligible. | 3 |
| | | 3. AOL Did Not Breach Its Terms Of Service Agreement | 5 |
| | | 4. AOL Did Not Violate the Consumer Legal Remedies Act. | 6 |
| | | 5. AOL Did Not Violate The Unfair Competition Law, B&P §§ 17200, et seq. | 7 |
| | | 6. AOL Did Not Violate The False Advertising Law, B&P § 17529.2. | 8 |
| | | 7. AOL Is Not Liable Under the Voluntary Payment Doctrine. | 9 |
| | B. | The Settlement Is Reasonable Because Potential Damages Are Negligible When Spread Amongst The Sixty Million Class Members. | 10 |
| | C. | Class Certification Would By No Means Be Assured. | 11 |
| IV. | CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

## CASES

Page

*Bardin v. Daimler Chrysler,*
 136 Cal. App. 4th 1255 (2006) ............................................................................................7

*Caro v. Procter & Gamble Co.,*
 18 Cal. App. 4th 644 (1993) ................................................................................................7

*Cel-Tech Comm. Inc. v. Los Angeles Cellular Tel.,*
 20 Cal. 4th 163 (1999) .........................................................................................................8

*Chrysler Credit Corp. v. Ostly,*
 42 Cal. App. 3d 663 (1974) .................................................................................................9

*Committee on Children's Television v. Gen. Foods Corp.,*
 35 Cal. 3d 197 .....................................................................................................................8

*Daugherty v. American Honda Motor Co., Inc.,*
 144 Cal. App. 4th 824 (2006) ..............................................................................................6

*Expert Business Systems LLC v. BI4CE, Inc.,*
 233 Fed. Appx. 251 (D.Md. 2007) ......................................................................................3

*Flynn v. City & County of San Francisco,*
 18 Cal. 2d 210 (1941) ..........................................................................................................9

*Fraser v. Nationwide Mut. Ins. Co.,*
 352 F.3d 107 (E.D.Pa. 2003) ...............................................................................................3

*Galola v. Snyder,*
 613 A.2d 983 (Md. App. 1992) .........................................................................................10

*Hall v. Earthlink Network, Inc.,*
 396 F.3d 500 (S.D.N.Y. 2005) ............................................................................................3

*In Re Pharmatrak, Inc. Privacy Litigation,*
 329 F.3d 9 (1st Cir. 2003) ....................................................................................................3

*Jones v. Wells Fargo Bank,*
 112 Cal. App. 4th 1527 (2003) ...................................................................................4

*Lacher v. Superior Court,*
 230 Cal. App. 3d 1038 (1991) .....................................................................................6

*Norwest Mortgage, Inc. v. Superior Court,*
 85 Cal. Rptr. 2d 18 (1999) .........................................................................................12

*Otworth v. Southern Pac. Transportation Co.,*
 166 Cal. App. 3d 452 (1985) .......................................................................................4

*S. Bay Chevrolet v. Gen. Motors Accep. Corp.,*
 72 Cal. App. 4th 861 (1999) ........................................................................................7

*Saunders v. Super. Ct.,*
 27 Cal. App. 4th 832 (1994) ........................................................................................7

*Smith v. Prime Cable of Chicago,*
 658 N.E.2d 1325 (Ill. App. 1995) ..............................................................................10

*United States v. Rodriguez,*
 968 F.2d 130 (2d Cir. 1992) ........................................................................................3

**STATUTES**

11 U.S.C. § 2511(2)(d) .............................................................................................................3

18 U.S.C. § 2510(4) ..................................................................................................................2

18 U.S.C. 2511(1)(a) .................................................................................................................2

Cal. Bus. & Prof. Code § 17529.2 .......................................................................................8-11

Cal. Civ. Code § 1760 ...............................................................................................................6

Cal. Civ. Code § 1770(a) ..........................................................................................................6

# I. INTRODUCTION[1]

This lawsuit affects approximately sixty million persons who have e-mail accounts with Defendant AOL, LLC ("AOL"). AOL has agreed to settle Plaintiffs' claims, on a national basis, in order to avoid the expense of litigation and to return to its business of providing quality products to its customers. The proposed settlement is reasonable, fair, and adequate because it not only resolves all of Plaintiffs' claims, it allows AOL to continue to treat its customers with the quality and care that AOL has always provided.

If litigation were to persist, AOL would raise numerous defenses to defeat class certification and Plaintiffs' claims on the merits. Additionally, even if Plaintiffs were to prevail at trial, available damages for the alleged conduct are negligible when divided amongst the sixty million potential class members. For these reasons, AOL joins the Plaintiffs and their Counsel and requests that the Court approve the proposed Settlement.

# II. BACKGROUND

Plaintiffs Dawn Fairchild, Robert Nachshin, Brian Geers and Laurence Gerard ("Plaintiffs") allege that AOL failed to notify its members of the existence of footers containing promotional messages that were inserted into subscribers' outgoing e-mails, a campaign AOL began in February 2006. Prior to the filing of the lawsuit, AOL created an "opt-out" policy, which allows paid subscribers to easily remove the footers from their outgoing e-mails with a few clicks of the mouse. (Declaration of Roy Ben-Yoseph ("Ben-Yoseph Decl."), ¶ 2.) As part of the Settlement Agreement, AOL will notify all of its subscribers of the existence of the footers and their ability to remove the footers from outgoing e-mails. And if AOL continues to insert these

---

[1] This brief is filed pursuant to this Court's Order of August 13, 2009 ordering AOL to file its reply to Plaintiffs' motion for preliminary approval of a nationwide class action settlement by August 20, 2009.

footers into its subscribers' e-mails, AOL will continue to notify its subscribers every six months for a period of two years. AOL will also notify all new subscribers of the existence of the e-mail footers. Finally, AOL will donate a total of $110,000 to various charities.

## III. LEGAL ARGUMENT

### A. The Settlement Is Reasonable Because Plaintiffs' Claims Lack Merit.

By this Settlement, AOL seeks to avoid the expenses involved in defending itself in this lawsuit. AOL's agreement to settle the case, however, should not be taken as a tacit admission of liability or any weakness in its defense. On the contrary, if AOL were to litigate this matter, the evidence would show that all of Plaintiffs' claims lack merit.

Plaintiffs allege causes of action for (1) violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.*; (2) unjust enrichment; (3) violation of California Business and Professions Code, §§ 17200, *et seq.*; (4) breach of contract; (5) violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; and (6) violation of California Business and Professions Code §§ 17529 *et seq*. Critical analysis of these causes of action leads to the conclusion that each of them lacks merit.

#### 1. AOL Did Not Violate the Electronic Communications Privacy Act.

Plaintiffs allege that by inserting footers into the Class Members' electronic communications, AOL violated the Electronic Communications Privacy Act ("ECPA"). (Second Amended Complaint ("SAC"), ¶¶ 31-34.) The ECPA provides a private right of action against a party that "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The ECPA defines

"intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). Accordingly, Plaintiffs must demonstrate the following five elements to prevail on their ECPA claim: that AOL (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using an electronic device. *See In Re Pharmatrak, Inc. Privacy Litigation*, 329 F.3d 9 (1st Cir. 2003). Plaintiffs would be unable to meet this burden under any scenario.

As a fundamental matter, "interception" occurs for purposes of the ECPA only when "the contents of a wire communication are captured or redirected." *United States v. Rodriguez*, 968 F.2d 130, 136 (2d Cir. 1992). Here, AOL did not "intercept" any communications at all. In fact, AOL does not "capture" or "redirect" the contents of any consumer e-mail. Instead, AOL merely attaches a footer to those electronic communications before they are transmitted outside of AOL's domain. As a matter of law, this activity does not constitute "interception" within the meaning of the ECPA. *See, e.g., Expert Business Systems LLC v. BI4CE, Inc.*, 233 Fed. Appx. 251 (D.Md. 2007) (holding website developer did not "intercept" e-mails in connection with hosting a website on its server and therefore did not violate ECPA); *Hall v. Earthlink Network, Inc.*, 396 F.3d 500 (S.D.N.Y. 2005) (holding internet service providers "do not 'intercept' [within the meaning of the ECPA] if they are acting within the ordinary course of their business"); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107 (E.D.Pa. 2003) (finding insurance company did not "intercept" its agent's electronic communications despite the fact it accessed his e-mail on its central file server without his express permission).

2. **AOL Was Not Unjustly Enriched By Its Practice Of Adding Footers To Its Subscribers' E-mails; Damages For Unjust Enrichment Are Negligible.**

In their Second Cause of Action, Plaintiffs allege that AOL "reaped substantial profits by inserting advertisements into the e-mails of its members . . . result[ing] in AOL's wrongful receipt of profits and injury to Plaintiffs and the Class." (SAC, ¶ 37.) Under the theory of unjust enrichment, "one who acquires a benefit which may not justly be retained [is required] to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched." *Otworth v. Southern Pac. Transportation Co.*, 166 Cal. App. 3d 452, 460 (1985). Restatement (First) of Restitution § 1 (1937) further provides that "a person who has been unjustly enriched at the expense of another is required to make restitution to the other." *See, e.g., Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 1541 (2003) (holding that where plaintiff alleged no facts to show unjust enrichment except for a note and forbearance agreement between the parties, defendants would not be unjustly enriched "by receiving contingent interest to which they are legally entitled") (emphasis added). IN other words, unjust enrichment is inapplicable where a defendant has merely obtained that to which he was entitled pursuant to a contract between the parties. *Id.*

Here, AOL has not been unjustly enriched. Plaintiffs will be unable to show that AOL was not entitled to insert the footers into its members' e-mails. The operative Terms of Service Agreement ("TOS Agreement"), to which all subscribers agree prior to purchasing enhanced e-mail service, does not prohibit AOL's practice of inserting footers that contain promotional messages into e-mails. (Ben-Yoseph Decl., Ex. A.) Thus, AOL was not "unjustly enriched" when it accepted payment for such service. Stated differently, Plaintiffs will be unable to point to any conduct on the part of AOL that AOL was not entitled to perform.

Moreover, even if Plaintiffs prevail on an unjust enrichment theory at trial, Plaintiffs' available damages are negligible. As Plaintiffs' Motion points out, according to the most updated information available, AOL has received approximately $2 million in revenue related to the e-mail footers. Plaintiffs are correct that even if AOL were to pay the entire $2 million in damages to the Class, each of the sixty

million class members would receive just a few cents. The costs of administering the settlement would further reduce this recovery.

### 3. AOL Did Not Breach Its Terms Of Service Agreement.

AOL's TOS Agreement does not prohibit AOL's practice of inserting footers or advertising in subscribers' e-mails. (Ben-Yoseph Decl., Ex. A.) Plaintiffs vaguely allege that the practice was a breach of contract without pointing to any alleged term in the TOS Agreement that was allegedly breached, and further allege this "breach" was a violation of the covenant of good faith and fair dealing. (SAC, ¶¶ 53-57.) The evidence will show, however, that AOL's insertion of footers into subscribers' e-mail was not prohibited by the terms of the TOS Agreement nor was it a breach of the covenant of good faith and fair dealing. On the contrary, AOL subscribers are informed in its "Network Privacy Policy" that content across AOL's Network may contain advertising  This policy provides:

> The AOL Service and its advertisers may also use ad network providers, including AOL subsidiaries such as Advertising.com, to help present advertisements on the AOL Network and other Web sites. These ad network providers may use cookies, web beacons, or similar technologies on your computer to help present, better target, and measure the effectiveness of their advertisements, using data gathered over time and across their networks of Web pages to determine or predict the characteristics and preferences of their audience.

(Ben-Yoseph Decl., Ex. B).

Thus, subscribers are informed that advertising may be presented by third parties over the entire AOL Network. No term in the TOS Agreement prohibits such conduct.

### 4. AOL Did Not Violate the Consumer Legal Remedies Act.

Plaintiffs allege that AOL violated the Consumer Legal Remedies Act ("CLRA") when it represented that its service "would be free of advertisements" and then inserted advertisements into subscribers' e-mails. (SAC, ¶¶ 58-68.) The CLRA proscribes specified "unfair methods of competition and unfair or deceptive acts or practices" in transactions for the sale of goods or services to consumers. Cal. Civ. Code Section 1770(a). The CLRA has been interpreted to "promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code Section 1760. Accordingly, an advertiser's omission of fact may serve as the basis of a CLRA claim if the omission is "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 834-835 (2006).

Here, AOL has not represented to its members that the e-mail service AOL provides will be free from advertisements. Instead, AOL's TOS Agreement is silent on the issue of e-mail advertisements and its Network Privacy Policy specifically informs subscribers that AOL's content contains Advertising. Therefore, any omission concerning the inclusion of advertisements in subscriber e-mails is not contrary to representations AOL has made to its members.

Moreover, the fact that AOL did not disclose that it would include footers in subscribers' e-mails was not an unfair or deceptive act or practice. Under the CLRA, like Cal. Bus. Prof. Code Section 17500 *et seq.*, a party is only obliged to disclose material facts. A misrepresentation of fact is material "if it induced the plaintiff to

AOL'S REPLY AND JOINDER IN PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
- 6 -

alter his position to his detriment. Stated in terms of reliance, materiality means that without the misrepresentation, the plaintiff would not have acted as he did." *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668 (1993), citing *Lacher v. Superior Court*, 230 Cal. App. 3d 1038, 1049 (1991); *see also Bardin v. Daimler Chrysler*, 136 Cal. App. 4th 1255, 1276 (2006) (manufacturer not obliged to disclose its use of steel exhaust manifolds in its vehicles instead of more durable and expensive cast iron). Consequently, Plaintiffs would have to demonstrate that they would not have used AOL's e-mail services if they had been made aware that the footers would be included in outgoing e-mails. Given that paid subscribers can opt out of the advertising and because the footers are clearly separated from the text of subscribers' e-mails and are innocuous in content, the failure to affirmatively disclose the inclusion of e-mail advertising is not a material omission.

### 5. AOL Did Not Violate The Unfair Competition Law, B&P §§ 17200, et seq.

Plaintiffs allege that AOL violated California's Unfair Competition Law ("UCL") because its practice of inserting the footers was unlawful, unfair, and fraudulent. (SAC, ¶¶ 40-52.) The UCL, codified at California Business & Professions Code Section 17200, provides: "[U]nfair competition shall mean and include any unlawful, unfair, or fraudulent business act or practice...." (emphasis added). As a result of the disjunctive language employed by the statute, each part of its definition of unfair competition operates separately from each other part. *See S. Bay Chevrolet v. Gen. Motors Accep. Corp.*, 72 Cal. App. 4th 861, 878 (1999). Thus, the "unlawful" prong of Section 17200 may apply where a practice is "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838, 839 (1994).

Plaintiffs allege the conduct was unlawful because it amounts to a violation of the Electronic Communications Privacy Act, the CLRA, and also constituted a breach

of contract and unjust enrichment. For the reasons discussed above, AOL's conduct was not unlawful because it was not a violation of the ECPA or the CLRA, nor did it constitute a breach of contract or unjust enrichment. Plaintiffs' claim under the "unlawful prong" of the UCL therefore must fail.

Plaintiffs also allege the practice was unfair. The "unfair" prong of Section 17200 may apply where the practice at issue violates "the policy or spirit of [antitrust] laws because its effects are comparable to or the same as a violation of the law, or that otherwise significantly threatens or harms competition." *See Cel-Tech Comm. Inc. v. Los Angeles Cellular Tel.*, 20 Cal. 4th 163, 187 (1999). Here the conduct was by no means "unfair" because the footers were clearly separated from the e-mail, were innocuous in nature, and paid subscribers are able to opt out of the insertion of the footers if they choose.

Finally, the conduct was not fraudulent. The "fraudulent" prong of Section 17200 may apply where "members of the public are likely to be deceived" by the practice at issue. *See Committee on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211. Plaintiffs can point to no deceptive statement by AOL that it would not insert footers into outgoing e-mails.

### 6. AOL Did Not Violate The False Advertising Law, B&P § 17529.2.

Plaintiffs allege that AOL violated Business & Professions Code Section 17529.2 when it initiated advertising in an unsolicited commercial e-mail advertisement. Section 17529.2 provides that a person or entity may not:

(a) Initiate or advertise in an unsolicited commercial e-mail advertisement from California or advertise in an unsolicited commercial e-mail advertisement sent from California.

(b) Initiate or advertise in an unsolicited commercial e-mail advertisement to a California electronic mail address, or advertise in

an unsolicited commercial e-mail advertisement sent to a California electronic mail address.

(c) The provisions of this section are severable. If any provision of this section or its application is held invalid, that invalidity shall not affect any other provision or application that can be given effect without the invalid provision or application.

AOL did not *initiate* any "unsolicited commercial e-mail" when it inserted the footers into subscribers' outgoing mail. AOL did not, in fact, initiate the e-mails ar all because in every case they were initiated by the Class Member. Nor were the e-mails unsolicited or chiefly commercial in nature. Thus, interpreting the plain language of the statute, AOL's conduct does not fall within that prohibited by Section 17529.2.

### 7. AOL Is Not Liable Under the Voluntary Payment Doctrine.[2]

Should litigation persist, AOL will raise as a defense the common law Voluntary Payment Doctrine. Under this doctrine, "money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered by the payor solely because the claim was illegal." *Flynn v. City & County of San Francisco*, 18 Cal. 2d 210, 216 (1941); *Chrysler Credit Corp. v. Ostly*, 42 Cal. App. 3d 663, 675 (1974). Here, Plaintiffs used their AOL accounts on a monthly basis and had the option of cancelling their accounts at any time if they did not agree with AOL's insertion of the footers. The evidence will show that Plaintiffs, and likely most of the Class Members, continued to use their accounts long after becoming aware of the footers. Thus, Plaintiffs will be barred from recovering as damages any amounts paid for their AOL accounts after becoming

---

[2] Though this defense would only apply to those persons who paid for AOL accounts, it must be noted that the remainder of the class paid *nothing* for their e-mail account and thus it is difficult to see how those persons are monetarily damaged by AOL's actions.

aware of the e-mail footers because they ratified the conduct by continuing to pay for the service. *Se, e.g., Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1337 (Ill. App. 1995) (finding that voluntary payment doctrine barred recovery under Illinois Trade Deceptive Practices Act where gravamen of complaint was that defendant promoted a two hour concert that was promoted as being a three hour concert, but plaintiffs paid for their tickets 17 days after attending); *Galola v. Snyder*, 613 A.2d 983, 985-86 (Md. App. 1992) (finding that tenant who pays rent voluntarily under lease that violates statute is not entitled to restitution).

### B. The Settlement Is Reasonable Because Potential Damages Are Negligible When Spread Amongst The Sixty Million Class Members.

The Settlement addresses all of the claims raised by Plaintiffs because it provides for every Class Member to receive notice of the e-mail footers and their ability to remove the footers. The Parties agree that the main purpose of the lawsuit was to compel AOL to notify its members of the existence of the footers, and the Settlement provides for such notice.

Plaintiffs concede that damages arising from AOL's insertion of the footers is small and difficult to ascertain on a case-by-case basis. Indeed, most, if not all Class Members have suffered no damage at all as a result of the insertion of the footers. Accordingly, if this case went to trial, the harm that the Class could prove would, *at most*, be the unjust enrichment AOL received as a result of its practice, and damages in large part would be limited to the amount AOL received from third parties who bought advertising from AOL. As discussed above and according to the most updated information available to AOL, the total AOL received is approximately $2 million in advertising revenue for this practice. This amounts to just a few cents per Class Member.

For this reason the Settlement is fair to both sides because Plaintiffs obtain the specific relief sought, and AOL is able to avoid the expense and the uncertainties of litigation. Moreover, per the terms of the Settlement Agreement, AOL will donate $25,000 to each of three charities largely selected by the mediator who supervised the Parties' settlement negotiations in this case (the distinguished United States District Court Judge Dickran M. Tevrizian (Ret.)), and $35,000 to charities chosen by the named Plaintiffs in lieu of receiving a cash incentive for serving as Class Representatives. Finally, the Class' recovery will not be diminished by the payment of Class Counsel's fees or the costs of the administration of the Settlement because AOL will pay separately Class Counsel's fees and the costs of administering the settlement. Class members will also prospectively benefit by being provided additional, recurring notice of the ability to remove the footers from their e-mails, with class members that currently have free accounts being afforded the same ability to remove footers from their e-mails that paid members have – something they presently lack.

### C. Class Certification Would By No Means Be Assured.

Although AOL has determined that settlement is a better alternative than litigation, and for purposes of the settlement only agrees that a Settlement Class should be certified, AOL would contest class certification if forced to litigate this case. In addition to exposing the deficiencies in the merits of Plaintiffs' claims, the evidence would demonstrate Plaintiffs' claims are highly individualized and therefore unsuitable for class treatment as a matter of law.

As a preliminary matter, Virginia law governs the substance of Plaintiffs' claims pursuant to the express choice of law provisions in the service agreements that govern this dispute. The application of Virginia law renders Plaintiffs' claims for unfair competition (California Business and Professions Code §§ 17200, *et seq.*), false advertising (California Business and Professions Code §§ 17529 *et seq.*), and

violations of the Consumers Legal Remedies Act (California Civil Code §§ 1750, *et seq*.) inapplicable as a matter of law. Moreover, even if California substantive law were applied, Plaintiffs would be unable to assert violations of California's consumer protection statues on behalf of non-California class members, especially since AOL is not incorporated in California and does not have its principal place of business located here. *See Norwest Mortgage, Inc. v. Superior Court*, 85 Cal.Rptr. 2d 18 (1999) (holding California's unfair competition law does not have extraterritorial application).

The Virginia choice of forum provision would also frustrate Plaintiffs' attempts to certify a nationwide class. AOL's service agreements state that "any disputes or claims" relating to AOL's service "will be resolved by a court located in the Commonwealth of Virginia." (Ben-Yoseph Decl., Ex. A.) Although this Court ruled in the related *Cecchini* matter that this choice of forum clause is unenforceable against California residents, the Court's decision was based specifically on California's unique public policy concerns. Because California's public policy would not apply to non-California residents (especially for conduct that occurred outside the state), the choice of forum provision should be enforceable with respect to all non-California members of the class. This would create a conflict between Plaintiffs and the Class that would be nearly impossible to reconcile. At the very least, any class certification analysis would require a state-by-state analysis to determine if jurisdiction is proper, rendering the chances for certification remote.

Finally, AOL would resist certification based on the fact that the Plaintiffs may not be typical or adequate representatives of the class, certain versions of the service agreements require all claims against AOL to be brought within 90 days, and the alleged damages, if any, are difficult to quantify and impossible to calculate on a classwide basis. In other words, if this case were fully litigated, certification would be by no means assured.

## IV. CONCLUSION

The proposed Settlement will benefit the sixty million Class Members and is a fair, reasonable, and adequate compromise. Any Class Member that feels the Settlement does not adequately serve his or her interests may opt out of the Settlement and pursue an individual claim.

For all of these reasons, and for the reasons stated in Plaintiffs' Motion, AOL joins in asking this Court to preliminarily approve the Class Settlement Agreement.

Dated: August 20, 2009            REED SMITH LLP

By  /s/ Michael A. Garabed
    Mark D. Litvack (SBN 183652)
    Michael A. Garabed (SBN 223511)

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. I employed by a member of this Court at whose direction service was made. My business address is REED SMITH LLP, 355 South Grand Avenue, Suite 2900, Los Angeles, CA 90071-1514. On August 20, 2009, I served the following document(s) by the method indicated below: ***DEFENDANT AOL, LLC'S REPLY TO AND JOINDER IN PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT***

☐ by transmitting via facsimile on this date from fax number 213.457.8080 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 PM and was reported complete and without error. Service by fax was made by agreement of the parties, confirmed in writing. The transmitting fax machine complies with Cal.R.Ct 2003(3).

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this Declaration.

☒ **by electronically serving the document(s) via CM/ECF on the recipients designated on the Transaction Receipt located on the CM/ECF website.**

☐ by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below. A copy of the consignment slip is attached to this proof of service.

Christopher J. Hamner, Esq.
Amy T. Wootton, Esq.
Kimberly A. Westmoreland
HAMNER LAW OFFICES, LLC
15760 Ventura Boulevard, suite 860
Encino, CA 91436
T: 818.386.0444

Glenn C. Nunes, Esq.
THE NUNES LAW GROUP
20501 Ventura boulevard, Suite 275
Woodland Hills, CA 91364
T: 818.999.9661
F: 818.999.9641

Richard L. Kellner, Esq.
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: 213.217.5000
Facsimile: 213.217.5010

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on August 20, 2009, at Los Angeles, California.

_____
Anne L. Broms

US_ACTIVE-101250025.1

– 1 –
PROOF OF SERVICE