THEODORE H. FRANK (SBN 196332)
    tedfrank@gmail.com
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 23-6
Washington, DC 20036
(703) 203-3848

Attorney for Objector Darren McKinney

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Dawn Fairchild, *et al.*, | Case No. CV09-03568 CAS (PLAx) |
|        *Plaintiffs*, | **PUTATIVE CLASS ACTION** |
|    vs. | **OBJECTION TO PROPOSED SETTLEMENT** |
| AOL, LLC, | Judge:     Honorable Christina A. Snyder |
|        *Defendant*. | Date:      December 28, 2009 |
| Darren McKinney, | Time:     10:00 a.m. |
|     *Objector*. | Courtroom: 5 |

**INTRODUCTION**

Class member Darren McKinney objects to the approval of the proposed settlement. Mr. McKinney believes that class action settlements that benefit no one but the attorneys hurt consumers, and that courts should use their oversight powers to prevent such extortionate settlements from occurring in the first place. These objections also serve as notice that Mr. McKinney's counsel Theodore H. Frank, intends to appear at the December 28 approval hearing.

Three law firms, representing plaintiffs in a putative class action over the presence of advertising in footers of AOL members' emails, have negotiated an extraordinary settlement that will pay zero to the millions of class members for extinguishing their claims, yet over $300,000 to the attorneys.  The non-economic benefit to the class—a $75,000 payment to charities that are neither class members nor have suffered any injury and an additional email to AOL members regarding policies predating the lawsuit—is illusory.  Moreover, the representative plaintiffs will get to direct $35,000 to the charities of their choice, hundreds of times more than any conceivable injury they have suffered. The case is a veritable poster-child for class action abuse.

In *Murray v. GMAC*, 434 F.3d 948, 952 (7th Cir. 2006), the Seventh Circuit held that a similar settlement was "untenabl[y]" beyond the pale of approval:

> This looks like the sort of settlement that we condemned in *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999), and *Crawford v. Equifax Payment Services*, 201 F.3d 877 (7th Cir. 2000), two appeals arising from the same litigation. That suit had been settled for $2,000 to the named plaintiff, $5,500 to a legal-aid society that had not been injured by the defendant's conduct, and $78,000 in legal fees. We treated the disproportion—$2,000 for one class member, nothing for the rest—as proof that the class device had been used to obtain leverage for one person's benefit. [citations omitted] Here the

proposed award is $3,000 to the representative while other class members are frozen out. The payment of $3,000 to Murray is three times the statutory maximum, while others don't get even the $100 that the Act specifies as the minimum. …

Such a settlement is untenable. We don't mean by this that all class members must receive $100; risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty. [citation omitted] But if the reason other class members get relief worth about 1% of the minimum statutory award is that the suit has only a 1% chance of success, then how could Murray personally accept 300% of the statutory maximum? And, if the chance of success really is only 1%, shouldn't the suit be dismissed as frivolous and no one receive a penny? If, however, the chance of success is materially greater than 1%, as the proposed payment to Murray implies, then the failure to afford effectual relief to any other class member makes the deal look like a sellout.

The AOL footer settlement is indistinguishable from the settlement criticized in *Murray* as "untenable."  There was one class representative in *Murray* who received $3,000, three times maximum possible statutory damages; here, there are four class representatives that will get to direct $35,000 to charity without any indication of personal or economic injury. In *Murray*, the 1.2 million unnamed class members were entitled to split a fund of $947,000; here, tens of millions of class members will end up with zero.  And the Putative Class Attorneys are seeking $320,000 in attorneys' fees, similar to the amount in *Murray*.

There are two possibilities.  The Putative Class Attorneys have brought either (1) a meritorious case that is being settled for an infinitesimal fraction of the case's real value in a "sellout" of the attorneys' and class representatives' fiduciary duties to the class, or

(2) a meritless lawsuit where the "class device had been used to obtain leverage for one person's benefit." *Murray*, 434 F.3d at 952. In either instance, the Putative Class Attorneys' actions should be deterred, rather than rewarded; the court should not award attorneys' fees. If Rule 23(e)(2) is to have any teeth whatsoever, this settlement must be rejected; it is hard to imagine another settlement result under the Class Action Fairness Act that is more self-serving of the Putative Class Attorneys.

## I. The Objector Is A Member Of The Class.

Darren McKinney (527 24th St. NE, Washington, DC 20002, (202) 543-7953) is a current member of AOL.

The putative settlement class is defined as "all current AOL members." As such, Mr. McKinney has standing to object.

## II. The Settlement Is Impermissibly Self-Dealing.

"Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). *Accord Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir. 1987) ("district court ha[s] a fiduciary responsibility to the silent class members"). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). *See also Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members").

Where a court is confronted with a settlement-only class certification, the court must look to factors "designed to protect absentees." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "Settlements

that take place prior to formal class certification require a higher standard of fairness." *Molski*, 318 F.3d at 953 (*quoting Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000)).

"These concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998).

The settlement proposed by Plaintiffs is indistinguishable from other settlements rejected by the Seventh and Ninth Circuits under Rule 23(e).  Compare this case with *Murray,* 434 F.3d at 952 ("untenable"); *Mirfasihi*, 356 F.3d 781; *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000) ("substantively troubling"); *Molski*, 318 F.3d at 956 ("unfair, inadequate, and unreasonable"):

|  | *Murray* | *Mirfasihi* | *Crawford* | *Molski* | *Fairchild* |
|---|---|---|---|---|---|
| **Unnamed class recovery** | Up to $947,000 | Between $243,000 and $2.64 million | $0 | $0 | $0 |
| **Rep. plaintiff payments** | $3,000 | $250 | $2,000 | $5,000 | $35,000 to charity |
| **Attorney fees** | ~$400,000 | $750,000 | $78,000 | $50,000 | $320,000 |
| **Approved?** | Rejected on appeal as "untenable" and remanded on other grounds. | Reversed as abuse of discretion. | Reversed as abuse of discretion. | Reversed as abuse of discretion. | ? |

The AOL footer settlement is inferior to other settlements rejected by the Seventh and Ninth Circuits: either the unnamed class members recover less money, or the attorneys and named class representatives receive more money.  There is ample precedent that not only should the court reject the settlement, but that approving the settlement

would be an abuse of discretion.  Any "presumption of fairness" is rebutted by the self-dealing nature of the settlement.

Though plaintiffs claimed to represent and seek to bind a sixty-million-member class, they have recovered cash for only their attorneys.  Even if one were to improperly credit the charitable pseudo-*cy pres* award to unrelated third parties as a benefit to the class, plaintiffs have recovered for the class $75,000 for a claim that they had alleged was worth hundreds of million of dollars of disgorgement plus "special" damages.  First Amended Complaint (Dkt. No. 8).  In other words, plaintiffs brought a billion-dollar lawsuit that they are settling for $75,000, a 0.01% success rate.  Meanwhile, the representative class members receive $35,000 to donate to the charity of their choice, despite shutting out all of the unrepresented class members.

In *Murray*, the 1% ratio of recovery to alleged damages and a 3000-1 ratio of representative-to-individual recovery was enough to call the settlement untenable: "if the reason other class members get relief worth about 1% of the minimum statutory award is that the suit has only a 1% chance of success, then how could Murray personally accept 300% of the statutory maximum? And, if the chance of success really is only 1%, shouldn't the suit be dismissed as frivolous and no one receive a penny?" 434 F.3d at 952.  Here, the "success" of plaintiffs is an abysmal failure of orders of magnitude larger than the failure criticized in *Murray*, and representative plaintiffs are seeking $35,000 in indirect rewards after winning zero for the average class member.  Plaintiffs are either breaching their fiduciary duties by selling the class short or are bringing an extortionate "strike suit" for their own selfish benefit.  Neither should be condoned by approving the settlement or attorneys' fees.

Plaintiffs defend the settlement on the grounds that there is *cy pres* relief to charitable organizations, and that there is injunctive relief.  Dkt. No. 27.  But this is insufficient to proclaim the settlement fair.  The settlement in *Molski* offered all of those remedies, and was still proclaimed "unfair, inadequate, and unreasonable" as a matter of law.

**III.    The Lawsuit Itself Harms Class Members' Interests.**

When plaintiffs bring low-value litigation with little chance of success on relatively meritless claims, as they appear to have done here, they raise costs to defendants, who have to pay for legal fees and for the extensive and expensive class action notice requirements.  Mr. McKinney, like the vast majority of class members, receive consumer surplus from their purchase and use of AOL services.  Self-dealing settlements like those of Putative Class Attorneys raise the costs to the defendants of providing these services, and raise prices to class members like Mr. McKinney without concomitant benefits, thus reducing their consumer surplus.  Consumer welfare would be improved if courts rejected such settlements and deterred socially inefficient rent-seeking litigation.

**IV.    Putative Class Attorneys Are Not Entitled To Costs.**

A prevailing party is entitled to costs.  Fed. R. Civ. Proc. 54(d)(1).  It is within a court's discretion to deny costs to a prevailing party when that party's success is but a small fraction of the relief they originally sought and litigated.  *Farrar v. Hobby*, 506 U.S. 103 (1992). Here, Putative Class Attorneys have obtained $0 in economic benefit for the class they purport to represent, when they originally claimed that their damages were effectively hundreds of millions of dollars plus punitive damages: they "asked for a bundle and got a pittance."  *Id.* at 120 (O'Connor, J., concurring).  This is the sort of *de minimis* nuisance settlement that should not be awarded more than nominal costs or fees. *Id.* at 121-22.

1

## CONCLUSION

2      The Putative Class Attorneys have brought either (1) a meritorious case that is
3  being settled for an infinitesimal fraction of the case's real value in a "sellout" of the
4  attorneys' and class representatives' fiduciary duties to the class, or (2) a meritless lawsuit
5  where the "class device had been used to obtain leverage for one person's benefit."
6  *Murray*, 434 F.3d at 952. In either instance, the Putative Class Attorneys' actions should
7  be deterred, rather than rewarded; the court should reject the settlement as failing to
8  comply with the requirements of Rule 23(a)(4) and Rule 23(e).   The Putative Class
9  Attorneys' requests for fees and costs should be rejected.

10  Dated: December 7, 2009

11                                                            Respectfully submitted,

12

13                                         _____ /s/Theodore H. Frank_____
                                           Theodore H. Frank (SB 196332)
14                                         **CENTER FOR CLASS ACTION**
                                           **FAIRNESS**
15                                         1718 M Street NW
                                           No. 23-6
16                                         Washington, DC 20036
                                           (703) 203-3848
17                                         Attorney for Objector Darren McKinney

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

I declare that:

I am employed in the state of Illinois.  I am over the age of 18 years and not party to the within action; my office address is 312 N. May Street, Suite 100, Chicago, Illinois 60607.

On December 7, 2009, I served the attached:

OBJECTION TO PROPOSED SETTLEMENT

__X__   By First-Class Mail in that I caused such envelope(s) to be delivered via First-Class Mail to the addressee(s) designated.

AOL E-mail Footer Litigation
Settlement,
P.O. Box 65771,
Sterling, VA 20165-8806

Glenn Nunes
The Nunes Law Group
15760 Ventura Blvd Ste 860
Encino, CA 91436

Christopher J. Hamner
Kimberly A. Westmoreland
Hamner Law Offices
15760 Ventura Blvd Ste 860
Encino, CA 91436

Brian Kabateck
Richard Kellner
Michael V. Storti
Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, CA 90017

Michael A. Garabed
Tamara M. Rowles
Reed Smith
355 South Grand Avenue Suite 2900
Los Angeles , CA 90071

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 7, 2009.

/s/ M. Frank Bednarz
M. Frank Bednarz