1 BRIAN S. KABATECK, SBN 152054
  (bsk@kbklawyers.com)
2 RICHARD L. KELLNER, SBN 171416
  (rlk@kbklawyers.com)
3 ALFREDO TORRIJOS, SBN 222458
  (at@kbklawyers.com)
4 MICHAEL V. STORTI, SBN 260215
  (ms@kbklawyers.com)
5 KABATECK BROWN KELLNER LLP
  644 South Figueroa Street
6 Los Angeles, California 90017
  Telephone: (213) 217-5000
7 Facsimile: (213) 217-5010

8 GLENN C. NUNES, SBN 210453
  (glenn@nuneslawgroup.com)
9 THE NUNES LAW GROUP
  15760 Ventura Blvd., Suite 860
10 Encino, CA 91436
   Telephone: (818) 386-0444
11 Facsimile: (818) 386-0050

12 CHRISTOPHER J. HAMNER, SBN 197117
   (chamner@hamnerlaw.com)
13 HAMNER LAW OFFICES
   15760 Ventura Blvd., Suite 860
14 Encino, CA 91436
   Telephone: (818) 386-0444
15 Facsimile: (818) 386-0050

16 Attorneys for Plaintiff
   and the Settlement class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAWN FAIRCHILD, ROBERT NACHSHIN, BRIAN GEERS and LAURENCE GERARD, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AOL, LLC., a Delaware Limited Liability Company; and DOES 1 through 10, inclusive;<br><br>Defendants. | CASE NO. CV09-3568 CAS (PLAx)<br><br>HON. CHRISTINA A. SNYDER<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Hearing<br>Date: December 28, 2009<br>Time: 10:00 a.m.<br>Courtroom: 5 |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. OVERVIEW OF THE ACTION..........................................................................2

III. SUMMARY OF THE SETTLEMENT TERMS AND
THE DUE DILIGENCE INVESTIGATION.....................................................3

    A. The Settlement Class ................................................................................3

    B. The Settlement Relief................................................................................3

    C. Notice ........................................................................................................4

    D. Attorneys' Fees .........................................................................................4

IV. THE STANDARD FOR JUDICIAL APPROVAL OF
CLASS SETTLEMENTS......................................................................................5

    A. The Court Should Approve the Proposed Settlement ........................5

    B. Final Approval is Appropriate Because the Proposed Settlement
is "Fair, Reasonable and Adequate" ......................................................9

        *1. The Settlement is the Result of Arms-Length Negotiations ......11*

        *2. The Class Received Benefits Through Prospective Relief
and Charitable Contributions.......................................................12*

        *3. Class Counsel Performed Sufficient Research and
Analysis to Adequately Assess the Settlement and Was
Able to Identify the Strengths and Weaknesses of the
Case ..................................................................................................12*

        *4. The Recommendations of Experienced Class Counsel
Heavily Favor Approval of the Settlement ...............................13*

        *5. The Reaction of the Class Supports Approval of the
Settlement........................................................................................14*

V. CONCLUSION ....................................................................................................15

— i —

**MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS SETTLEMENT (CV09-3568 CAS (PLAx))**

# TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................................... 5

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ............................................................................. 7

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir.1975) .............................................................................. 8

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ......................................................................... 14

*County of Suffolk v. Long Island Lighting Co.*,
   907 F.2d 1295 (2d Cir. 1990) .......................................................................... 12

*De La Fuente v. Stokely- Van Camp, Inc.*,
   713 F.2d 225 (7th Cir. 1983) ............................................................................. 6

*Dukes v. Wal-Mart, Inc.*,
   474 F.3d 1214 (9th Cir. 2007) ........................................................................... 6

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980), (9th Cir. 1981) .............................................. 14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..................................................................... 5, 14

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ............................................................................. 7

*In re Glassine & Greaseproof Paper Antitrust Litigation*,
   88 F.R.D. 302 (ED. Pa.1980) ........................................................................... 6

*In re Lorazepam*,
   205 F.R.D. 369 (D.D.C. 2002) .................................................................. 11, 13

*In re Pacific Enter. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ............................................................................... 9

*In re Painewebber Partnerships Ltd. Litig.*,
   171 F.R.D. 104 (S.D.N.Y.) .............................................................................. 14

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) .............................................................................. 5

*Jordan v. Los Angeles County*,
   669 F.2d 1311, 1323 (9th Cir. 1982) ................................................................ 7

*Linney v. Cellular Alaska Partnership*,
   151 F.3d 1234 (9th Cir. 1998) ......................................................................... 10

**MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (CV09-3568 CAS (PLAx))**

*Longman v. Food Lion, Inc.*,
   1994 WL 686624 (M.D.N.C. October 17, 1999) ............................................. 8

*Luevano v. Campbell*,
   93 F.R.D. 68 (D.D.C. 1981) ........................................................................... 13

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) .................................................................... 9, 14

*MWS Wire Indus., Inc. v. California Fine Wire Co.*,
   797 F.2d 799 (9th Cir. 1986) ........................................................................... 9

*Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................................. 14

*Pigford v. Glickman*,
   185 F.R.D. 82 (D.D.C. 1999) ........................................................................ 12

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ......................................................................... 6

*Sala v. National R.R. Passenger Corp.*,
   721 F.Supp. 80 (E.D. Pa. 1989) ..................................................................... 14

*Scholes v. Stone, McGuire & Benjamin*,
   143 F.R.D. 181 (N.D. Ill. 1992) ...................................................................... 7

*Schwartz v. Harp*,
   108 F.R.D. 279 (C.D. Cal. 1985) .................................................................... 7

*Smith v. University of Washington Law School*,
   2 F.Supp.2d 1324 (W.D. Wa. 1998) ............................................................... 7

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ....................................................................... 9, 10

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ........................................................................... 9

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910) ......................................................................................... 9

*Yamner v. Botch*,
   1994 WL 514035 (N.D. Cal. September 15, 1994) ....................................... 8

**<u>Rules</u>**

Fed. R. Civ. P. 23 .................................................................................................. 6, 7

— iii —

**MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (CV09-3568 CAS (PLAx))**

| | |
|---|---|
| 1 | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| 2 | **I.   INTRODUCTION** |
| 3 | Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs |
| 4 | respectfully submit this Memorandum of Points & Authorities in support of their |
| 5 | motion seeking entry of an Order for Final Approval of the Class Action |
| 6 | Settlement. |
| 7 | This class action concerns claims by all current AOL members.  During the |
| 8 | months following filing, all parties expended substantial amounts of time, energy, |
| 9 | and resources to investigate and develop their respective positions.  Based on their |
| 10 | prosecution of this case and their independent evaluation, Class Counsel is of the |
| 11 | opinion that the settlement with AOL is reasonable, fair and adequate.  The |
| 12 | settlement is in the best interest of the Class in light of known facts and |
| 13 | circumstances.  The settlement is the result of arms-length negotiations between |
| 14 | Class Counsel, experienced in complex class actions, and counsel for Defendant |
| 15 | AOL, LLC ("AOL"). |
| 16 | Pursuant to the proposed settlement agreement ("Settlement"), AOL will |
| 17 | provide: (i) prospective relief to customers through reformed business practices, |
| 18 | and (ii) retrospective relief in the form of substantial charitable donations.  Under |
| 19 | the terms of the Settlement, AOL will donate $110,000 to six charities.  Each class |
| 20 | member will benefit by the fact that AOL will no longer be able to profit from the |
| 21 | offending practice without the class member's consent.  Recovery will not be |
| 22 | diminished in any way by the payment of reasonable attorneys' fees and costs, or |
| 23 | the administration of this Settlement.  AOL will pay Class Counsel's fees |
| 24 | separately and will serve as Settlement Administrator at its own expense for |
| 25 | purposes of this Settlement. |
| 26 | The proposed Settlement is manifestly fair, reasonable and adequate relief. |
| 27 | It ends AOL ability to profit from intrusive advertisements without the consent of |
| 28 | the subscriber and benefits several worthy charities.  These benefits come without |

— 1 —

**MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (CV09-3568 CAS (PLAx))**

the delay and risk associated with complex litigation.  For the above reasons, Plaintiffs respectfully request that the Court grant Final Approval of the Settlement.

## II. OVERVIEW OF THE ACTION

AOL offers numerous Internet related services on both a free and paid basis. Plaintiff and Class Members obtained internet services through AOL by registering AOL accounts that enabled the account-holders to generate and receive e-mails.  In or around February 2006, AOL began inserting promotional messages as a footer attached to the end of e-mails sent by paying and non-paying subscribers to AOL's e-mail service.  At first, these footers promoted AOL's own products and services. Beginning in October 2008, the footers began to display promotional materials from third party advertisers. (Declaration of Michael V. Storti ("Storti Decl."), Ex. A, pp. 9:16-10:21.)  Discovery has revealed that AOL generated approximately $1.1 million in revenue from this practice. (Storti Decl., Ex. A, pp. 37:6-8.)

AOL did not disclose in its terms of service that it would place the footers on subscriber e-mails.  Moreover, until April 2008, AOL did not provide a method to discontinue the ad placements. (*Id.* at pp. 22:10-24:3.)  After that time, a paid subscriber could contact AOL and request that AOL stop inserting the footers at the bottom of that subscriber's e-mail. (*Id.*)  AOL, however, never notified paid subscribers of its new policy. (*Id.* at pp. 24:7-26:3.)

After extensive, arm's length negotiations under the auspices of retired United States District Court Judge Dickran M. Trevizian, and following substantial factual investigation and legal analyses of the claims and defenses of the parties, the parties reached a proposed Settlement as set forth in the Settlement Agreement.

On August 24, 2009, the parties appeared for Preliminary Approval of the Settlement Agreement and concomitant notice plan.  On August 25, 2009, the Court preliminarily approved the Settlement, certified the Class for purposes of the Settlement, and approved the proposed method of giving notice.  On September 21,

**MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (CV09-3568 CAS (PLAx))**

2009, Defendant provided notice via email to all Class Members. Notice was sent to each Class members' AOL email address and the period for opting out or objecting to the settlement has expired. *Id*.

### III. SUMMARY OF THE SETTLEMENT TERMS AND THE DUE DILIGENCE INVESTIGATION

The following is only a summary of the Settlement Agreement. The full text of the Settlement Agreement, and its accompanying exhibits, are attached as Exhibit B to the Declaration of Michael V. Storti in support of Plaintiff's Motion for Final Approval and are incorporated herein by this reference. Undefined capitalized terms have the meanings described in the attached Settlement Agreement.

#### A. The Settlement Class

The Settlement Agreement provides for the certification of a Settlement class defined as: All current AOL members ("Settlement Class" or "Class Members").

#### B. The Settlement Relief

Under the terms of this Settlement, AOL notified all Settlement Class Members of the existence of the e-mail footers and provided instructions to remove the footers from future emails. If AOL continues to insert e-mail footers containing promotional messages into the e-mails sent by its subscribers, AOL will re-send notice to all Class Members on the existence of the footers and their ability to remove them from future e-mails every six months for a period of two years. Further, AOL will furnish all future subscribers during the registration process with notice of the e-mail footers and instructions for their removal.

The Settlement Agreement also provides that AOL will donate $25,000 each to three charities named in the Settlement Agreement: (1) the Legal Aid Foundation for Los Angeles; (2) the Federal Judicial Center Foundation; and (3) the Boys and Girls Club of America (to be shared equally between the Los Angeles

— 3 —

**MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (CV09-3568 CAS (PLAx))**

and Santa Monica chapters). AOL will donate $8,750 to each of the charities specified by and on behalf of each of the four the Settlement Class Representatives. (Storti Decl., Ex. B, pp.7-8.) Dawn Fairchild and Robert Nachshin both designated the New Roads School of Santa Monica. Brian Geers designated the Oklahoma Indian Legal Services. Laurence Gerard designated the Friars Foundation. (*Id*. at 10.) These donations total $110,000 and are to be disbursed within 30 days after entry of final approval.

Individual Class Members were not compelled to take affirmative steps to avail themselves of the proposed Settlement. The Notice to the Class provided clear and detailed instructions to enable dissenters to exclude themselves from, object to, or appear in opposition to the content of the Settlement.

### C. Notice

As Settlement Administrator, AOL assumed primary responsibility for directing Notice to the Class Members and handling any undelivered email or responses. Notice was sent to the AOL email addresses of all current AOL members. Additionally, AOL and Class Counsel established websites designed to inform Class Members of their rights and responsibilities vis-à-vis the Settlement. (www.aole-mailfootersettlement.com and http://legal.web.aol.com/Footersettlement.pdf). On these websites, Class Members could access copies of the Notice, the Settlement Agreement, various pleadings filed in the case, as well as A list of frequently asked questions and their answers. This two-pronged Internet-based approach was reasonably calculated to reach each Class Member, and was substantially successful in doing so.

### D. Attorneys' Fees

The Settlement Agreement provides for the payment of reasonable attorneys' fees and costs, not to exceed $160,000 to Kabateck Brown Kellner, LLP, and $160,000 jointly to The Nunes Law Group and Hamner Law Offices.

— 4 —

Payment is subject to the Court's approval of the Class Counsel's application for fees and costs.

## IV. THE STANDARD FOR JUDICIAL APPROVAL OF CLASS SETTLEMENTS

Federal Rule of Civil Procedure, 23(e) requires court approval of any settlement that effects the dismissal of a class action. Settlement agreements reached before class certification must be reviewed both as to the requirements for class certification and fairness of the settlement. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621-22 (1997). First, the district court must determine whether a certifiable class exists. *Id*. Then, "the district court [must] determine that a class action settlement is fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also*, *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).

### A. The Court Should Approve the Proposed Settlement

Certification of the class is appropriate here. The usual standards for Rule 23(a) and (b) certification apply in the settlement context, with the exception of possible problems of trial management with respect to the settling defendant, which are not to be considered, since the settled case will not be tried. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621-22 (1997).

A class action is to be certified where, as here, the class satisfies the four prerequisites of Rule 23(a), as well as one of the three subsections of Rule 23(b). This case fully meets the requirements of Rule 23:

**Numerosity**: There is no issue of numerosity in the present case, since the class numbers in the tens of millions. *See generally*, 3B Moore, *Moore's Federal Practice* ¶ 23.22[3][a] (3 ed. 1999) (modern trend is that twenty-one or fewer plaintiffs will be insufficient, between twenty-one and forty plaintiffs will receive a mixed response, and with more than forty plaintiffs the courts generally find that the requirement of numerosity has been met).

— 5 —

**MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (CV09-3568 CAS (PLAx))**

**Commonality**: The second prerequisite to class certification is the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has made clear that the commonality requirement is to be "construed permissively." *Dukes v. Wal-Mart, Inc.,* 474 F.3d 1214, 1225 (9th Cir. 2007). Commonality can be established by showing "that the class is united by a common interest." *See Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (holding, "[S]light differences in class members' positions" will not defeat commonality.) The existence of "shared legal issues" will satisfy the commonality requirement, even if there are "divergent factual predicates." *Dukes*, 474 F.3d at 1225. Because the test of commonality is qualitative rather than quantitative, "one significant issue common to the class may be sufficient to warrant certification." *Id.*

The overarching and unifying allegations in this action are the same: (i) AOL placed promotional messages in the form of e-mail footers into outgoing e-mail messages and failed to notify subscribers of their existence; (ii) AOL lacked procedures by which customers could prevent this; and (iii) when implemented, AOL failed to notify its customers of their ability to opt-out.

**Typicality**: A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Slight factual distinctions between the named plaintiff and the claims of absent class members do not undermine typicality. *In re Glassine & Greaseproof Paper Antitrust Litigation*, 88 F.R.D. 302, 304 (ED. Pa.1980). Rather, courts focus on the defendants' conduct and the plaintiff's legal theory. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). "Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." *Dukes*, 474 F.3d at 1225.

When it is alleged that the same unlawful conduct was directed at or affected both the named Plaintiff and the class sought to be represented, the typicality

requirement is usually satisfied, irrespective of varying fact patterns which underlie individual claims. *Smith v. University of Washington Law School*, 2 F.Supp.2d 1324, 1342 (W.D. Wa. 1998) (stating, "Typicality turns on the defendant's actions toward the plaintiff class, not particularized defenses against individual class members.") Furthermore, the test for typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985). The typicality requirement is liberally construed. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). Accordingly, differences that may exist in the amount of injury suffered by each class members do not render plaintiffs' claims atypical. *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

In this case, the claims of the representative Plaintiffs arise from AOL's wrongful insertion of promotional footers into subscriber e-mails, and AOL's failure to provide adequate notice to the Class Members on how to opt out from having such footers added. Plaintiffs assert the same legal claims on behalf of themselves and the proposed Class. They claim that AOL violated several state and federal laws by this common practice, and that AOL was unjustly enriched as a result. Therefore, Plaintiffs' claims are certainly typical of the claims of the other Members of the Class.

**Adequacy**: The final requirement of Rule 23(a) is that the representative plaintiff fairly and adequately represents the interests of the class. Adequacy of the representation "requires that the named representative's attorney be qualified, experienced and generally capable to conduct the litigation, and that the named representative's interests not be antagonistic to the interests of the class." *Jordan v. Los Angeles County*, 669 F.2d 1311, 1323 (9th Cir. 1982). Adequacy of representation does not require the representative plaintiff to "possess encyclopedic

knowledge of the legal theories supporting a class' claims." *Longman v. Food Lion, Inc.*, 1994 WL 686624 (M.D.N.C. October 17, 1999). Rather, a plaintiff is an adequate class representative if he or she "has a basic understanding of the allegations in [the] case." *Yamner v. Botch*, 1994 WL 514035, slip op. at 7 (N.D. Cal. September 15, 1994).

Here, the interests of the representative Plaintiffs are not antagonistic to the Class because they are all similarly interested in obtaining prompt and valuable relief from AOL and ensuring that similar conduct does not happen in the future. Plaintiffs have a genuine interest in the litigation and a basic understanding of the allegations in this case. Additionally, Plaintiffs are represented by counsel who are highly qualified in class action litigation. (Storti Decl., ¶ 9; Nunes Decl., ¶¶ 13-15; Hamner Decl., ¶¶ 21- 23.) Therefore, the proposed Class meets the adequacy of representation requirement.

**Rule 23(b)**: Once the four prerequisites of Rule 23(a) are met, as they are in this case, the potential class must also satisfy at least one provision of Rule 23(b). *Thomas v. Albright*, *supra*, 139 F.3d at 234; *see also Rosario*, *supra,* 963 F.2d at 1017. Pursuant to Rule 23(b)(3), certification is proper when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and […] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." These requirements are satisfied here.

The questions of law and fact common to all class members are set forth above. These common issues predominate over any individual issues such as the nature and extent of damages. *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment."). Indeed, the underlying AOL practice of inserting promotional material into the footers of Class Members' outgoing mail is the central issue that predominates this class action. The damages issues in this case

are easily manageable because Plaintiffs are not seeking individual recovery, but rather securing a permanent change in AOL's conduct and policies as well as several charitable donations.

### B. Final Approval is Appropriate Because the Proposed Settlement is "Fair, Reasonable and Adequate"

The "overriding public interest in settling and quieting litigation" is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted). Without question, "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *see also, MWS Wire Indus., Inc. v. California Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983) ("[v]oluntary conciliation and settlement are the preferred means of dispute resolution.") Class actions are particularly amenable to settlement because of the uncertainties of the outcome, the difficulty of proof and the typical length of litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d at 443.

Under Federal Rule of Civil Procedure 23(e), a court should approve the settlement of a class action if it is "fundamentally fair, adequate and reasonable." *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995); see also *Officers for Justice*, *supra,* 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

The authority to approve a class settlement is committed to the sound discretion of the trial court. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal.

— 9 —

**MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (CV09-3568 CAS (PLAx))**

1980), *aff'd without op.*, 661 F.2d 939 (9th Cir. 1981). The Ninth Circuit has prescribed a non-exhaustive list of relevant factors that a trial court may consider in evaluating the fairness of a class action settlement, which includes the following:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).)

While the district court exercises discretion in approving a settlement, the court's evaluation of a proposed class settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice, supra*, 688 F.2d at 625. In *Officers for Justice*, the Ninth Circuit further explained:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Id.* (citations omitted).

Moreover, it is well established that "[t]he recommendations of Plaintiffs' Counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979), citation omitted).

An examination of all of the relevant factors shows that this settlement is fair, adequate and reasonable.

### 1. *The Settlement is the Result of Arms-Length Negotiations*

A proposed settlement is presumed to be fair and reasonable when it is the result of arm's length negotiations. See, Newberg, § 11.41; see also, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Lorazepam*, 205 F.R.D. 369, 375-76 (D.D.C. 2002) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations'") (quoting Manual Third, § 30.42); *In re Holocaust Victim Assets Litigation*, *supra*, 105 F. Supp. 2d at 145-46 (stating that in determining fairness, the "consideration focuses on the negotiating process by which the settlement was reached").

It is well established that so long as settlement negotiations are conducted at arms length by experienced counsel, a "strong initial presumption of fairness attaches to the proposed settlement." *In re Holocaust Victim Assets Litigation*, *supra*, 105 F. Supp. 2d at 145-46 (internal citations and quotations omitted); *In re NASDAQ Market-Makers Antitrust Litigation*, *supra*, 176 F.R.D. at 102 ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval should be granted.").

Here, the Settlement Agreement is the result of arm's length negotiations between experienced Class Counsel and counsel for AOL. Further, Settlement negotiations were conducted under the supervision of retired United States District Court Judge Dickran M. Tevrizian. The Settlement reflects not only the assistance and expertise of Judge Tevrizian, but also his approval. Such extensive involvement of skilled professionals in settlement discussions supports the conclusion that the settlement does not result from collusion. *See, County of*

— 11 —

**MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (CV09-3568 CAS (PLAx))**

*Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1323 (2d Cir. 1990); *Pigford v. Glickman,* 185 F.R.D. 82, 101 (D.D.C. 1999) (finding no evidence of collusion between counsel due to presence of a neutral and detached mediator at all settlement negotiations).

In short, nothing in the negotiations or the substance of the Settlement Agreement gives reason to doubt its fairness.

### *2. The Class Received Benefits Through Prospective Relief and Charitable Contributions*

Through this settlement, AOL has agreed to change it business practice so that it will no longer be able to profit from intrusive email footer advertisements without the consent of its subscribers. For every current AOL subscriber, AOL has created a manner in which the subscriber can remove the footer advertisements and has sent out instructions on how to do so. Further, AOL will give the same instructions to every new subscriber.

In addition to the prospective relief, AOL will donate $110,000 to several worthy charities as recompense for its wrongful conduct and the alleged profits it unjustly obtained from third party advertisers. The parties agreed to a settlement based on prospective relief because even if the Class were able to recover the full amount AOL earned from the footer advertisements, the amount due to each Class Member would be much less than the cost to administer the payment. The evidence shows that AOL received under $2 million in revenue since October 2008 when it began inserting promotional messages from third parties in its subscribers outgoing emails. Even if AOL were to pay the entire $2 million in damages to the Class, each of the Class Members would receive approximately 3 cents, before the costs of administering such a settlement were factored in.

### *3. Class Counsel Performed Sufficient Research and Analysis to Adequately Assess the Settlement and Was Able to Identify the Strengths and Weaknesses of the Case*

— 12 —

**MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (CV09-3568 CAS (PLAx))**

This Settlement follows a substantial factual investigation and legal analysis of the claims and defenses of the parties. Plaintiffs have conducted a comprehensive factual investigation into the matters set forth in the litigation, including an analysis of relevant documents and related data, as well as taking the deposition of Roy Ben-Yousef, the Vice President of AOL responsible for the e-mail footers. (Storti Decl., ¶¶ 5-6.)

Counsel for Plaintiffs and AOL engaged in numerous formal and informal settlement discussions, including two mediation sessions under the direction of the Hon. Dickran M. Tevrizian (Ret'd). (Storti Decl., ¶ 7.) Judge Tevrizian was instrumental facilitating the mutual determination that (1) the proposed Settlement was fair and (2) the selected charities were appropriate.

Based upon the foregoing, Class Counsel has concluded that a settlement according to the terms and conditions set forth in the Agreement is fair, reasonable, adequate, and in the best interest of the Class. (Storti Decl., ¶¶ 7-8.) *See*, *In re Lorazepam*, *supra*, 205 F.R.D. at 377 (citing *Luevano v. Campbell*, 93 F.R.D. 68, 86 (D.D.C. 1981) ("In evaluating the fairness and adequacy of a settlement, it is important to consider whether the settlement was reached after extensive factual development, so that counsel on both sides would have had information sufficient to make a reasonable assessment of their risks of litigation")).

### *4.  The Recommendations of Experienced Class Counsel Heavily Favor Approval of the Settlement*

Class Counsel and counsel for AOL entered into the Settlement Agreement after extensive, arduous, arm's length negotiations following substantial factual investigation and legal analyses of the claims and defenses of the parties. (Storti Decl., ¶¶ 5-6.) Class Counsel endorse the Settlement as fair, reasonable and adequate.

"'Great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural*

*Telecoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation and internal quotations omitted). "This is because 'parties represented by competent counsel are better positioned than Courts to produce a Settlement that fairly reflects each party's expected outcome in the litigation.'" *Id.* (citations omitted). Moreover, absent fraud or collusion, the Court "should be hesitant to substitute its own judgment for that of counsel." Id. at 582 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). *See also*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980), (9th Cir. 1981).

Counsel reached the Settlement terms based upon the evaluation of information received from AOL, the independent investigation performed by Plaintiffs and the evaluation of the risks of proceeding forward. In sum, the terms of the Settlement were fairly, honestly and aggressively negotiated by all parties in good faith and at arms length.

### 5. *The Reaction of the Class Supports Approval of the Settlement*

It is well settled that "the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Sala v. National R.R. Passenger Corp.*, 721 F.Supp. 80, 83 (E.D. Pa. 1989). In fact, the lack of objections may well evidence the fairness of the settlement. *In re Painewebber Partnerships Ltd. Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), aff'd, 117 F.3d 721 (2d Cir. 1997).

Out of the nearly sixty million Class Members who received notice, there are only two objections to the Settlement. This is strong evidence that this Settlement is fair, reasonable, and adequate. *Hanlon, supra*, 150 F.3d at 1027 ("the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness"); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) ("the small

number of class members indicating their disapproval of the settlement, here only one percent, also indicates its acceptability.").

As elaborated in a separate pleading to address the arguments raised by the few objectors, the paucity of the objections – both in number and in substance – further supports approval of this Settlement. Simply put, this is an acceptable Settlement for the Class.

## V. CONCLUSION

Based upon the foregoing, this Settlement merits final approval. Plaintiffs respectfully request that this Court enter an Order finally approving the Class Settlement and grant such other and further relief as this Court deems just and proper.

Dated: December 14, 2009

KABATECK BROWN KELLNER, LLP

By: /s/
Brian S. Kabateck
Richard L. Kellner
Alfredo Torrijos
Michael V. Storti
*Attorneys for Plaintiffs and the Settlement Class*

THE NUNES LAW GROUP

By: /s/
Glenn C. Nunes
*Attorney for Plaintiffs and the Settlement Class*

HAMNER LAW OFFICES

By: /s/
Christopher J. Hamner
*Attorney for Plaintiffs and the Settlement Class*

**MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (CV09-3568 CAS (PLAx))**