Brian S. Kabateck (State Bar No. 152054)
 (bsk@kbklawyers.com)
Richard L. Kellner (State Bar No. 171416)
 (rlk@kbklawyers.com)
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, CA 90017
Telephone:   213.217.5000
Facsimile:    213.217.5010

Glenn C. Nunes (State Bar No. 210453)
 (glenn@nuneslawgroup.com)
THE NUNES LAW GROUP
15760 Ventura Blvd., Suite 860
Encino, CA 91436
Telephone:   818.386.0444
Facsimile:    818.386.0050

Christopher J. Hamner (State Bar No. 197117)
 (chamner@hamnerlaw.com)
HAMNER LAW OFFICES, LLC
15760 Ventura Blvd., Suite 860
Encino, CA 91436
Telephone:   818.386.0444
Facsimile:    818.386.0050

Attorneys for Plaintiffs
and the Settlement Class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN FAIRCHILD, ROBERT NACHSHIN, BRIAN GEERS and LAURENCE GERARD, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AOL, LLC, a Delaware Limited Liability Company; and DOES 1 through 10 inclusive,<br><br>Defendants. | Case No.: CV 09-03568 CAS (PLAx)<br><br>**DECLARATION OF MICHAEL V. STORTI IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS SETTLEMENT**<br><br>Date:       December 28, 2009<br>Time:       10:00 a.m.<br>Dept.:       5<br><br>Honorable Christina A. Snyder |

# DECLARATION OF MICHAEL V. STORTI

I, Michael V. Storti, declare as follows:

1.      I am over the age of 18 and a resident of California.  I make this declaration of my personal and first-hand knowledge, and, if called and sworn as a witness, I would and could testify competently hereto.

2.      I am an attorney admitted to practice in the state California.  I am an associate at the law firm of Kabateck Brown Kellner LLP ("KBK").

3.      KBK is counsel of record for the plaintiffs in this action.

4.      I submit this declaration in support of Plaintiffs' Motion for Final Approval of Proposed Class Settlement.

5.      Prior to filing the complaint in this action, KBK conducted a thorough factual investigation into the claims underlying Plaintiffs' claims.

6.      Since the filing of this action, KBK has continued its investigations, both through formal and informal discovery.  This includes taking the deposition of Roy Ben-Yousef, the Vice President of AOL responsible for the e-mail footers at issue, which was conducted on May 15, 2009.

7.      The settlement in this action was reached after arms' length settlement discussions between KBK, KBK's co-counsel (Glenn Nunes and Christopher Hamner), and counsel for AOL.  The settlement was reached after numerous formal and informal settlement discussions and negotiations conducted under the direction of the Honorable Dickran M. Tevrizian, United States District Court Judge for the Central District of California (Retired).  This included multiple full and partial day mediation sessions.

8.      As this settlement provides for every class member to receive notice of the existence of the footer advertisements and their ability to opt-out, it addresses the issues raised in the operative Complaint and corrects the improper conduct going

forward because AOL also has agreed to notify all new subscribers of the existence of the footers.  Moreover, AOL will make substantial charitable donations as recompense for its wrongful conduct.  At least three of the charities chosen were at the suggestion of Judge Tevrizian who believed they were appropriate ones given the nature of this case.  Furthermore, the Class' recovery will not be diminished in any way by the payment of attorneys' fees, costs or administrative expenses.  In light of these facts, I express - without reservation - my opinion that the proposed settlement is fair, reasonable, and in the best interest of the Class.

9.      KBK's attorneys have successfully litigated dozens of class actions. Recent experience includes the following:

(a)      KBK's attorneys obtained a $20,000,000 settlement of the action entitled *Marootian, et al. v. New York Life Insurance Company*, Case No. C99-12073 CAS (MCx) (U.S.D.C., Central Dist. CA), in which the plaintiffs alleged that New York Life Insurance Company failed to pay benefits under life insurance policies it issued in and following 1875 in the Turkish Ottoman Empire on the lives of persons of Armenian descent;

(b)      In *Borrayo, et al. v. Carlton Forge Works*, L.A.S.C. Case No. BC298858, KBK's attorneys obtained a settlement that fully compensated a class composed of 244 employees who were not paid overtime wages which were owed for time worked on alternative work week schedule;

(c)      In *Epson Ink Cartridge Cases*, L.A.S.C. Case No. BC293641 & S.F.S.C. Case No. CGC-03-425588, KBK obtained a settlement on behalf of a nationwide class of consumers whose Epson printer cartridges were defined by printer software as being empty when, in fact, they contain a substantial amount of ink and may continue to print.  The settlement was approved on August 15, 2006 by the Superior Court of the State of California for the County of Los Angeles;

1    (d)    KBK was co-lead counsel in *Checkmate v. Yahoo!, Inc.*, U.S.

2    District Court, Case No. 05-cv-4588 (U.S.D.C., Central Dist. CA), which alleges that

3    defendants improperly charged its pay-per-click internet advertising clients for

4    fraudulent website "clicks" by third parties.  The settlement was approved on March

5    26, 2007;

6    (e)    KBK was lead counsel in *Marisol Balandran, et. al. v. Labor*

7    *Read, Inc.*, *et. al.,* L.A.S.C. Case No. BC 278551, an employment discrimination case

8    involving more than 200 women.  Final settlement approval was granted August 6,

9    2007;

10   (f)    KBK was co-lead counsel in *Alba v. Papa John's USA, Inc. et al.*,

11   U.S. District Court, Case No. 05-cv-7487 (U.S.D.C., Central Dist. CA), a wage and

12   hour suit involving more than 900 possible plaintiffs who worked at Papa John's

13   pizzerias, which was certified by the United States District Court on February 8, 2007.

14   Following certification, the case settled.  The settlement was granted final approval on

15   July 11, 2008;

16   (g)    KBK was co-lead counsel in *Hurtado v. TEG/L VI, Environmental*

17   *Services Inc.*, LASC Case No. BC276468, a class action for unpaid wages.  The case

18   was settled and final approval was granted on April 13, 2007;

19   (h)    KBK was co-lead counsel in *Harrison, et al. v. Pacific Bay*

20   *Properties, et al.,* L.A.S.C. Case No. BC285320, a construction defect class action.

21   Final settlement approval was granted on March 4, 2008;

22   (i)    KBK was co-lead counsel in *Cossey v. BCI Coca Cola Bottling*

23   *Co. of Los Angeles,* L.A.S.C Case No. BC36978, an employment class action

24   involving Coca-Cola Bottling Company employees who did not receive adequate pay.

25   Settlement was entered and finally approval granted approved in 2008.

26   (j)    KBK is co-lead counsel in *Van Horn v. Nationwide Casualty*

27   *Insurance Company, et al*, U.S. District Court, Civil No.: 08-cv-605 (U.S.D.C.,

28

1  Northern Dist. Ohio) a breach of contract class action asserting that insurance

2  company defendants prematurely terminated car rental benefits that they owed

3  policyholders.  A national class consisting of over 180,000 policyholders was granted

4  on certified on February 10, 2009.

5  (k)  KBK was co-lead counsel in *Lockette v. Ross Stores, Inc.*, U.S.

6  District Court, Civil No. 07-cv-3430 MMC, class settlement of an FLSA collective

7  action for unpaid overtime  based on the misclassification of of assistant managers.

8  Final approval of settlement was granted on March 11, 2009.

9  (j)  KBK is lead counsel in *Saloman v. Bodee, LLC*, L.A.S.C. Case No.

10  BC 379376, a California Business and Professions Code suit involving a claim for

11  misrepresentation of male enhancement products.  A nationwide class was certified on

12  April 22, 2009.

13  (l)  KBK is currently representing the National Association for the

14  Advancement of Colored People in a class action based on the racially discriminatory

15  lending practices of 18 national mortgage lenders.  *NAACP v. Ameriquest Mortgage*

16  *Company et al*., U.S. District Court, Case No. 07-cv-0794 (U.S.D.C. Central Dist.

17  CA).

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

10.     Attached hereto as Exhibit "A" are true and correct copies of excerpts from the deposition of Roy Ben-Yousef.

11.     Attached hereto as Exhibit "B" is a true and correct copy of the Class Action Settlement Agreement in this action and well as the amendments thereto.


I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct, executed on December 14, 2009 in Los Angeles, California.


_____/s/_____
Michael V. Storti

**EXHIBIT A**

Page 1

1

2                UNITED STATES DISTRICT COURT

3              CENTRAL DISTRICT OF CALIFORNIA

4

     -------------------------x
5    RANDE BRONSTER and ROBERT )
     NACHSHIN, on behalf of    )
6    themselves and all others )
     similarly situated,       )
7                              )
                               )
8               Plaintiffs,    )
                               )
9                              )No. CV 09-03568 CAS (AGRx)
                               )
10   AOL, LLC, a Delaware      )
     Limited Liability         )
11   Company; and DOES 1       )
     through 10, inclusive,    )
12                             )
                Defendants.    )
13   -------------------------x

14

15            DEPOSITION OF ROY BEN-YOSEPH

16               Los Angeles, California

17                Friday, May 15, 2009

18

19

20

21

22

23   Reported by:

24   SUSAN A. SULLIVAN, CSR #3522, RPR, CRR

25   JOB NO. 22884

ROY BEN-YOSEPH

1
2    A    No.
3    Q    Okay.  So who is your current employer?
4    A    AOL.
5    Q    How long have you been employed with AOL?
6    A    About eight and a half years.
7    Q    What's your current position?
8    A    I'm Vice President of E-mail products.
9    Q    And generally what are your job duties?
10   A    My team manages the product and product
11   management aspects of AOL Mail so we determine
12   strategy and technical direction of our mail
13   products, as well as I've got a set of folks who
14   manage business operations.
15   Q    Okay.  How long have you been in that
16   position?
17   A    I have been in the position of V.P. since
18   March of 2007.
19   Q    A little over two years?
20   A    That's right, yes.
21   Q    And prior to that with AOL what was your
22   position?
23   A    I was Director of Mail Products.
24   Q    And what did your job entail as Director?
25   A    It was a similar job that I have today,

ROY BEN-YOSEPH

1
2    different title.
3    Q    Same job?
4    A    Same job.
5    Q    Okay.  And before that?
6    A    I was Director of Access Product
7    Management.
8    Q    Generally what was that?
9    A    It was Product Management of several
10   products including the AOL Client, Mail, Connectivity
11   and several other products.
12   Q    When you say "Access," it is --
13   A    To the AOL service.
14   Q    Before that, was that your first job with
15   AOL?
16   A    No, I was Principal Product Manager of
17   E-mail.
18   Q    Was that your first job?
19   A    Before that I was Senior Project Manager of
20   E-mail and that was my first job at AOL.
21   Q    Okay.  Briefly what's your educational
22   background?
23   A    I have an M.B.A. from Emory University and
24   a J.D. from Emory University Law School and I have a
25   B.S. in math from Florida Atlantic University.

ROY BEN-YOSEPH

1
2    Q    Okay.  So among other things AOL offers
3    E-mail service, correct?
4    A    That's right.
5    Q    And does AOL offer a free E-mail service?
6    A    Yes.
7    Q    Okay.  Does it also offer a paid E-mail
8    service?
9    A    AOL offers an E-mail service that is
10   offered to users whether they're free or whether they
11   pay AOL for a bundle of services which includes
12   things like connectivity or support.  E-mail is a
13   product that is offered across both the paid and the
14   free.  It is the same product mostly.
15   Q    Well, you said mostly.  What's the
16   difference if I were to pay for that package that
17   includes E-mail, what do I get that I wouldn't get
18   with just free E-mail?
19   A    There are actually two differences.  One of
20   them is I mentioned support.  When you pay for an
21   account through AOL, you can get support on E-mail,
22   at least talking to a person or online support.  And
23   the other difference is you have the ability to opt
24   out of E-mail folders that are attached to E-mail.
25   Q    We will go into that one in a minute.

ROY BEN-YOSEPH

1
2    Are these differences something that AOL
3    tells its current users or potential users, it is
4    something that they advertise or publicize, these
5    differences?
6    A    As it relates to support we do because when
7    we sell services, paid services, support is one of
8    the items that's offered through I guess most of our
9    pricing plans.  I'm not exactly sure if it is all of
10   them, but it is a major category of what we offer
11   from our paid services.
12   Q    Okay.
13   So you are here today to testify about the
14   placement of those footer ads in E-mails, right?
15   A    Yes.
16   Q    So we're on the same page, describe for me
17   what a footer ad is in an E-mail.
18   A    A text footer attached to an E-mail
19   promotes something.  It promotes either an AOL
20   property or site or content that AOL offers or it may
21   promote a third party product.
22   Q    And AOL is currently putting footer ads in
23   E-mails?
24   A    That's correct.
25   Q    And those are in all E-mails, so the free

ROY BEN-YOSEPH

1
2 accounts and subscriber accounts?
3     A   It is in free account and paid account, in
4 vast majority of E-mail.  There's a small category of
5 E-mails that are sent by users, whether free or paid,
6 through third-party clients.  So to be more specific,
7 our customers can use Outlook or Thunderbird or
8 third-party E-mail clients to send their E-mail.  If
9 they use that, footers are not attached and it
10 doesn't matter if they're paid or free, and that's
11 the vast minority of E-mail sent.
12    Q   Okay.  When did AOL begin putting footer
13 ads in E-mails?
14    A   AOL began putting footer ads or footers in
15 E-mail around February or March of 2006.  Those ads,
16 they were not ads, they were actually a promotion,
17 they were marketing for AOL.
18    Q   Okay.  When did it change to or when did
19 you begin adding third-party advertisements?
20    A   Third-party advertisements was done around
21 October 2008.
22    Q   Okay.
23       MR. LITVACK:  There's an in between step.
24    Do you want to take him through it?
25       THE WITNESS:  I can.

ROY BEN-YOSEPH

1
2       MR. LITVACK:  Take him through it.
3     A   I will take you through an in between step.
4 I mentioned that in February or March 2006 we started
5 promoting AOL so the promotion was AOL in general,
6 come use AOL free services, AOL has services for you,
7 E-mail communication, et cetera.  In December of 2007
8 those footers were expanded to promote another AOL
9 properties so the messaging moved from just general
10 AOL marketing message to come use AOL properties.  An
11 example would be come read the news at AOL News or
12 check for maps at MapQuest and that was done in
13 December of 2007 and as I mentioned earlier, in
14 October of 2008, that's when third-party footers
15 began running in combination.
16    Q   So focusing on the people who do have ads
17 in their E-mail, people who are on AOL typing their
18 E-mail, when I'm typing my E-mail on aol.com or on
19 another mail client do I see the ad in the footer or
20 I see the text I'm typing?
21    A   You see the text you are typing and you do
22 not see the footer until you press "Send" and you
23 have the opportunity it see it.
24    Q   It is something that happens after I press
25 "Send" or the user presses "Send," that's when the ad

ROY BEN-YOSEPH

1
2 gets inserted?
3     A   The ad gets inserted after it gets to the
4 host system which is after the user presses "Send."
5    Q   Walk me through that process.  The user
6 presses "Send" and there's an ad and it gets
7 delivered.  Give me the general steps that that
8 E-mail takes.
9     A   Sure.
10       So a user can use several applications,
11 whether it is our AOL Client or AOL Web Mail to type
12 an E-mail.  When they type the E-mail they type
13 whatever they want in the E-mail and express "Send."
14 That content in E-mail that's put together in that
15 application is then sent to our host systems for
16 further delivery and once it gets to the host system
17 the host system appends the footer as well as does
18 other checks; for example, for safety and security,
19 and then the message is sent out to whoever the
20 recipient -- sorry, the sender sends it to all those
21 recipients and then they receive that E-mail.
22    Q   Okay.
23       You already testified that every E-mail
24 that goes through AOL, AOL's specific clients, not
25 third-party clients but every specific AOL client

ROY BEN-YOSEPH

1
2 gets an E-mail or gets an ad attached at the end.
3     A   That's right.  If you use the AOL Client
4 like AOL 9.0 or AOL Web Mail application the footer
5 is attached.
6    Q   With no distinction between a paid
7 subscriber or a free account?
8     A   The only distinctions may be sometimes for
9 promotional purposes we would decide if you send it
10 through -- I take it back, I'm sorry.  That
11 distinction is about Client and Web.  We do not have
12 a distinction between paid and free with the
13 exception that paid users can opt out of sending the
14 footer.
15    Q   What you were just describing, it depends
16 on what client you use that the ad will go in there?
17    A   Let me expand on that.  Not paid versus
18 free.  Our marketing group that determines what we
19 promote on a certain footer sometimes for marketing
20 purposes or for test of whether a certain promotion
21 is better than another will decide that a certain
22 mail sent from a certain client, whether it is Web or
23 actual AOL 9.0 Client or a different version will get
24 a different footer.  So in one day I may send a mail
25 from AOL Client and it says "Use MapQuest" and then

Page 22

ROY BEN-YOSEPH

1
2 thing.  We launched this in February or March of
3 February of '06 and we launched it only through web
4 mail.  In June of '06, June of '06, yes, we then
5 added the clients.  Again, they were all the same
6 message and no distinction between paid and used, it
7 was all across the board.  And that lag was simply a
8 development lag, no reason behind it.
9    Q   Okay.
10       Now you mentioned that paid subscribers can
11 opt out of these ads.
12    A   Yes.
13    Q   Can you describe for me what steps they
14 would need to take to do so?
15    A   Yes, sure.  They have opportunities to do
16 so in any of -- in any of our applications.  So in a
17 web mail, in the web mail applications they would go
18 into settings and there's a page within settings for
19 composing E-mail and within there there's a link that
20 you click on it, it says "Click here to turn off your
21 E-mail marketing footer," and a page comes up and on
22 that page you can say, you confirm by pressing "Okay"
23 and then your footer is off.
24       In the Client environment there's several
25 ways to get in.  One of them is the keyword.  A lot

TSG Reporting - Worldwide  (877) 702-9580

Page 23

ROY BEN-YOSEPH

1
2 of people use "Keywords" and if you type in keyword
3 "Footer" then you get the exact same experience which
4 is confirm you want to turn it off, press "Okay" and
5 it is turned off.
6       Additionally, and this applies to all our
7 user, paid users whether they're using Web or Client
8 or just going to our help portal, if they search our
9 help pages for turning off footer they will get the
10 directions on how to turn that off, so I think that's
11 the process.
12    Q   Okay.
13       That's currently the process?
14    A   Yes.
15       I'm sorry, can I add one more thing here?
16       If they call our Member Services Group or
17 they have an online contact with Member Services and
18 say I don't like this footer, I want to turn it off,
19 they're given the directions.
20    Q   And that's currently the process for
21 different methods of turning off the footers?
22    A   Yes.
23    Q   Have those methods been consistent since
24 February-March '06?
25    A   They have actually been consistent since we

TSG Reporting - Worldwide  (877) 702-9580

Page 24

ROY BEN-YOSEPH

1
2 introduced them in April of 2008.  Well, I'm sorry,
3 since we introduced the opt out in April of 2008.
4    Q   Okay.  So prior to April of '08 there was
5 no opt out.
6    A   That's right.
7    Q   When AOL began placing footer ads did they
8 notify the subscribers?  I know the subscribers would
9 see eventually that these ads were in their E-mails
10 but is this something that was, subscribers were
11 alerted in advance or did it just kind of roll out?
12    A   They were not alerted, it was rolled out.
13    Q   And for people who signed up after that
14 date, February-March '06 date, were they -- was there
15 any type of disclosure or statement in the signup
16 process or in the terms of service that talked about
17 these footer ads?
18    A   Not that I know of specifically footer ads,
19 but in general our service, whether you use it or
20 across, has ads on it so this is another type of
21 advertising.  So people -- that answers both of your
22 questions from earlier, right?  It is folks who were
23 customers when you -- when we added it and also new
24 people coming in.  AOL has ads on the service.
25    Q   Is there any statement in AOL's terms of

TSG Reporting - Worldwide  (877) 702-9580

Page 25

ROY BEN-YOSEPH

1
2 service about these footer ads?
3    A   I don't believe there's a statement that
4 specifically speaks of footer ads or footer
5 marketing.
6    Q   Okay.
7       So when this opt-out feature came online in
8 April '08, what did AOL do if anything to inform
9 their subscribers that this is now a possibility?
10    A   We added specific scripts to our membership
11 services consultants so when someone asks about the
12 footer, marketing footers or the footer ads, they can
13 opt out.  We added pages to our help support files
14 and we also in any other support questions that we
15 get, whether it is on blogs or whether it is on
16 question and answer sites, whenever someone asks, we
17 inform them.
18    Q   Okay.  But it is all -- it is reactive?  In
19 other words, do you do proactive, send an E-mail out
20 on your subscribers or post a notice?
21    A   We did not send an E-mail or post a notice.
22    Q   So the subscriber has to either search for
23 the way to turn it off or call and ask or ask a
24 customer service, IM a customer service rep?
25    A   Yes.  One of our sources, whether

TSG Reporting - Worldwide  (877) 702-9580

ROY BEN-YOSEPH

1    questions, whether searching help files or going to
2    help files, I should say, to turn that off, yes.
3
4        **Q   Okay.**
5            **Did AOL do anything, any studies or surveys**
6    **or type of analysis on the preference of their --**
7    **let's go generally to E-mail users first, to their,**
8    **what their reaction would be to these ads prior to**
9    **the implementation?**
10       A   Yes, absolutely.
11           In fact, just concluded in April of this
12   year was a six-month study that took a control group
13   of users and did not put footers on their E-mail and
14   then took a control group of users that had footers
15   in their E-mail and by account number, in general
16   information, saw that their cancel rates, their
17   complaint rates, whether online or through Member
18   Services, as well as their general usage of the
19   service, was basically not materially significant.
20   There was no significant change between those two
21   groups, the control and the test group.  So it is
22   not, it hasn't increased complaints -- it hasn't, it
23   hasn't increased churn or cancellations.
24           And the other really important piece is
25   that we really see what happens in how footers drive

ROY BEN-YOSEPH

1    engagement so if we send footers out; for example,
2    let's take December 2008 as an example, I think
3    footers were clicked on by recipients just over four
4    million times and those actually produced 17, almost
5    17 million page views.  So to describe those terms,
6    when someone gets an E-mail and clicks on a footer,
7    that would be one click.  Once they go to that site,
8    let's say AOL News, they can continue to look through
9    the different areas of the site and each of that time
10   they would see a new page, it is considered a page
11   view.  So we actually see that people get these
12   footers and they click on them and they actually get
13   engaged in the site they're going to, so for some
14   users it is absolutely a benefit and they take
15   advantage of what we offer by showing them the
16   different sites you have in AOL Marketing.  So those
17   are really the two things that come to mind that have
18   really shown the consumer perception of the footer.
19       **Q   Okay.  That was a six-month study you**
20   **said --**
21       A   Complete in April so that would make it I
22   believe November through April.
23       **Q   Okay.**
24           **Was there anything done before the ads**

ROY BEN-YOSEPH

1    were, the ads were started in '06?
2        A   Yeah.  I think, I don't know the exact
3    timing, but I believe it was sometime in 2008,
4    probably early in the year, probably beginning of
5    2008 there was a general conversation with Member
6    Services to see if we could track down if this is
7    impacting complaints or churn and in general it was a
8    relatively low volume.
9            The other thing, as the person who really
10   manages the product experience around AOL Mail, when
11   there's a problem, I know about it.  People call and
12   have issues on many things, whether it is billing,
13   whether it is E-mail not working, whether it is even
14   footers.  Whenever something gets to a point where we
15   have to do something about it I get a call about it,
16   and I have not gotten a call to say you need to act
17   here, you need to do something, so that's another
18   view to things.
19       **Q   Just to clarify, the study you just talked**
20   **about, the six-month study that ended April of this**
21   **year --**
22       A   Yes, April 2008.  I'm sorry, 2009.  It
23   ended actually April 12, 2009.
24       **Q   So you mentioned that study, you mentioned**

ROY BEN-YOSEPH

1    a study before that or did I get confused on the
2    dates?
3        A   What I mentioned, when they're talking to
4    Member Services, I don't know if I would call that a
5    study but it was really just a conversation with our
6    Member Services Group to see if there's an impact.
7    And that was a few months after we had launched those
8    marketing footers in December of '07 so it was really
9    taking the pulse of the Member Services organization
10   to see if we had a major issue, which we did not.
11       **Q   Is that the first time that you looked at**
12   **consumers' reactions or preferences?**
13       A   I guess in a more formal way.
14           MR. LITVACK:  Consumer reactions or
15   preferences to what?
16           MR. STORTI:  To the ads.
17           MR. LITVACK:  Not consumers' reactions in
18   general, that wasn't your first time looking at
19   it?
20       A   Yes.  I was taking the question to mean
21   consumer reaction to the marketing footer and my
22   answer is or is still in a more formal way we
23   constantly engage in, in fact, general consumer
24   reaction as well as consumer reaction to the footers

ROY BEN-YOSEPH

1  ROY BEN-YOSEPH
2  day.
3      Q   So it depends on the day and the customer.
4  What are the better days?
5      A   From what I understand, a Monday when
6  people come back into the office and start reading
7  their mail is higher than a Sunday or weekend in
8  general, so Monday is a good day.  There's another
9  day, there are different levels on each day.  Monday
10 is the one that I know.
11     Q   Do you have or do you know or can you find
12 out the, well, several specific numbers, the number
13 of subscribers who had footer ads placed in their
14 E-mails?
15     A   Speaking of paid subscribers.
16     Q   Paid subscribers.
17     A   I'm not totally sure how to answer the
18 question because the number from cases from when to
19 when, is it now; I mean, I know the number of paid
20 subscribers we have so that is roughly six million
21 but I'm not sure how to answer the question what the
22 bounds are for that question.
23     Q   How many paid subscribers from
24 February-March '06 to now had a footer ad placed in
25 their E-mail?

ROY BEN-YOSEPH

1  ROY BEN-YOSEPH
2      A   I'm not sure how to --
3      MR. LITVACK:  Generally, as he said, all
4  E-mail users would have had a footer placed in
5  an E-mail but for those who have opted out.
6      Q   Okay.  So --
7      A   I believe the answer would be six million.
8      MR. LITVACK:  So basically all of them
9  except for the opt-outs.  If you want to ask him
10 how many opt-outs, that's the question.
11     MR. STORTI:  I was going to get there.
12     Q   How many opt-outs?
13     A   As of March of this year, just shy of
14 50,000.
15     Q   So in 11 months 50,000 people.  You said
16 April of '08.
17     A   April of '08, yes, sir.
18     Q   In a typical day do you know how many
19 E-mails pass through, are sent from AOL?
20     A   Between 20 and 30 million.  These are sent.
21     Q   E-mails that would have ads?
22     A   Yes.  So E-mails that would have the footer
23 placed on them would be 20 and 30 million.
24     I will add that on average there are two
25 recipients per E-mail.  In other words, when they say

ROY BEN-YOSEPH

1  ROY BEN-YOSEPH
2  20 to 30 million, we actually have double that of
3  footers attached to them, if that makes sense.
4      Q   Yes, it does.
5      A   And two is the average recipient, the
6  average number of recipients.
7      Q   You said earlier that the vast minority of
8  those E-mails are sent from third-party clients.
9      A   That's right.
10     Q   You can track where that E-mail was sent
11 from, whether it was a third-party client or
12 obviously AOL.
13     A   Yes, we can.
14     The reason the third-party clients don't
15 have that is simply the technology that we haven't
16 built.  It just uses a different system to send mail
17 and we just haven't built the footer system there.
18     Q   To quantify the vast minority out of that
19 20, 30 million, approximately how many are sent from
20 third-party clients?
21     A   An educated guess would be less than two
22 percent.
23     Q   Does AOL have a separate accounting method
24 of tracking third-party ads versus the marketing ads?
25 Do you credit yourself for an expense not incurred or

ROY BEN-YOSEPH

1  ROY BEN-YOSEPH
2  a lost revenue from marketing ads?
3      A   We do not.  We do not credit ourselves for
4  expense not earned as you were just saying.
5      Q   So a marketing ad has -- strike that.
6      From October of '08, how much revenue has
7  AOL generated from third-party advertisers?
8      A   About 1.1 million.
9      MR. LITVACK:  Michael, is the question
10 before that you wanted to ask him, does he have
11 an estimate of the value of the marketing it did
12 internally that's promotional?
13     MR. STORTI:  Yes.
14     MR. LITVACK:  Can you answer that question?
15     A   I can answer the -- so what we do, I
16 mentioned earlier that we can track clicks and
17 therefore page views to each of the sites.  So taking
18 2008 as an example, there were roughly 227 million
19 page views generated by the footer and we know which
20 pages they went to, whether it is AOL Health, whether
21 it is AOL News or AOL MapQuest, and AOL has a value
22 they assign to each property or each site on what the
23 value is for each thousand page views.  So taking all
24 of that into account and adding those multipliers in
25 there is roughly, in 2008 it is taking it on an

Page 54

```
 1              ROY BEN-YOSEPH
 2    two so let's say there are about 20 billion footer
 3    opportunities in a year.
 4        Q   Okay.
 5        A   20 billion.
 6            MR. STORTI:  That's all.  I'm done.
 7            MR. LITVACK:  Nothing further.
 8            MR. STORTI:  Nothing further.
 9            MR. LITVACK:  The witness will read and
10    sign the deposition before any notary.  You are
11    fine with that?
12            MR. STORTI:  Yes.
13            MR. LITVACK:  And if he does not, either of
14    us can use it or you can use the original or a
15    copy of the original in place of the original.
16            MR. STORTI:  Yes.
17            (Whereupon the deposition concluded at
18            12:09 p.m.)
19    ///
20                _____
                   ROY BEN-YOSEPH
21
22    Subscribed and sworn to
23    Before me this    day
24    of        200 .
25    _____
26
```

TSG Reporting - Worldwide  (877) 702-9580

Page 55

```
 1              ROY BEN-YOSEPH
 2    State of California   )
 3                          ) ss.
      County of Los Angeles )
 4
 5        I, SUSAN A. SULLIVAN, CALIFORNIA CSR No.
 6    3522, RPR, CRR, do hereby certify:
 7        That prior to being examined ROY BEN-YOSEPH,
 8    the witness named in the foregoing deposition, was,
 9    before the commencement of the deposition, duly
10    administered an oath in accordance with C.C.P.
11    Section 2094;
12        That the said deposition was taken before me
13    at the time and place therein set forth, and was
14    taken down by me in shorthand and thereafter
15    transcribed into typewriting under my direction and
16    supervision; that the said deposition is a true and
17    correct record of the testimony given by the witness;
18        I further certify that I am neither counsel
19    for, nor in any way related to any party to said
20    action, nor in any way interested in the outcome
21    thereof.
22        IN WITNESS WHEREOF, I have subscribed my
23    name on this 28th day of May, 2009.
24
                   _____
25                      CSR
```

TSG Reporting - Worldwide  (877) 702-9580

Page 56

```
 1              ROY BEN-YOSEPH
 2               INDEX
 3
 4    TESTIMONY OF ROY BEN-YOSEPH           PAGE
 5    Examination by Mr. Storti          4
 6    Examination by Mr. Litvack         45
 7    Examination by Mr. Storti          51
 8
 9    (No exhibits offered)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

TSG Reporting - Worldwide  (877) 702-9580

Page 57

```
 1              ROY BEN-YOSEPH
 2    NAME OF CASE:  Bronster vs. AOL
 3    DATE OF DEPOSITION:  May 15, 2009
 4    NAME OF WITNESS:  ROY BEN-YOSEPH
 5    Reason Codes:
 6        1. To clarify the record.
         2. To conform to the facts.
 7        3. To correct transcription errors.
 8    Page _____ Line _____ Reason _____
      From _____ to _____
 9
      Page _____ Line _____ Reason _____
10    From _____ to _____
11    Page _____ Line _____ Reason _____
      From _____ to _____
12
      Page _____ Line _____ Reason _____
13    From _____ to _____
14    Page _____ Line _____ Reason _____
      From _____ to _____
15
      Page _____ Line _____ Reason _____
16    From _____ to _____
17    Page _____ Line _____ Reason _____
      From _____ to _____
18    Page _____ Line _____ Reason _____
      From _____ to _____
19    Page _____ Line _____ Reason _____
      From _____ to _____
20    Page _____ Line _____ Reason _____
      From _____ to _____
21
22
                _____
23                ROY BEN-YOSEPH
24
25
```

TSG Reporting - Worldwide  (877) 702-9580

Page 57

ROY BEN-YOSEPH

NAME OF CASE: Bronster vs. AOL

DATE OF DEPOSITION: May 15, 2009

NAME OF WITNESS: ROY BEN-YOSEPH

Reason Codes:

     1. To clarify the record.

     2. To conform to the facts.

     3. To correct transcription errors.

Page _35_ Line _7_ Reason _1,2,3_

From _six_ to _sixteen_

Page _8_ Line _24_ Reason _3_

From _folders_ to _footers_

Page _12_ Line _13_ Reason _3_

From _express_ to _press_

Page _26_ Line _19_ Reason _1,3_

From _Significant_ to _different_

Page _31_ Line _15_ Reason _3_

From _YETTA.com_ to _YEDDA.com_

Page _44_ Line _3_ Reason _3_

From _regularly_ to _randomly_

Page ___ Line ___ Reason ___

From ___ to ___

Page ___ Line ___ Reason ___

From ___ to ___

Page ___ Line ___ Reason ___

From ___ to ___

Page ___ Line ___ Reason ___

From ___ to ___

_signature_

ROY BEN-YOSEPH

**EXHIBIT B**

Brian S. Kabateck, SBN 152054
Richard L. Kellner, SBN 171416
Alfredo Torrijos, SBN 222458
Michael V. Storti, SBN 260215
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, CA  90017
Telephone:   (213) 217-5000
Facsimile:    (213) 217-5010

Glenn C. Nunes, SBN. 210453
THE NUNES LAW GROUP
15760 Ventura Blvd., Suite 860
Encino, CA 91436
Telephone:   (818) 386-0444
Facsimile:    (818) 386-0050

Christopher J. Hamner, SBN 197117
HAMNER LAW OFFICES
15760 Ventura Blvd., Suite 860
Encino, CA 91436
Telephone:   (818) 386-0444
Facsimile:    (818) 386-0050

Attorneys for Plaintiffs
and the proposed class

Mark D. Litvack, SBN 183652
Michael A. Garabed, SBN 166606
Tamara M. Rowles, SBN 228940
REED SMITH LLP
1901 Avenue of the Stars, Suite 700
Los Angeles, CA  90067
Telephone:   (310) 734-5200
Facsimile:    (310) 734-5299

Attorneys for Defendant, AOL, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DAWN FAIRCHILD, ROBERT NACHSHIN, BRIAN GEERS and LARRY GERARD on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AOL, LLC, a Delaware Limited Liability Company; and DOES 1 through 10 inclusive,<br><br>Defendant. | No.: CV09-03568 CAS (PLAx)<br><br>Honorable Christina A. Snyder<br><br>**CLASS ACTION**<br><br>**CLASS ACTION SETTLEMENT AGREEMENT** |

*REED SMITH LLP*
*A limited liability partnership formed in the State of Delaware*

This Class Action Settlement Agreement ("Agreement"), negotiated under the guidance of the Honorable Dickran M. Tevrizian (Ret.), is entered into by, between, and among, on the one hand, Plaintiffs Dawn Fairchild, Robert Nachshin, Brian Geers and Laurence Gerard (collectively Plaintiffs) on behalf of themselves and as putative representative of the Settlement Class defined below; and, on the other hand, AOL LLC, its parents, subsidiaries and affiliates (collectively, "AOL" or "Defendant"). The Plaintiffs and the Defendant are collectively referred to as "the Parties."

This Agreement is entered into to effect a full and final settlement and dismissal with prejudice of all claims asserted or that could have been asserted against AOL in the Lawsuits brought by Plaintiffs against AOL (the "Litigation") on the terms set forth below and to the full extent reflected below, subject to the approval of the Court.

## **RECITALS**

Plaintiffs filed Complaints against AOL in the United States District Court for the Central District of California.  Plaintiffs filed these Complaints on behalf of themselves and a putative class of persons and entities alleging that AOL wrongfully inserted e-mail footers into e-mails sent by the Plaintiffs and asserting claims under the Electronic Communication Privacy Act; the California Business and Professions Code §§ 17200, *et seq.*; and the California Consumers Legal Remedies Act, as well as claims for breach of contract and unjust enrichment and additional claims under federal and state CAN-SPAM statutes.

AOL denies both the accuracy of the factual allegations of the Complaints and that they state any legally cognizable claim because, inter alia, AOL has made never made any representation to consumers in its Terms of Service or otherwise regarding the non-placement of promotional or advertising material in e-mail footers; the primary purpose of e-mails sent through the AOL service is controlled by consumers, not AOL, and, therefore, the inclusion of promotional or advertising material in an e-mail footer does not render the primary purpose of such e-mail "commercial"; AOL

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-101972611.3

enables paid and free members to opt out of the inclusion of promotional or advertising material in e-mail footers through various means including AOL KW: Footer, AOL Help, and AOL Web Mail; and the claims asserted in the Litigation do not satisfy the requirements for a class action for purposes other than settlement. Absent a settlement of this Litigation, AOL would seek summary judgment on all claims, vigorously oppose class certification, and otherwise vigorously defend against these claims.

Plaintiffs' counsel conducted a factual investigation into the matters set forth in the Litigation, including the deposition of AOL's Vice President of Mail Products regarding the history, scope, and technical aspects of the e-mail footer program and other e-mail-related promotional and advertising programs as well as consumer response to such programs, and the review and analysis of documents and data regarding the e-mail footer program and AOL's various service offerings. Plaintiffs' counsel has also reviewed judicial rulings and regulatory materials on various legal issues related to the Litigation; and legal and factual analysis related to certifying a class for purposes of trial and the practicability and efficiency of certifying a class for settlement purposes.

After engaging in numerous settlement discussions, including two mediation sessions under the direction of the Honorable Dickran M. Tevrizian, United States District Judge for the Central District of California (Ret.), Plaintiffs determined that a proposed settlement would be fair, reasonable, adequate, and in the best interests of the Settlement Class and that it is desirable that the Litigation be settled in the manner and upon the terms and conditions set forth herein.

The gravamen of the Complaints is that Class Members failed to receive proper notice on how to avoid having e-mail footers added to the Class Members' e-mails. This Settlement provides that, upon its approval, all Class Members will not only immediately be provided direct electronic notice of their ability to avoid having these e-mail footers together with a hyperlink within the notice itself enabling them to

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-101972611.3

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

discontinue these e-mail footers by clicking on such link, but if AOL elects to continue appending footers to the Class Members' e-mails that they will also be provided such notice on a regular, periodic basis. Additionally, this Settlement provides that if AOL elects to continue appending footers to e-mails that AOL must provide notice of these e-mail footers to all new customers upon their establishment of an AOL account either as part of the registration path or as part of an e-mail registration confirmation enabling them to discontinue these e-mail footers by clicking on a link within such path or confirmation.

All of the above is achieved, plus significant contributions to several worthy charities, without the time and risk and expense of litigation, and permits AOL to avoid the expense, inconvenience, and distraction of further legal proceedings.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, the Parties hereto agree as follows, subject to Preliminary and Final Approval of the Court:

## <u>AGREEMENT FOR SETTLEMENT PURPOSES ONLY</u>

1. This Agreement is for settlement purposes only, and neither the fact of its existence, nor any provision contained in it, nor any negotiations or proceedings related thereto, nor any action taken hereunder shall constitute, or be construed as, any admission of the validity of any claim or any fact alleged by Plaintiffs in the Litigation or of any wrongdoing, fault, violation of law, or liability of any kind on the part of Defendant or any admission by Defendant of any claim or allegation made in any action or proceeding against Defendant. This Agreement and its exhibits shall not be offered or be admissible in evidence against the Parties or the Settlement Class in any action or proceeding in any forum for any purpose whatsoever, except any action or proceeding brought by or against any Plaintiff, Settlement Class Member or Defendant to enforce its terms or to support a defense of res judicata, collateral estoppel, release, or other theory of claim or issue preclusion or similar defense.

US_ACTIVE-101972611.3

2.      Though presently there is separate litigation brought by the Plaintiffs, the Plaintiffs recognize the similarity of the causes of actions and Plaintiffs Geers and Gerard have agreed to dismiss their actions, *without prejudice.*  Thereafter, Plaintiffs will collectively file an Amended Complaint in Case No. CV09-03568, listing Ms. Fairchild and Messrs. Nachsin, Geers and Gerard as Plaintiffs and all counsel to this Agreement as counsel for the respective parties to this Agreement.   This New Amended Complaint, ("NAC") based upon federal question jurisdiction, shall include all claims presently being made in Case No. CV09-03568.  AOL agrees to consent to the filing of any and all papers necessary to allow the NAC to be filed.

### BENEFITS OF SETTLEMENT TO PLAINTIFFS AND THE SETTLEMENT CLASS

3.      Plaintiffs believe that the claims asserted in the NAC have merit. However, Plaintiffs recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against AOL through trial and through appeals.  Plaintiffs have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this action, as well as the difficulties and delays inherent in such litigation.  Moreover, Plaintiffs have taken into account that, as explained herein, this settlement provides for meaningful contributions by AOL to several different charitable entities.

4.      Plaintiffs' counsel conducted a factual investigation into the matters alleged in the NAC, including an analysis of documents and related data; a deposition of the key AOL person responsible for the business areas relevant to this matter, and a legal and factual analysis of certifying a class for purposes of trial and the practicability and efficiency of certifying a class for settlement purposes.

5.      After considering these and other factors, Plaintiffs' counsel has concluded that the settlement embodied in this Settlement Agreement is fair and reasonable to all Settlement Class Members, and will confer substantial benefits upon the Settlement Class, particularly because of the nature of the harm by these e-mails

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-101972611.3

and the remedy provided by the settlement to Settlement Class Members, and to future customers of AOL's e-mail service.  Based on their evaluation, Plaintiffs' counsel has determined that the settlement set forth in this Settlement Agreement is in the best interests of Plaintiffs and the Settlement Class.

## PRELIMINARY CERTIFICATION OF SETTLEMENT AND SETTLEMENT CLASS

6.      The Parties stipulate to certification, for settlement purposes only, of the Settlement Class defined as follows:

> All current AOL members.

The Parties agree that the foregoing class will be certified for settlement purposes only, and that this settlement shall not be construed to represent either an assertion or concession that such a settlement class would be manageable at trial, and in the event this Agreement is not given final approval or this settlement is not finalized for any reason whatsoever, the Parties acknowledge and agree that Defendant remains free to challenge whether this proposed class or any other proposed classes are properly certifiable in the Litigation or anywhere else, and Plaintiffs shall not argue that anything in this Agreement limits Defendant's right to do so.

7.      Solely for the purpose of implementing this Agreement and effectuating the settlement, Defendant stipulates that the Court may enter an Order preliminarily certifying the Settlement Class, appointing Plaintiffs as representatives of the Settlement Class, and appointing the following as class counsel (hereinafter "Settlement Class Counsel") for the Settlement Class:

Brian S. Kabateck, Esq.
Richard L. Kellner, Esq.
Kabateck Brown Kellner LLP
644 S. Figueroa Street
Los Angeles, CA 90017

Glenn C. Nunes, Esq.
The Nunes Law Group
15760 Ventura Blvd., Suite 860
Encino, CA 91436

Christopher J. Hamner
Hamner Law Offices
15760 Ventura Blvd., Suite 860
Encino, CA 91436

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-101972611.3

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CLASS NOTICE AND SETTLEMENT OPT-OUT PROCEDURES

8.     The Parties agree that the best practical notice may be accomplished through e-mail notice to all class members.  All potential class members shall receive the Notice attached as Exhibit A.  The Parties also agree that the establishment of a website would facilitate notice to the class members.  AOL agrees to establish a website with the URL www.aole-mailfootersettlement.com and shall post Exhibit A at this site.

9.     Neither Party, or any person acting on behalf of any Party, shall provide or publish any form of Notice except as provided for herein without prior written approval of the content of such Notice by all Parties, other than any information provided to any Court in furtherance of this Agreement

10.     It shall be the responsibility of Settlement Class Counsel to respond to all reasonable inquiries from members of the Settlement Class.

11.     The Honorable Dickran M. Tevrizian, United States District Judge for the Central District of California (Ret.) shall function as Settlement Arbitrator to supervise the administration of this Settlement and to resolve any related disputes.

12.     AOL, in consultation with Settlement Class Counsel and under the supervision of the Settlement Arbitrator, shall be responsible for the following tasks, including, without limitation, (i) e-mailing or arranging for the e-mailing of the Notice set forth in Paragraph 8; (ii) handling returned e-mail not delivered and making any additional e-mailings required under the terms of the Agreement; (iii) simultaneously providing to Settlement Class Counsel and counsel for AOL copies of any and all objections, notices of intention to appear and requests for exclusion from the Settlement Class within five (5) business days after receipt; (iv) preparing a list of all persons who timely request exclusion from the Settlement Class and submitting an affidavit attesting to the accuracy of that list (the "Opt-Out List"); (v) preparing a list of all persons who submitted objections to the settlement and submitting an affidavit

US_ACTIVE-101972611.3

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

testifying to the accuracy of that list; and (vi) providing any declarations necessary or appropriate for completion of the Settlement.  AOL will provide all information and data in its possession to implement its responsibilities under this Agreement.

13.    Within 14 days after the Preliminary Approval Order, AOL shall provide to the Settlement Arbitrator a complete listing of the names and e-mail addresses of all members of the Settlement Class.   AOL, in consultation with Settlement Class Counsel and under the supervision of the Settlement Arbitrator, shall send the Notice to each such person by e-mail within thirty (30) days after Preliminary Approval Order (the "Notice Date"), unless extended by Order of this Court.

14.    Within 30 days after the Preliminary Approval Order, AOL shall establish a website with the URL www.aole-mailfootersettlement.com and shall post Exhibit A at this site

15.    All potential members of the Settlement Class shall have ninety (90) days after the Notice Date to submit requests for exclusion from the Settlement Class.  The requests for exclusion must be prepared and directed in the manner set forth in the notice proposed hereunder.  Specifically, the Opt-Outs must include the person's name and address and be sent by the Member via e-mail to settlementopt-out@corp.aol.com

16.    Plaintiffs agree that none of them shall elect nor seek to opt out or exclude herself or himself from the Settlement Class.

17.    Plaintiffs, Settlement Class Counsel, and AOL hereby agree not to engage in any communications with the media or press, including press releases, on the Internet, or in any public forum, orally or in writing, that relate to this Settlement or the Litigation, other than statements that are fully consistent with the Notice.  The Settlement Arbitrator shall have full authority to determine whether any such statement or communication is consistent with the terms of this paragraph and this Settlement Agreement and shall be empowered to issue appropriate relief, including attorneys' fees and sanctions for breach of this Paragraph.  This does not preclude

US_ACTIVE-101972611.3

Settlement Class Counsel from communicating with settlement Class Members as set forth in Paragraph 10 above.  This also does not preclude either Party, or their counsel from providing information to their respective auditors or to any Court in furtherance of this Agreement.

18.     All members of the Settlement Class will receive the settlement relief provided for by this Settlement Agreement.

19.     Defendant shall pay for all costs of settlement administration, including all costs associated with class notice, the Settlement Arbitrator and all costs as the Settlement Administrator, except as provided herein.

<u>**RELIEF TO SETTLEMENT CLASS MEMBERS**</u>

20.     Within 30 business days of the Effective Date, if AOL continues to append e-mail footers, AOL must e-mail all Settlement Class Members a second Notice that is substantially similar to Exhibit B attached hereto.  The purpose of the second Notice is to inform all Settlement Class Members of the existence of the footers and their ability to easily remove these e-mail footers from future e-mails sent by the Settlement Class Members.  If AOL continues to append e-mail footers, AOL will re-send this second notice to all Settlement Class Members every six months for a period of two years –a total of five (5) e-mail deliveries.

<u>**OTHER RELIEF PROVIDED FOR BY THIS SETTLEMENT**</u>

21.     As of the Effective Date, if AOL continues to append e-mail footers to its members' e-mails, AOL will inform all new members of the existence of the e-mail footers either (1) as part of the process for registering an AOL account or (2) as part of an e-mail confirming the registration of an AOL account.

22.     If AOL continues to append e-mail footers to its members' e-mails as part of the registration process or as part of the confirmation process, AOL shall provide each member a link enabling the member to discontinue these e-mail footers.

23.     Within 30 days of the Effective Date, AOL will donate $25,000 each to

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

US_ACTIVE-101972611.3

(1) the Legal Aid Foundation for Los Angeles; (2) the Federal Judicial Center Foundation; and (3) the Boys and Girls Club of America (to be shared equally between the Boys and Girls Club of Los Angeles and of Santa Monica).

24.     Within 30 days of the Effective Date, AOL shall donate $8,750 to the designated charity of each of the Settlement Class Representatives.  Ms. Fairchild has designated the New Roads School of Santa Monica as her designated charity.  Mr. Nachsin has designated the New Roads School of Santa Monica as his designated charity.  Mr. Geers has designated the Oklahoma Indian Legal Services as his designated charity.  Mr. Gerard has designated the Friars Foundation as his designated charity.  Such charitable donations shall reference the respective Settlement Class Representative.  No one of the Settlement Class Representatives shall receive any additional remuneration or monetary compensation pursuant to this Settlement Agreement or the resolution of this Litigation.

## ATTORNEYS' FEE AWARD

25.     The Parties expressly agree that the terms of this Agreement are not conditioned upon any minimum or maximum attorneys' fees award.

26.     Kabateck Brown Kellner LLP, as Settlement Class Counsel, agree not to seek from the Court an award of attorneys' fees and costs to Settlement Class Counsel in excess of one hundred and sixty thousand dollars ($160,000) ("Attorneys' Fee and Costs Award").  AOL will not file an objection to any motion that is made which is fully consistent with this Paragraph.

27.     The Nunes Law Group and the Hamner Law Group, as Settlement Class Counsel, each agree not to collectively seek from the Court an award of attorneys' fees and costs to Settlement Class Counsel in excess of one hundred and sixty thousand dollars ($160,000) ("Attorneys' Fee and Costs Award").  AOL will not file an objection to any motion that is made which is fully consistent with this Paragraph.

28.     No later than five (5) days after approval by the District Court, AOL will pay the Attorneys' Fee and Costs Awards ordered by the Court to Settlement Class

US_ACTIVE-101972611.3

Counsel.  If any Order by any Court alters or modifies this Approval, or alters the amount due to Settlement Class Counsel, each settlement Class Counsel shall be jointly and severably liable for the return of any monies paid.

29.    Except for paying the Charitable Donations referenced herein, and the amount of the Attorneys' Fee Awards, as awarded by the Court, AOL shall not be responsible to Plaintiffs, Settlement Class Counsel, or any member of the Settlement Class for any attorneys' fees, costs, or expenses.

## FINAL APPROVAL, DISMISSAL OF CLAIMS, AND RELEASES

30.    If this Agreement (including any modification thereto made with the consent of the Parties as provided for herein) is approved by the Court following the Final Approval Hearing scheduled by the Court in its Preliminary Approval Order, the Parties shall request the Court to enter the Final Order and Judgment, without material alteration from that attached as Exhibit C hereto, which among other things:

(a)    finds that the Court has jurisdiction over all members of the Settlement Class and that the Court has subject matter jurisdiction to approve this Agreement and all exhibits thereto;

(b)    certifies the Litigation as a class action pursuant to Federal Rule of Civil Procedure 23 for settlement purposes only (the Court expressly reserving the right to determine, should the occasion arise, whether the Litigation may be certified as a class action for purposes other than settlement, and AOL retaining all rights to assert that the Litigation may not be certified as a class action except for settlement purposes);

(c)    gives Final Approval to this Agreement as being fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the members of the Settlement Class and as being consistent and in compliance with all requirements of federal and state law, and directs the Parties and their counsel to implement and consummate this Agreement in accordance with its terms and provisions;

(d)     declares this Agreement and the Final Order and Judgment to be binding on and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Release maintained by or on behalf of Plaintiffs or any other members of the Settlement Class, as well as their heirs, executors and administrators, successors, and assigns;

(e)     finds that the notice program implemented pursuant to this Agreement (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Litigation, their right to object or exclude themselves from the proposed settlement and to appear at the Final Approval Hearing, and their right to seek monetary and other relief; (iii) was reasonable and constitutes due, adequate and sufficient notice to all persons entitled to receive notice; and (iv) met any and all applicable requirements of Due Process and federal law (including any notices due under the Federal Rules of Civil Procedure);

(f)     finds that Plaintiffs and Settlement Class Counsel adequately represented the Settlement Class for the purpose of entering into and implementing the Agreement;

(g)     dismisses the Litigation on the merits and with prejudice and without fees or costs except as provided herein;

(h)     adjudges that Plaintiffs and the Settlement Class have conclusively compromised, settled, discharged, dismissed, and released any and all Released Claims against AOL;

(j)     approves the payment of the Attorneys' Fee and Cost Awards to Settlement Class Counsel as set forth herein;

(k)     without affecting the finality of the Final Order and Judgment for purposes of appeal, reserves jurisdiction over AOL, Plaintiffs and the Settlement Class as to all matters relating to the administration, consummation, enforcement and

US_ACTIVE-101972611.3

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

interpretation of the terms of the Settlement and the Final Order and Judgment and for any other necessary purposes;

(l)     provides that, upon the Effective Date, Plaintiffs and all members of the Settlement Class who have not been excluded from the Settlement Class shall be permanently barred from asserting any Released Claims against AOL or its respective agents, affiliates, assigns, and other designees, and that any such members of the Settlement Class shall have released any and all Released Claims against AOL and its respective agents, affiliates, assigns, and other designees;

(m)    determines that the Agreement and the settlement provided for herein and any proceedings taken pursuant thereto are not and should not in any event be offered or received against AOL as evidence of a presumption, concession, or an admission of liability or of any misrepresentation or omission in any statement or written document approved or made by AOL; provided, however, that reference may be made to this Agreement and the settlement provided for herein in such proceedings as may be necessary to effectuate the provisions of this Agreement;

(n)     bars and enjoins all members of the Settlement Class from: filing, commencing, prosecuting, intervening in or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on, relating to or arising out of the claims and causes of action (or the facts and circumstances relating thereto) in the Litigation and/or the Released Claims, unless named on the Opt-Out List;

(o)     approves the Opt-Out List and determines that the Opt-Out List is a complete list of all Settlement Class members who have timely requested exclusion from the Settlement Class and accordingly, shall neither share in nor be bound by the Final Order and Judgment; and

(p)     authorizes the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Agreement and all exhibits hereto as (i) shall be consistent in all material respects with

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

US_ACTIVE-101972611.3

the Final Order and Judgment and (ii) do not limit the rights of the Settlement Class members.

31.     As of the Effective Date, Plaintiffs and other members of the Settlement Class who have not excluded themselves from the Settlement Class hereby expressly agree that they shall release and discharge AOL, and its respective parents, subsidiaries, affiliated entities, predecessors, successors and assigns and each of their respective present, former, and future officers, directors, employees, agents, third party Customer Service Providers, third party payment processors, independent contractors, successors, assigns, parents, subsidiaries, affiliates, insurers, attorneys, and legal representatives (collectively, "Releasees") of and from all Released Claims and shall not now or hereafter initiate, maintain or assert against the Releasees any causes of action, claims, rights, demands, actions, damages, equitable, legal, and administrative relief, interest, demands, or rights, including without limitation, claims for damages of any kind, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law or any other sources, that have been, could have been, may be or could be alleged or asserted now or in the future by the Plaintiffs or any member of the Settlement Class, either directly or as the representative of other persons or entities, against the Releasees or any of them in the Litigation or in any other court action or before any administrative body, tribunal, arbitration panel or other adjudicating body on the basis of, connected with, arising out of or related to the Released Claims.  Subject to Court approval, all members of the Settlement Class who do not exclude themselves from the Settlement Class in the manner specified herein shall be bound by this Agreement, and all of their claims shall be dismissed with prejudice and released, even if they never received actual notice of the Litigation or the Settlement.

(a)     The Parties acknowledge and agree that the relief afforded under this Agreement fully and completely satisfies the Settlement Class members' claims for relief attributable to them for footers being attached to their outgoing e-mails.

- 14 -

US_ACTIVE-101972611.3

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(b)     This Release also covers, without limitation, any and all claims for attorneys' fees, costs, or disbursements incurred by Settlement Class Counsel or any other counsel representing Plaintiffs or members of the Settlement Class or by Plaintiffs or members of the Settlement Class, or any of them, in connection with or related in any manner to the Litigation, the settlement of the Litigation, the administration of such settlement and/or the Released Claims except to the extent otherwise specified in the Agreement.

(c)     Plaintiffs and the Settlement Class expressly acknowledge that they are familiar with principles of law such as Section 1542 of the Civil Code of the State of California, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

To the extent that, notwithstanding the choice of law provisions in the Agreement, California or other law may be applicable, Plaintiffs and the Settlement Class hereby expressly agree that the provisions, rights and benefits of Section 1542 and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable herein are hereby knowingly and voluntarily waived and relinquished by Plaintiffs and the Settlement Class to the fullest extent permitted by law solely in connection with unknown claims constituting Released Claims, and Plaintiffs and the Settlement Class hereby agree and acknowledge that this is an essential term of this Release.  In connection with this Release, the Plaintiffs and the Settlement Class acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to the matters

US_ACTIVE-101972611.3

released herein.  Nevertheless, it is the intention of the Plaintiffs and the Settlement Class in executing this Release to fully, finally, and forever settle and release all matters and all claims relating thereto, which exist, hereafter may exist or might have existed (whether or not previously or currently asserted in any action) constituting Released Claims.

(d)    Nothing in this Release shall preclude any action to enforce the terms of this Agreement, including participation in any of the processes detailed therein; provided, however, that no Settlement Class Member shall have any claim against Settlement Class Counsel, the Settlement Administrator, Defendant or Defendant's counsel based on the claim administration process made substantially in accordance with this Agreement.

32.    For purposes of this Agreement, "Released Claims" means any and all claims, actions, causes of action, rights, demands, suits, debts, liens, contracts, agreements, offsets, or liabilities, including but not limited to claims for breach of contract, breach of the duty of good faith and fair dealing, negligence, unjust enrichment, money had and received, bad faith, breach of statutory duties (including, but not limited to, violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693e, the Electronic Communication Privacy Act, 18 U.S.C. § 2510, the Postal Reorganization Act, 39 U.S.C. § 3009, the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq., Cal. Civ. Code § 1750, *et seq*., Cal. Bus. & Prof. Code § 17200, *et seq.*, Cal. Bus. & Prof. Code § 17500, *et seq.*), actual or constructive fraud, misrepresentations, fraudulent inducement, statutory consumer fraud or protection violations, breach of fiduciary duty, unfair or deceptive business or trade practices or acts, restitution, rescission, conversion, compensatory and punitive damages, mental or emotional distress, injunctive or declaratory relief, attorneys' fees, interests, costs, penalties and any other claims, whether known or unknown, alleged or not alleged in the Litigation, suspected or unsuspected, contingent or matured, under federal, state, or local law, which Plaintiffs or any member of the Settlement Class

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

- 16 -

had, now has, or may in the future have with respect to any conduct, act, representations, omissions, facts, matters, transactions or oral or written statements or occurrences prior to the date of the entry of the Preliminary Approval Order involving, based on, relating to, arising out of, or in any way connected with, directly or indirectly, to e-mail footers.

## WITHDRAWAL FROM SETTLEMENT

33.   Within fifteen (15) days after the occurrence of any of the following events, and upon written notice to counsel for all Parties, any Party shall have the right to withdraw from the Settlement:

(a)   if the Court fails to approve this Agreement or if on appeal the Court's approval is reversed or modified; or

(b)   if the Court alters any of the terms of this Agreement; or

(c)   if the Preliminary Approval Order, as described herein, or the Final Approval Order, as described herein, is not entered by the Court, or is reversed or modified on appeal, or otherwise fails for any reason.  In the event of a withdrawal pursuant to this Paragraph, any certification of a Settlement Class will be vacated as to that withdrawing Party, without prejudice to any Party's position on the issue of class certification, and the withdrawing Party shall be restored to its litigation position existing immediately before the execution of this Agreement.

34.   If it is determined by the Settlement Arbitrator that Plaintiffs or their Counsel breach Paragraph 17 of this Agreement or if more than ten thousand (10,000) members of the Settlement Class timely submit a valid request for exclusion from the Settlement Class as set forth herein, (other than Class Members expressing their satisfaction with Defendant and/or disclaiming any claim against AOL), or if any State, federal, or local governmental authority seeks to opt out of the Settlement on behalf of its residents then AOL may, at its sole option, withdraw from this Agreement.  In order to elect to withdraw from this Agreement on the basis set forth in this Paragraph, AOL must notify Settlement Class Counsel in writing of its election

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 17 -

to do so within ten (10) business days after the Opt-Out List has been served on the Parties.  In that event, all of AOL's obligations under this Agreement shall cease to be of any force and effect; the certification of the Settlement Class shall be vacated without prejudice; and the Parties shall be restored to their litigation position existing immediately before the execution of this Agreement.

35.   In the event AOL withdraws from the Agreement as set forth above, Plaintiffs stipulate that Defendant may assert any and all defenses and claims in the Litigation and that Plaintiffs shall not argue that AOL is barred from asserting those defenses or claims due to waiver, estoppel or similar arguments as a result of the passage of time due to settlement negotiations.

36.   In the event of AOL's withdrawal, AOL shall remain obligated for all costs and expenses for which it is otherwise obligated under this Agreement which are due and owing as of the date of withdrawal.

## EFFECTIVE DATE

37.   The "Effective Date" of this Agreement shall be the date when each and all of the following conditions have occurred:

(a)   This Agreement has been fully executed by all the Parties and their counsel;

(b)   Orders have been entered by the Court certifying a Settlement Class, granting preliminary approval of this Agreement, and approving a form of notice and claim form, all as provided above;

(c)   The Court-approved Notice has been duly promulgated as ordered by the Court;

(d)   The Court has entered a Final Order approving this Agreement and Judgment finally dismissing the Released Claims with prejudice, as provided above; and

(e)   That order and judgment becomes Final as defined in Paragraph 38.

US_ACTIVE-101972611.3

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

38.     "Final," when referring to a judgment order means that (a) the judgment is a final, appealable judgment order; and (b) either (i) no appeal has been taken from the judgment as of the date on which all times to appeal there from have expired, or (ii) an appeal or other review proceeding of the judgment having been commenced, such appeal or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions for rehearing or reargument, petitions for rehearing en banc, petitions for writ of certiorari, or otherwise, and such appeal or other review has been finally resolved in such manner that affirms the Final Order and Judgment in all material respects.

39.     If, for any reason, this Agreement fails to become effective pursuant to the foregoing two paragraphs, the orders, judgment, and dismissal to be entered pursuant to this Agreement shall be vacated, and the Parties will be returned to the status quo ante with respect to the Litigation as if this Agreement had never been entered into subject to the cost and notice requirements provided herein.

## **CONFIRMATORY DISCOVERY**

40.     The parties may conduct additional confirmatory discovery which is reasonably necessary to effectuate this Settlement.  The Parties will cooperate in any such discovery, subject to the right to assert appropriate objections.  To the extent that disputes arise concerning discovery under this Paragraph, consistent with Paragraph 11 of this Settlement Agreement, the Parties agree that the Honorable Dickran Tevrizian (Ret.) may mediate those disputes, and, if necessary, render decisions resolving the disputes.  Any discovery obtained by either Party or their Counsel pursuant to this Paragraph shall be treated as confidential information by the Parties and the Parties agree that, among other things, any documents and information provided to Settlement Class Counsel are for use in this litigation only.

## **CONFIDENTIALITY OF INFORMATION**

41.     The Parties agree that the names, addresses and other data concerning members of the Settlement Class used in effecting this settlement and the electronic

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 19 -

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

data processing and other recordkeeping procedures and other materials to be utilized in effecting their obligations hereunder ("Confidential Information") constitute trade secrets and/or highly confidential and proprietary business information of AOL. Therefore it is agreed that no person, unless specified herein shall be allowed to access such Confidential Information unless ordered by the Court after hearing on notice to all counsel of record.

42.    The confidentiality of this Confidential Information shall be protected by the Preliminary Approval Order which shall incorporate all of the provisions of this Settlement Agreement. Violation of the order with respect to these confidentiality provisions may be remedied by seeking appropriate relief from the Court, including an action for damages and/or injunctive relief.

43.    The Confidential Information provided to Settlement Class Counsel shall be used for purposes of this litigation only.

44.    Settlement Class Counsel agree to either destroy or return all Confidential Information and materials obtained from AOL in connection with the settlement, including any copies made thereof, within ninety (90) days after the Effective Date, and to retain no copies thereof.  This subparagraph shall not apply to the attorney work product of Settlement Class Counsel.

45.    Settlement Class Counsel agree to either destroy or return any and all documents produced by AOL during the course of discovery within ninety (90) days after the Effective Date.

46.    Settlement Class Counsel further agree not to disclose this Confidential Information or any portion thereof to any unauthorized person.

## MISCELLANEOUS PROVISIONS

47.    The headings and captions contained in this Agreement are for reference purposes only and in no way define, extend, limit, describe, or affect the scope, intent, meaning, or interpretation of this Agreement.

48.    This Agreement shall be construed, enforced and administered in

US_ACTIVE-101972611.3

accordance with the laws of the State of California.

49.     This Agreement is not and shall not be offered in evidence as an admission of liability.

50.     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and the Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.  To the extent that disputes arise under this Agreement, consistent with Paragraph 11 of this Settlement Agreement, the Parties agree that the Honorable Dickran Tevrizian (Ret.) may mediate those disputes, and, if necessary, render binding decisions resolving the disputes.

51.     In the event that there are any developments in the effectuation and administration of this Agreement that are not dealt with by the terms of this Agreement, then such matters shall be dealt with as agreed upon by the Parties and failing agreement, as shall be ordered by the Court.

52.     Except as otherwise stated herein, this Agreement constitutes the entire agreement between the Plaintiffs, the Settlement Class and AOL with respect to the settlement of the Litigation.  This Agreement supersedes all prior negotiations and agreements (except as otherwise stated herein) and may not be modified or amended except by a writing signed by the Parties and their respective counsel.

53.     This Agreement shall not be construed more strictly against one Party than another merely because of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that because of the arms'-length negotiations resulting in the Agreement, all Parties hereto have contributed substantially and materially to the preparation of the Agreement.

54.     The Exhibits to this Agreement are an integral part of the settlement and are hereby incorporated and made part of this Agreement.

55.     The Parties hereto shall execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.  The executing of

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

US_ACTIVE-101972611.3

documents must take place prior to the date scheduled for the Final Approval Hearing.

56.   This Agreement shall be construed so that the word "including" means "including without limitation," and the singular shall be construed to include the plural and vice versa.

57.   In reaching this Agreement, none of the Parties to the Agreement has relied on any representations, covenants, or understandings by any of the other Parties or Counsel (other than each Parties' own Counsel) to the Agreement or any third parties or any attorney, agent or representative for any of the other Parties to the Agreement, except as expressly set forth herein.

58.   This Agreement shall be binding upon and inure to the benefit of the Parties and their respective employees, agents, officers, directors, parents, subsidiaries, divisions, affiliates, attorneys, insurers, representatives, heirs, successors, and assigns, authorized dealers, independent sales representatives, contracted providers of Customer Service Services Providers, and any other persons, corporations or entities allied in interest with the Parties.  Subject to the foregoing, nothing in this Agreement is intended to or does create any rights in any third parties.

59.   Except as otherwise provided herein, each of the Parties shall bear its own costs.

60.   Settlement Class Counsel, on behalf of the Settlement Class, are expressly authorized to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Agreement to effectuate its terms and are also expressly authorized to enter into any modifications or amendments to this Agreement on behalf of the Settlement Class which Settlement Class Counsel deem appropriate.

61.   Each counsel or other person executing the Agreement or any of its Exhibits on behalf of any party hereto hereby warrants that such person has the full authority to do so.

62.   This Agreement may be executed in one or more original, photocopied, or telecopied counterparts.  All executed counterparts are deemed to be one and the

US_ACTIVE-101972611.3

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

same instrument. Counsel for the Parties to this Agreement will exchange among themselves original signed counterparts, and a complete set of original executed counterparts will be filed with the Court.

63. The Parties agree that, to the extent appropriate and to the extent permitted by law the Parties may request the Honorable Dickran Tevrizian to provide submissions to the Court.

64. The Parties voluntarily sign this Agreement after consultation with their respective counsel of choice.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-101972611.3

1

2

DATED:  August __, 2009

3      By_____

4           DAWN FAIRCHILD

5      By_____

6           ROBERT NACHSHIN

7      By_____

8           LARRY GERARD

9      By_____

10           BRIAN GEERS

11           KABATECK, BROWN KELLNER LLP

12      By_____

13           Attorneys for PLAINTIFFS

14

15           NUNES LAW GROUP

16

17      By_____

18           Attorneys for PLAINTIFFS

19           HAMNER LAW GROUP

20

21      By_____

22           Attorneys for PLAINTIFFS

23           AOL, LLC

24

25      By_____

26           AOL, LLC

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-101972611.3

DATED: August 19, 2009

By _____
    DAWN FAIRCHILD

By _____
    ROBERT NACHSHIN

By _____
    LARRY GERARD

By _____
    BRIAN GEERS

    KABATECK, BROWN KELLNER LLP

By _____
    Attorneys for PLAINTIFFS

    NUNES LAW GROUP

By _____
    Attorneys for PLAINTIFFS

    HAMNER LAW GROUP

By _____
    Attorneys for PLAINTIFFS

    AOL, LLC

By _____
    AOL, LLC

- 24 -

US_ACTIVE-101972611.3

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

2    DATED: August 18, 2009

3                                    By _____
4                                        DAWN FAIRCHILD

5                                    By _____
6                                        ROBERT NACHSHIN

7                                    By _____
8                                        LARRY GERARD

9                                    By _____
10                                       BRIAN GEERS

11                                   KABATECK, BROWN KELLNER LLP

12

13                                   By _____
14                                       Attorneys for PLAINTIFFS

15

16                                   NUNES LAW GROUP

17

18                                   By _____
                                         Attorneys for PLAINTIFFS

19

20                                   HAMNER LAW GROUP

21                                   By _____
22                                       Attorneys for PLAINTIFFS

23                                   AOL, LLC

24

25                                   By _____
26                                       AOL, LLC

27

28

- 24 -

US_ACTIVE-101972611.3



1

2    DATED: August _14_, 2009

3                                    By_____
4                                       DAWN FAIRCHILD

5                                    By_____
6                                       ROBERT NACHSHIN

7                                    By_____
8                                       LARRY GERARD

9                                    By_____
10                                      BRIAN GEERS

11                                   KABATECK, BROWN KELLNER LLP

12
13                                   By_____
                                        Attorneys for PLAINTIFFS
14

15                                   NUNES LAW GROUP
16

17                                   By_____
18                                      Attorneys for PLAINTIFFS

19                                   HAMNER LAW GROUP
20

21                                   By_____
                                        Attorneys for PLAINTIFFS
22

23                                   AOL, LLC
24

25                                   By_____
26                                      AOL, LLC

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 24 -

US_ACTIVE-101972611.3

1

2    DATED:  August 14, 2009

3                           By _____

4                             DAWN FAIRCHILD

5                           By _____

6                           ROBERT NACHSHIN

Laurence Gerard *Digitally signed by Laurence Gerard DN: cn=Laurence Gerard, o, ou, email=LarryG8@aol.com, c=US Date: 2009.08.17 12:40:03 -04'00'*

7                           By _____

8                           LARRY GERARD

9                           By _____

10                         BRIAN GEERS

11                         KABATECK, BROWN KELLNER LLP

12

13                         By _____

14                         Attorneys for PLAINTIFFS

15                       NUNES LAW GROUP

16

17                         By _____

18                       Attorneys for PLAINTIFFS

19                     HAMNER LAW GROUP

20

21                       By _____

22                       Attorneys for PLAINTIFFS

23                     AOL, LLC

24

25                       By _____

26                       AOL, LLC

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-101972611.3

1

2  DATED:  August 19, 2009

3

4  By_____
   DAWN FAIRCHILD

5

6  By_____
   ROBERT NACHSHIN

7

8  By_____
   LARRY GERARD

9

10  By_____
    BRIAN GEERS

11

12  KABATECK, BROWN KELLNER LLP

13  By_____
    Attorneys for PLAINTIFFS

14

15  NUNES LAW GROUP

16

17  By_____
    Attorneys for PLAINTIFFS

18

19  HAMNER LAW GROUP

20

21  By_____
    Attorneys for PLAINTIFFS

22

23  AOL, LLC

24

25  By_____
    AOL, LLC

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 24 -

DATED:  August 19, 2009

By_____
DAWN FAIRCHILD

By_____
ROBERT NACHSHIN

By_____
LARRY GERARD

By_____
BRIAN GEERS

KABATECK, BROWN KELLNER LLP

By_____
Attorneys for PLAINTIFFS

NUNES LAW GROUP

By_____
Attorneys for PLAINTIFFS

HAMNER LAW GROUP

By_____
Attorneys for PLAINTIFFS

AOL, LLC

By_____
AOL, LLC    Vice President and Chief
            Counsel, Litigation and
            Antitrust

- 24 -

US_ACTIVE-101972611.3

**EXHIBIT A**

OFFICIAL NOTICE OF PENDENCY OF CLASS ACTION
AND PROPOSED SETTLEMENT

---

**If You Are Currently an AOL Member You Are A Member of A Proposed Settlement and Your Rights May Be Affected.**

---

- The Proposed Settlement is on behalf of all current AOL Members. It resolves claims regarding advertising or promotional "footers" that may have been appended to the bottom of your e-mails by AOL.

- The Proposed Settlement provides that all current AOL Members will immediately be provided notice of the footers and their ability to discontinue the footers via **AOL Keyword: Footer** and **http://footer.aol.com**, and that, if AOL continues to append footers to its Members' e-mails, such notice will be provided both to all new customers upon their registration of an AOL account and to all current AOL Members on a regular, periodic basis (every six months for two years)

- The Proposed Settlement provides that AOL shall make donations to several different charities totaling $110,000.

- If you do nothing and this Proposed Settlement is approved by the Court you will be part of the Settlement Class and bound by the terms of the Settlement.

- The Court still has to decide whether to approve the Proposed Settlement. Settlement Class Members will receive the benefits of the Settlement after the Court approves the Settlement.

PLEASE DO <u>NOT</u> CALL OR WRITE DIRECTLY TO THE COURT.

YOUR LEGAL RIGHTS ARE AFFECTED WHETHER OR NOT YOU ACT.
**PLEASE READ THIS NOTICE CAREFULLY.**

<u>**YOUR RIGHTS AND CHOICES:**</u>

| You May | Due Date |
|---|---|
| **1. Do Nothing**<br>(see question #7 and 15) | This space intentionally left blank |
| or<br>**2. Exclude Yourself**<br>(see questions #11 – 13) | *Postmarked* by _____, 2009 |
| or<br>**3. Object to the Settlement**<br>(see question #14) | *Filed and Received* by _____, 2009 |
| or<br>**4. Appear in the Lawsuit**<br>(see question #14) | *Filed and Received* by _____, 2009 |
| | |

## 1.      WHO SHOULD READ THIS NOTICE?

If you are presently an AOL customer you should read this notice. Your legal rights are affected by the proposed Settlement of a class action lawsuit, *Fairchild et al v. AOL*, Case No. CV09-03568 CAS (PLAx), which is pending in the United States District Court for the Central District of California. This Notice explains:

- What this Lawsuit is about;
- Who is included in the Settlement;
- How the Settlement will benefit you;

- How to get the benefits of the Settlement; and
- What your legal rights are.

If you have any questions regarding this Notice, please send an e-mail to footerlitigation@corp.aol.com, which will be shared with Settlement Class Counsel. If you send an e-mail, please be sure to include the name of the lawsuit (*Fairchild v. AOL*) in the Subject Line. However, please read the entire Notice before writing.

**PLEASE DO <u>NOT</u> CALL OR WRITE DIRECTLY TO
THE COURT OR THE CLERK'S OFFICE.**

### 2.      WHAT IS THIS LAWSUIT ABOUT?

This Lawsuit was brought by Plaintiffs Dawn Fairchild, Robert Nachshin, Brian Geers and Larry Gerrard against Defendant AOL LLC.  Plaintiffs allege that (1) the failure to inform them that AOL would insert e-mail footers in their sent e-mails and (2) the insertion of such footers, violate the law.

AOL denies Plaintiffs' allegations and maintains that it acted in accordance with all laws and regulations.

### 3.      WHO REPRESENTS ME IN THIS CASE?

The Court has appointed the following attorneys in the *Fairchild* Action to act as Settlement Class Counsel:

Glenn Nunes
The Nunes Law Group
15760 Ventura Blvd Ste 860
Encino, CA 91436
(818) 386 0444

Christopher J. Hamner
Hamner Law Offfices
15760 Ventura Blvd Ste 860
Encino, CA 91436
(818) 386 0444

Brian Kabateck, Esq.
Richard Kellner, Esq.
Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, CA 90017
(213) 217-5000

### 4.      WHY IS THERE A SETTLEMENT?

The Court has not decided who is right or wrong in this lawsuit.  Instead, the Settlement Class Representatives and AOL agreed to a Settlement, which was preliminarily approved by the Court on _____, **2009**. As a result of the Settlement, all parties avoid the costs of further litigation and risks of a trial and Settlement Class members may obtain the benefits of the Settlement.

The Settlement Class Representatives believe that the case has merit and that the evidence supports their claims. The Settlement Class representatives determined that the proposed settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. The Settlement will permit Plaintiffs and the Settlement Class Members to receive full and complete disclosure of AOL's practice of appending e-mail footers

and the ability simply and easily to discontinue these footers, without the time, risk and expense of litigation. AOL has also agreed to contribute significant sums to 8 charities as part of this settlement.

AOL does not believe that Plaintiffs' claims have factual or legal merit. However, AOL desires to avoid unnecessary litigation costs while also ensuring that it has taken adequate steps to ensure that consumers are fully aware of the footers and their ability to discontinue them.

In an effort to resolve this matter, the parties engaged The Hon. Dickran Tevrezian,(Ret.) U.S. District Judge for the Central District of California, to mediate a resolution. The parties were thereby able to negotiate a settlement.

**5.     HOW DO I KNOW IF I AM PART OF THE SETTLEMENT?**

If you are a current AOL member you are in the class and are part of this settlement.

**6.     WHAT DOES THE SETTLEMENT PROVIDE AND HOW WILL I RECEIVE THE BENEFITS?**

The Settlement provides that all current AOL Members will be provided e-mail notice of the footers and their ability to discontinue the footers via **AOL Keyword: Footer** and http://footer.aol.com, and that, if AOL continues to append footers to its Members' e-mails, such notice will be provided both to all new customers upon their registration of an AOL account and to all current AOL Members on a regular, periodic basis (every six months for two years).

**7.     HOW CAN I GET THE BENEFITS OF THE SETTLEMENT?**

To obtain the benefits of this Settlement all you need to do is not opt-out of this Settlement.

**8.     WHEN WILL I GET THE BENEFITS OF THIS SETTLEMENT?**

If the Court approves the Settlement, AOL will send you the notice explaining how to discontinue the footers within 30 days of approval.

**9.     AM I GIVING ANYTHING UP IN EXCHANGE FOR THE BENEFITS OF THE SETTLEMENT?**

Yes. If the Court approves the Settlement, it will enter a judgment dismissing the lawsuit with prejudice as to all Settlement Class Members and releasing all claims they may have against AOL regarding advertising or promotional "footers" that may have been appended to the bottom of their e-mails by AOL. In other words, by remaining in the Settlement Class, all of the Court's Orders will apply to you and you will thereby release all claims that you may have regarding advertising or promotional "footers" that may have been appended to the bottom of your e-mails by AOL, thereby barring you from bringing your own lawsuit based on such claims.

**10.     IF I CURRENTLY USE AOL, WILL THIS SETTLEMENT CANCEL OR INTERRUPT MY SUBSCRIPTION?**

No. Neither the settlement nor this lawsuit affects your ongoing online service.  If you have any questions about your existing subscription, please contact AOL Member Services.

**11.     CAN I GET OUT OF THE SETTLEMENT AND THE SETTLEMENT CLASS?**

Yes. You may request to be excluded from the Settlement and the Settlement Class.  If you exclude yourself, you will not receive any of the benefits of the Settlement.  You will still have the right to bring your own lawsuit. The deadline to exclude yourself is _____, 2009.

**12.     HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?**

To exclude yourself, you must, no later than _____, 2009, send an e-mail to settlementoptout@corp.aol.com requesting exclusion from the Settlement.

Your e-mail should include all of the following:

- Your name, address and telephone number;
- A statement that you wish to be excluded from the lawsuit and the Settlement.

**13.     IF I EXCLUDE MYSELF, CAN I OBTAIN THE BENEFITS OF, OR COMMENT ON, THE SETTLEMENT?**

No.  If you exclude yourself, you are no longer part of the Class or the Settlement.  You will not receive any benefits from the Settlement and the Court will not consider your comments in support of or in opposition to the Settlement.

**14.     CAN I TELL THE COURT IF I SUPPORT OR OBJECT TO THE SETTLEMENT OR THAT I WANT TO APPEAR AT THE FINAL SETTLEMENT APPROVAL HEARING?**

Yes. So long as you do not exclude yourself, you can tell the Court that you support or object to the Settlement or some part of it.

To comment in support of, or in opposition to, the Settlement, you must file a letter with the Clerk of the Court, United States District Court for the Central District of California, Western Division, 312 North Spring Street Los Angeles, California 90012 on or before _____, 2009, and mail a copy to: AOL E-mail Footer Litigation Settlement, P.O. Box 65771, Sterling, VA  20165-8806.  Your letter must be received no later than _____, 2009.

Your letter should include all of the following:

- Your name, address and telephone number;
- The name and number of the lawsuit:  Fairchild v. AOL, Case No. CV 09-03568 CAS (PLAx);
- A statement of the reasons why you believe the Settlement is or is not fair, reasonable, or adequate; **and**
- A statement regarding whether you (or your lawyer) wish to speak at the Settlement Fairness Hearing.

If you object, you may, but are not required to, appear at the Final Approval Hearing, either in person or through an attorney retained and paid by you.  The Fairness Hearing will take place on _____, 2009 at _____. The Court is located at 312 North Spring Street Los Angeles, California 90012, Courtroom 5.  If you or your attorney intend to appear at the Final Approval Hearing, you or your attorney must file a written Notice of Intention to Appear, together with any supporting legal memoranda and evidence, with the Clerk of the Court no later than _____, 2009, and mail a copy to: AOL E-mail Footer Litigation Settlement, P.O. Box 65771, Sterling, VA  20165-8806.  The Notice of Intention to Appear must be received no later than _____, 2009. If you do not appear at the hearing, you waive the right to appeal.

**15.     WHAT HAPPENS IF I DO NOTHING AT ALL?**

If you do nothing, you will receive any and all benefits under the Settlement, and you will be subject to the Release (described in # 9).

**16.     IF I WANT TO KEEP THE E-MAIL FOOTERS WILL I BE ABLE TO?**

Yes.  This Settlement only gives you as the Member the option to discontinue these footers.

**17.     WHO PAYS THE LAWYERS AND HOW MUCH WILL THEY BE PAID?**

If the Court approves the Settlement, the lawyers for the Settlement Class will apply to the Court for an award of the fees and costs that they have incurred over the course of this lawsuit. AOL has agreed to pay up to $320,000 in fees and costs, in addition to the $110,000 in charitable donations, and the costs of administering the Settlement, including the notice process. AOL's payment of attorneys' fees and litigation costs will not reduce any amounts paid or credited to the Charities.

**18.     WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?**

A Fairness Hearing will be held at_____. on _____, 2009.  The Court is located at 312 North Spring Street, Los Angeles, California 90012, Courtroom 5.  At the Fairness Hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate to Settlement Class Members. As part of making this determination, the Court will consider the views of Settlement Class Members both in favor of and opposed to the Settlement.  The Court will further consider Settlement Class Counsel's request for attorneys' fees and litigation costs.  After the hearing, the Court will decide whether to approve the Settlement and attorneys' fees and costs.

**19.     HOW DO I GET MORE INFORMATION?**

This Notice only provides a summary of the Settlement.  The full terms of the Settlement are set forth in the Settlement Agreement.  You can read the Settlement Agreement and the other documents in this lawsuit during regular business hours, at the Clerk of the Court, United States District Court for the Central District of California, Western Division, 312 North Spring Street, Los Angeles, California 90012 (fees may apply for copies of these documents).

**PLEASE DO NOT CALL THE COURT OR THE COURT CLERK.**

THIS NOTICE IS NOT AN EXPRESSION BY THE COURT AS TO
THE FAIRNESS OR ADEQUACY OF THE SETTLEMENT.

Dated: _____, 2009                                    By Order of the Court
                                                           THE HONORABLE CHRISTINA A. SNYDER

**EXHIBIT B**

**From:** AOLAccountHelp <AOLAccountHelp@dc.aol.com>
**To:** Happy AOL Customer
**Sent:** Fri Jul 31 14:07:47 2009
**Subject:** (6 - HTML): Your AOL E-Mail Message Footer Preference

Dear #ScreenName#,

At AOL, we are committed to providing you with the best possible email experience. That's why we include powerful spam controls, unlimited storage and more as part of our standard email product.

Sometimes email includes a "footer," placed at the bottom of email you send. The footer enables your contacts to learn about special offers from our advertising partners, as well as various AOL services, such as MapQuest and MovieFone.

We have made it easy for you to choose whether or not you want these messages extended to your contacts. If you prefer that these footers not be placed at the bottom of emails that you send, you can opt-out at **AOL Keyword: Footer** or **http://footer.aol.com**. You may change this preference at any time. Remember, you can always find more information about the email footer and answers to many of your AOL questions at http://help.aol.com.

Thank you for being a valued AOL member.

Sincerely,

AOL Member Services

©2009 AOL LLC. All Rights Reserved. AOL and the AOL Triangle Logo are registered trademarks of AOL LLC. All other trademarks and/or registered trademarks are the property of their respective owners.

8/19/2009

**EXHIBIT C**

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

WESTERN DIVISION

11

DAWN FAIRCHILD, ROBERT NACHSHIN, BRIAN GEERS and LAURENCE GERARD, on behalf of themselves and all others similarly situated,

Case No.: CV 09-03568 CAS (PLAx)

**[PROPOSED] FINAL ORDER RE APPROVAL OF CLASS ACTION SETTLEMENT AND FINAL JUDGMENT THEREON**

Plaintiffs,

Honorable Christina A. Snyder

vs.

AOL, LLC, a Delaware Limited Liability Company; and DOES 1 through 10 inclusive,

Defendant.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Parties have submitted their proposed Settlement Agreement, which this Court preliminarily approved on _____ pursuant to Order Granting Preliminary Approval of Class Settlement, Provisionally Certifying a Class For Settlement Purposes, and Providing for Notice of Proposed Settlement and Final Fairness Hearing ("Preliminary Approval Order").  In accordance with the Preliminary Approval Order, the Class Members have been given notice of the terms of the Settlement Agreement and an opportunity to object to or comment on it.  Having considered the proposed Settlement Agreement, the papers supporting the Settlement Agreement filed by the Parties, the papers submitted in support of the Preliminary Approval Order, and the argument received by the Court at the Final Fairness Hearing held on _____, the Court hereby grants final approval of the Settlement Agreement.

## **FACTUAL AND PROCEDURAL BACKGROUND**

On August 13, 2009, Plaintiffs Dawn Fairchild, Robert Nachshin, Brian Geers and Laurence Gerard ("Plaintiffs") filed a Second Amended Class Action Complaint ("Complaint") against Defendant AOL, LLC ("AOL").  The Complaint was filed on behalf of a putative class consisting of paid AOL subscribers who allege that AOL wrongfully inserted footers containing promotional messages into e-mails sent by AOL subscribers.  The Complaint asserts causes of action for: (1) violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.*; (2) unjust enrichment; (3) violation of California Business and Professions Code, §§ 17200, *et seq.*; (4) breach of contract; (5) violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; and (6) violation of California Business and Professions Code §§ 17529 *et seq.*

The Parties entered into mediation for the purpose of attempting to settle the dispute.  A tentative settlement was reached and Plaintiffs and AOL have agreed to the entry of the Proposed Settlement Agreement.  AOL continues to deny the

allegations contained in the Complaint and does not admit liability nor concede that it has violated any law.  Plaintiffs have moved this Court for final approval of the Settlement Agreement.

Having fully received and considered Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, Memorandum of Points and Authorities, Declarations in Support of the Motion, the Proposed Settlement Agreement, the briefing preceding the Preliminary Approval Order, and the oral argument presented to the Court at the final Fairness Hearing,

**IT IS HEREBY ORDERED THAT:**

1.      This Court has jurisdiction over all Parties to this Action including all members of the Settlement Class and has subject matter jurisdiction to approve the Settlement Agreement and all exhibits thereto.

2.      This Court finds the applicable requirements of Federal Rule of Civil Procedure 23 have been satisfied and the Action has been properly maintained according to the provisions of Rules 23(a) and 23(b)(3).  Specifically, this Court finds that (a) the Class, as defined below, is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of Plaintiffs are typical of the claims of the Class; (d) Plaintiffs and their counsel have fairly and adequately protected the interests of the Class; (e) the questions of law and fact common to the members of the Class predominate over any questions affecting only individual members of the Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

3.      The Action is hereby finally certified as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), on behalf of a class composed of: All current AOL

1   members.  Excluded from the Settlement Class are employees of AOL, their counsel,

2   and their immediate families. This Action is certified as a class action for settlement

3   purposes only (the Court expressly reserving the right to determine, should the

4   occasion arise, whether the Litigation may be certified as a class action for purposes

5   other than settlement, and AOL retaining all rights to assert that the Litigation may not

6   be certified as a class action except for settlement purposes).

7        4.    The Court has reviewed the Settlement Agreement and finds that the

8   settlement terms are fair, reasonable, and adequate, particularly when balanced against

9   the probable outcome of further litigation relating to liability and damages issues.  The

10  Court also finds that comprehensive investigation and research have been conducted

11  such that counsel for the Parties are able to reasonably evaluate their respective

12  positions.  The Court further finds that the Settlement has been reached as the result of

13  intensive, serious, and arms' length negotiations under the direction of the Honorable

14  Dickran M.  Tevrizian, United States District Court Judge for the Central District of

15  California (Retired).

16       5.    Plaintiffs have agreed to the terms of the Settlement and chose to forego

17  their own settlement incentives as named Plaintiffs in favor of charitable donations.

18  The Court finds that Plaintiffs' agreement to allow AOL to make donations to

19  charities in lieu of a monetary award paid to Plaintiffs for service as class

20  representatives is reasonable and fair.

21       6.    Plaintiffs and Settlement Class Counsel adequately represented the

22  Settlement Class for the purpose of entering into and implementing the Settlement

23  Agreement.

24       7.    In accordance with Federal Rule of Civil Procedure 23(e), the Court finds

25  that the Settlement has been entered into in good faith and is approved as fair,

26  reasonable, and adequate, and in the best interests of the Settlement Class and hereby

27  grants final approval to the Settlement.  The Court has considered and denied all

28  objections filed in this action.  Accordingly, the Court hereby directs that the

Settlement shall be effected in accordance with the terms of the Settlement Agreement (all of which terms are adopted and incorporated herein by reference).

8.     Pursuant to the Court's Preliminary Approval Order, the notice requirement was satisfied in that AOL sent the Notice to each member of the Settlement Class by electronic mail to the electronic mail address corresponding to the AOL account of each Settlement Class member.  AOL also posted the Settlement Notice on the publicly accessible website with the URL www.aolemailfootersettlement.com.  Members of the Settlement class had the opportunity to object to the proposed Settlement, to opt out of the Settlement, and were informed of the date, time, and location of the final Fairness Hearing and had the opportunity to appear at the Fairness Hearing.  These procedures afforded protections to the Class Members and provide the basis for the Court to make an informed decision on approval of the Settlement based on the responses of Class Members.

9.     The notice program implemented pursuant to the Settlement Agreement (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Litigation, their right to object or exclude themselves from the proposed settlement and to appear at the Final Approval Hearing, and their right to seek monetary and other relief; (iii) was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) met all applicable requirements of Due Process and federal law.

10.    This Final Order and Judgment is binding on and has *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Release maintained by or on behalf of Plaintiffs or any other members of the Settlement Class, as well as their heirs, executors and administrators, successors, and assigns.

11.    In accordance with the terms of the Settlement Agreement, the following Release shall apply:

As of the Effective Date, Plaintiffs and other members of the Settlement Class who have not excluded themselves from the Settlement Class hereby expressly agree that they shall release and discharge AOL, and its respective parents, subsidiaries, affiliated entities, predecessors, successors and assigns and each of their respective present, former, and future officers, directors, employees, agents, third party Customer Service Providers, third party payment processors, independent contractors, successors, assigns, parents, subsidiaries, affiliates, insurers, attorneys, and legal representatives (collectively, "Releasees") of and from all Released Claims  and shall not now or hereafter initiate, maintain or assert against the Releasees any causes of action, claims, rights, demands, actions, damages, equitable, legal, and administrative relief, interest, demands, or rights, including without limitation, claims for damages of any kind, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law or any other sources, that have been, could have been, may be or could be alleged or asserted now or in the future by the Plaintiffs or any member of the Settlement Class, either directly or as the representative of other persons or entities, against the Releasees or any of them in the Litigation or in any other court action or before any administrative body, tribunal, arbitration panel or other adjudicating body on the basis of, connected with, arising out of or related to the Released Claims. Subject to Court approval, all members of the Settlement Class who do not exclude themselves from the Settlement Class in the manner specified herein shall be bound by this Agreement, and all of their claims shall be dismissed with prejudice and released, even if they never received actual notice of the Litigation or the Settlement.

12.     Without affecting the finality of the Final Order and Judgment for purposes of appeal, the Court reserves jurisdiction over AOL, Plaintiffs, and the Settlement Class as to all matters relating to the administration, consummation, enforcement and interpretation of the terms of the Settlement and the Final Order and Judgment and for any other necessary purposes.

13.     All members of the Settlement Class are barred and enjoined from: (i) filing, commencing, prosecuting, intervening in or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on, relating to or arising out of the claims and causes of action (or the facts and circumstances relating thereto) in the Litigation and/or the Released Claims, unless named on the Opt-Out List.

14.     The Opt-Out List is hereby approved and the Court finds the Opt-Out

1  List is a complete list of all Settlement Class members who have timely requested

2  exclusion from the Settlement Class and accordingly, shall neither share in nor be

3  bound by the Final Order and Judgment.

4       15.    The Settlement Agreement and the settlement provided for herein and

5  any proceedings taken pursuant thereto are not and should not in any event be offered

6  or received against AOL as evidence of a presumption, concession, or an admission of

7  liability or of any misrepresentation or omission in any statement or written document

8  approved or made by AOL

9       16.    The Parties are authorized, without further approval from the Court, to

10  agree to and adopt such amendments, modifications, and expansions of this

11  Agreement and all exhibits hereto as (i) shall be consistent in all material respects with

12  the Final Order and Judgment and (ii) do not limit the rights of the Settlement Class

13  members.

14       17.    Class Counsel is hereby awarded attorneys' fees in the amount of

15  $_____, which sum the Court finds to be fair and reasonable, and are

16  awarded the reimbursement of expenses in the amount of $_____, and

17  which sums shall be paid to Class Counsel in accordance with the terms of the

18  Settlement Agreement.

19       18.    This Action (and any and all claims asserted herein at any time) is

20  dismissed in its entirety, on the merits, with prejudice and without leave to amend.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

19.     There being no just reason for the delay, the Court, in the interests of justice, expressly directs the Clerk of the Court to enter this Final Order and Judgment, and hereby decrees that, upon entry, it be deemed a final judgment.

**IT IS SO ORDERED.**

Dated: _____          _____
                                  CHRISTINA A. SNYDER
                                  U.S. DISTRICT COURT JUDGE