Mark D. Litvack (SBN 183652)
E-mail: mlitvack@reedsmith.com
Michael A. Garabed (SBN 223511)
E-mail: mgarabed@reedsmith.com
Tamara M. Rowles (SBN 228940)
E-mail: trowles@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: (213) 457-8000
Facsimile: (213) 457-8080

Attorneys for Defendant AOL Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| DAWN FAIRCHILD, ROBERT NACHSHIN, BRIAN GEERS and LAURENCE GERARD, on behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>AOL, LLC, a Delaware Limited Liability Company; and DOES 1 through 10 inclusive,<br><br>　　　　　　Defendants. | NO. CV 09-03568 CAS (PLAx)<br><br>**RESPONSE TO OBJECTIONS TO PROPOSED SETTLEMENT FILED BY OBJECTOR DARREN MCKINNEY AND JANEL BUYCKS**<br><br>Date: December 28, 2009<br>Time: 10:00 a.m.<br>Dept: Courtroom 5<br><br>Honorable Christina A. Snyder |

## I. INTRODUCTION

Notice of the settlement preliminarily approved by the Court was disseminated via e-mail to over 65 million AOL members and posted on a settlement website. As a testament that the settlement was well-received by the settlement class, only $2^1$ of these 65 million have objected.[2] Neither of these objectors has called the fairness of the settlement itself into question. Rather, Janel Buycks has objected on the basis that she would prefer the charitable donations be distributed to the Imitators of God Foundation, Inc., a foundation that according to Ms. Buycks herself, she is the owner of.[3] The Objection to Proposed Settlement submitted by Objector Darren McKinney ("McKinney Objection"), who is represented by professional class settlement objector Theodore H. Frank of the Center for Class Action Fairness, likewise calls the settlement into question for reasons other than perceived unfairness of the settlement benefits to the class. Mr. McKinney's objection incorrectly presumes that, *both the class representatives and* attorneys "sold out" the rest of class because the attorneys may request up to $300,000 in fees and the class representatives will determine the beneficiaries of the charitable donations, *or* that the lawsuit was meritless and should have been dismissed in the first place. Mr. McKinney's objection should be disregarded for several reasons.

First, Mr. McKinney has not evaluated the factual or legal merits of the case nor has he offered a declaration as to his own economic injury due to sending emails with his AOL account that may have contained advertising footers. Hence he has not

---

[1] And one of these does not even appear to be a legitimate member of the class. *See* Declaration of J.L. Novak ("Novak Dec.") ¶ 6.

[2] Additionally, 3,481 people submitted opt out requests that complied with the Court's instructions. Seven submitted untimely opt outs, and an additional 1,037 submitted opt out requests but did not provide their names as required. This represents less than .00007% of the entire settlement class. Novak Dec. ¶ 5.

[3] Novak Dec. ¶ 7. Ms. Buycks also objects that she did not receive a response to her inquiry regarding the settlement. However, AOL responded to Ms. Buycks inquiry via e-mail on November 11, 2009. Novak Dec. ¶ 8.

CASE NO.: CV09-03568 CAS (PLAX)

- 1 -

offered any evidence as to why the settlement is unfair to Mr. McKinney personally or to the rest of the class. Mr. McKinney, does not, and cannot, point to any provision in the contract between him and AOL that AOL has violated, nor does he reference any statute that AOL's footer program has violated. Moreover, the evidence established to date reveals that the amount of revenue AOL received, allegedly unjustly, from the sale of advertising space in the email footers of its paid subscribers is approximately $110,000. Thus, even if the lawsuit had legal merit, which AOL vehemently contests, the amount of available damages is very low, especially when spread amongst the millions of members. Moreover, the cost of administering a monetary settlement to a class this size would, at a minimum, exceed $35 million, and at a maximum exceed $75 million.[4] The settlement fairly reflects the value because over $100,000 will be donated to various charities.

Second, and most importantly, the settlement addresses the true gravamen of the complaint and grants the class the specific relief sought, namely notice of the footer policy and an ability to opt out if desired. Any class member that truly suffered monetary damage, and AOL submits that there is none, could have opted out of the class action to pursue their claims separately. Here, neither the class representatives, nor the class members they represent, will receive monetary compensation for the alleged unjust enrichment, so there is no argument that the class representatives violated their duty to fairly represent the class or put their own pecuniary interests above the class.

Third, the settlement agreement does not award a specific amount of attorneys' fees. The Court will determine the appropriate amount for attorneys' fees pursuant to a separate motion. Any argument that the settlement is unfair based on the amount of attorneys' fees is premature – and frankly presumes that this Court will not do its duty in reviewing the request for fees. For these reasons, the Court should disregard the

---

[4] Novak Dec. ¶ 9.

CASE NO.: CV09-03568 CAS (PLAX)

- 2 -

objections and approve the settlement.

II. LEGAL ARGUMENT

### A. 2 Objectors Out Of 65 Million Indicates Strong Support For The Fairness Of The Preliminarily Approved Settlement.

Of the 65 million settlement class members, only 2 have objected, and 3,481 submitted opt out requests that complied with the Court's instructions,[5] which represents less than .00007% of the entire class. Novak Dec. ¶ 5. This insignificant percentage of objectors and members who have opted out indicates strong support of the settlement from the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (despite vigorous objections and appeal by objectors, the "fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness" and holding that court did not abuse its discretion in approving settlement); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (approximately 1% of 31,000 class members opted out; "the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness"); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) ("Here, the opt-outs were less than 1/30th of 1% of the class, and there was only a handful of objections, indicating overwhelmingly strong support by the class for the settlement"). Lack of a significant number of objections indicates that the class as a whole perceives the settlement to be fair, reasonable, and adequate.

\\

\\

---

[5] As noted, an additional 1,037 submitted opt out requests but failed to provide their names as required by the Court's instructions. Novak Dec. ¶ 5.

CASE NO.: CV09-03568 CAS (PLAX)

### B. The Representative Plaintiffs Have Not Violated Any Duties To The Class Because Neither Representative Plaintiffs Nor The Class Members Will Receive A Monetary Award.

Mr. McKinney objects that the class will not receive an economic benefit from the settlement but that representative plaintiffs will select a charity to collectively receive $35,000. The representative plaintiffs, like the class members, will not receive any monetary award as a result of the settlement. The only benefit that each representative plaintiff will receive is their ability to select an appropriate charity to receive $8,750. The charities they have selected are true 501(c)(3) organizations that do not benefit representative plaintiffs personally.[6] Each class representative has spent considerable time on this action, participating in discovery and settlement negotiations, and has agreed to this settlement without personally receiving *any* remuneration for their time and efforts. Thus, the class representatives have not placed their own interests above that of the class.

### C. The Settlement Fairly And Adequately Reflects the Merits And The Value Of The Case.

The fact that the class will not receive a monetary settlement does not make the settlement per se unfair, especially in light of the facts of this case. Here, the alleged wrong relates to AOL's alleged failure to give the class members notice of the e-mail footer policy and an opportunity to opt out. AOL strongly asserts that given its terms of service, and the applicable law, it had no obligation to provide such notification to its members. However, assuming *arguendo,* that there was any wrong by AOL's conduct, this settlement not only indisputably corrects that alleged misconduct, it specifically allows any class member who feels they suffered economic harm by the footer policy to opt out. Moreover, under Plaintiffs' disgorgement and unjust enrichments theories, AOL has earned only $110,000 in revenue from sales of

---

[6] Unlike the "charitable organization" to which Ms. Buycks feels should receive the donations, an organization for which she is listed as the owner. Novak Dec. ¶ 7.

CASE NO.: CV09-03568 CAS (PLAX)

- 4 -

advertising in email footers of its paid subscribers. Even if AOL were to return all of these monies, each paid member would receive less than 2 cents, and the cost of administering such a settlement would potentially reach $75 million dollars.[7] A monetary settlement is therefore impractical and inappropriate in this case.

The circumstances here make it fundamentally different from the non-controlling Seventh Circuit cases that Mr. McKinney cites. In *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006), the court considered whether class certification was improperly denied, not whether the purported settlement was unfair. Plaintiffs' complaint demanded statutory damages that could total in the billions due to the class size and the court noted that given the potential damages, less than $1 per putative class member was insufficient. Moreover, this Circuit and this Court have each disagreed with the approach taken by the *Murray* court. *See Kline v. Coldwell, Banker & Co.*, 508 F.2d 226 (9th Cir. 1974) (overturning order certifying class in part because of excessive damages sought); *Serna v. Costco Wholesale Corp., Inc.*, 2008 U.S. Dist. Lexis 52298 (C.D. Cal. 2008); *Serna v. Big A. Drug Stores, Inc.*, 2007 U.S. Dist. Lexis 82023 (C.D. Cal. 2007) (finding that *Murray* did not control in the Ninth Circuit).

The other cases cited by Mr. McKinney are no more persuasive. In *Crawford v. Equifax*, 207 F.3d 877 (7th Cir. 2000), statutory damages were also alleged and the appellate court reversed the approved settlement *because it did not provide notice and an opportunity to opt out* but released the class members' ability to pursue such damages. *Id.* at 882. Here all class members received individual direct notice and each had the opportunity to opt out of the settlement. And in *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781 (7th Cir. 2004), which involved alleged violations of the Fair Credit Reporting Act, the court took issue with the fact that the members of one subclass received monetary compensation while the members of the other

---

[7] See Novak Dec. ¶ 9.

CASE NO.: CV09-03568 CAS (PLAX)

- 5 -

subclass did not, and that defendant set aside money that would revert back to it if not claimed. Notably, the Court did not set a strict rule that these facts made the settlement per se unfair, but rather said such facts were "warning signs, no more" but that the district court erred where it did not meet its duty "to estimate the litigation value of the claims of the class and determine whether the settlement is a reasonable approximation of that value." *Id.* at 786. Here, there are simply no subclasses receiving disparate treatment and the entire class receives the same benefit.

Finally, in *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003), the only controlling authority cited by Mr. McKinney, the Ninth Circuit held in an Americans with Disability Act case that the district court erred by failing to afford notice and the right to opt out for persons with disabilities who suffered actual damages and because the consent decree released nearly all of the absent members claims to statutory and actual damages with little to no compensation and no right to opt out. *Id.* at 945-47. The consent decree in *Molski* allowed for $5,000 to the representative plaintiff, with no monetary compensation for the class members. The Court found the award unfair because there was no adequate notice or the right to opt out. *Id.* at 956. Once again, neither is the case here, crucial distinguishing facts between *Molski* and the case at bar.

Here, the class was adequately notified of the right to opt out. Moreover, the class representatives have not placed their interests above the class, as neither the class representatives nor the class will receive a monetary settlement. The available damages under Plaintiffs' disgorgement and unjust enrichment theories amount to less than 1 cent per class member. Finally, evaluating whether any of the 65 million class members suffered actual damages due to the footer policy would prove too cumbersome and costly.

Here, the *cy pres* donation is appropriate because available damages under Plaintiffs' theories are, at best, marginal compared to the number of class members, individual damages are nearly non-existent and impossible to determine on a class

CASE NO.: CV09-03568 CAS (PLAX)

wide basis, and the amount of available damages does not justify the costly attempt to do so.

### D. Attorneys' Fees Will Be Approved By The Court And The Request For Attorneys' Fees Does Not Impede The Fairness Of The Settlement.

Mr. McKinney primarily objects to the settlement on the basis that the attorneys' fees are too high. Mr. McKinney, mistakenly, and wrongfully, argues that this settlement provides for a specific attorney fees award. Clearly the settlement does not. This Court will have a full opportunity to review in detail the request for attorneys' fees and the basis for the request, and will determine whether the requested fees are justified in this case. Mr. McKinney's objection on the basis of attorneys' fees is premature and improper at this juncture.

## III. CONCLUSION

For the reasons stated above, the objections of Mr. McKinney and Ms. Buycks should be disregarded and Defendant requests that the Court approve the settlement.

Dated: December 14, 2009     REED SMITH LLP

By    /s/ Tamara M. Rowles
    Mark D. Litvack (SBN 183652)
    Michael A. Garabed (SBN 223511)
    Tamara M. Rowles (SBN 228940)

CASE NO.: CV09-03568 CAS (PLAX)