1  THEODORE H. FRANK (SBN 196332)
2     tedfrank@gmail.com
   **CENTER FOR CLASS ACTION FAIRNESS**
3  1718 M Street NW
4  No. 23-6
5  Washington, DC 20036
   (703) 203-3848
6

7  Attorney for Objector Darren McKinney

8

9
                    UNITED STATES DISTRICT COURT
10
              CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
11

12
   | Dawn Fairchild, *et al.*, | Case No. CV09-03568 CAS (PLAx) |
   |---|---|
   | *Plaintiffs* | **PUTATIVE CLASS ACTION** |
   | vs. | **BRIEF OF OBJECTOR DARREN McKINNEY IN OPPOSITION TO PLAINTIFFS' AND AOL'S MEMORANDA IN SUPPORT OF FINAL APPROVAL OF PROPOSED SETTLEMENT** |
   | AOL, LLC, | |
   | *Defendant*. | |
   | Darren McKinney, | Judge:  Honorable Christina A. Snyder |
   | *Objector*. | Date:   December 28, 2009 |
   |  | Time:   10:00 a.m. |
   |  | Courtroom: 5 |

In their memoranda in support of final approval of the proposed settlement, AOL and the Putative Class Plaintiffs fail to provide any precedent for approving a settlement where the attorneys receive nearly three times the total *cy pres* relief when the class receives zero, or for permitting the representative plaintiffs to direct nearly a third of the charitable relief to local charities that do not benefit the class as a whole. As such, the court should reject the proposed settlement of $0 to the class, $75,000 in *cy pres* relief, $35,000 in benefits to the representative plaintiffs, and $320,000 in attorneys' fees.

The memoranda make multiple arguments that are factually or legally incorrect.

*First*, the plaintiffs argue that there is nonmonetary relief, but this is belied by the facts of the case: the "prospective" relief was adopted by AOL before the suit was filed.

*Second*, the plaintiffs incorrectly argue that "severable" attorneys' fees should not be considered when assessing the fairness of the settlement. This makes no sense. The fairness of a settlement should be evaluated by comparing attorneys' fees to actual class benefits. The Ninth Circuit considers a common fund settlement presumptively unfair if attorneys receive more than 25% of the benefit, yet the proposed settlement here is *inferior* to such a common fund settlement, because any reduction in attorneys' fees reverts to the defendant, rather than to the class.

*Third,* the parties claim that the named plaintiffs do not receive "*any* remuneration for their time and efforts." Def's Resp. to Objections, Dkt. No. 41 at 4 (emphasis in original). But the opportunity to designate a charitable gift is remuneration, as the settlement itself recognizes. Moreover, one of the named plaintiffs is apparently employed by the recipient of the charity she has designated.

*Fourth*, the Putative Class Attorneys assert that the low response rate to the settlement is "strong evidence that this Settlement is fair, reasonable, and adequate." Pltfs' Memo. for Approval, Dkt. No. 37 at 18. But the apathy of unnamed class members to a worthless settlement should not be misinterpreted as support for the settlement.

Finally, the proposed charitable relief fails to meet the standard for *cy pres* awards because it targets charities that narrowly benefit the representative plaintiffs and the attorneys, rather than the class as a whole. As such, it should be rejected.

## I. The Nonmonetary Relief Is Worthless.

Plaintiffs take credit for alleged injunctive relief allowing AOL members to opt out of footer ads, but this relief has been available to the class since April 2008—fully thirteen months before the plaintiffs even filed suit in *Fairchild*. That the settlement requires AOL to send a couple of emails notifying customers of already-existing policy is hardly the type of "substantial benefit" or correction of an abuse that merits an award of fees.

## II. Scrutiny Of Attorneys' Fees Bargained For By Parties Is Essential For Determining The Fairness Of The Proposed Settlement.

Plaintiffs argue that "attorneys' fees set forth in the settlement agreement are severable from the settlement and should be separately considered." Plntfs' Resp. to Objectors, Dkt. No. 38 at 2. As a matter of economic reality, the attorneys' fees stipulated by parties in the agreement are integral to their agreement.

When defendant AOL determined that it would settle this action, it was indifferent about how their checks would be distributed, so every dollar negotiated on behalf of plaintiffs' counsel is a dollar that is not awarded to putative class. Effectively, plaintiffs have convinced AOL to pay up to $430,000 for settling the underlying claims, but plaintiffs have imposed a ceiling of $110,000 on class benefits.[1] If the requested fees are approved (and AOL has provided "clear sailing" for the request), then Putative Class Attorneys will have captured 74.4% of the benefits for themselves. This is a much higher

---

[1] This section assumes *arguendo* that the charitable donations qualify as *cy pres* awards that actually benefit the class, even though none of the designated charities relate to the alleged harm caused by defendant, and most of the contributions on behalf of the putative nationwide class are directed toward metropolitan Los Angeles. In fact, these donations do not constitute class recovery. *See* section III, *infra*.

percentage than would normally be permitted in a common fund settlement, which is presumably why the parties structured the settlement to make attorneys' fees severable. *Torrisi v. Tucson Elec. Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (25% benchmark in common fund settlement for determining fairness); *see also Tarlecki v. Bebe Stores, Inc.*, 2009 WL 1364340 (N.D. Cal. May 14, 2009) (criticizing settlement where attorneys received 46% of payout).

But there is no reason to treat a settlement with severable attorneys' fees more favorably than a common fund settlement. In a common fund settlement, the district court may use its discretion to reduce fees requested by plaintiffs' counsel. When fees are reduced, the class benefits from the surplus. Under this settlement, should the Court award less than the $320,000 than defendant AOL has already agreed to pay, the only beneficiary is AOL. The form of proposed settlement is therefore strictly worse to the class than a common fund, yet plaintiffs argue that because this inferior structure is "severable," so that the disproportionate share of attorneys' fees they bargained from AOL should not be considered when evaluating the reasonableness of the settlement.

The Court should not credit the plaintiffs' legal fiction. "Severable" attorneys' fees should be treated as bargained recovery from AOL that parties have earmarked exclusively for the benefit of plaintiffs' counsel.

Therefore, the agreed attorneys' fees must be scrutinized when evaluating whether the settlement is fair, reasonable, and adequate. "There is no exception in Rule 23(e) for fee provisions contained in proposed class action settlement agreements. Thus, to avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). Provisions for attorneys' fees are contained in the settlement agreement, so this Court has a responsibility to review them rather than "sever" these disproportionate fees from consideration. There is good reason for this: "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with

regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Id.* at 964.

The parties place undue significance on the stylization of attorneys' fees as a "separate" payment from the charitable awards, but this distinction has no legal significance. "That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award." *Staton*, 327 F.3d at 964. A "defendant is interested only in disposing of the total claim asserted against it." *Id.* "The rationale behind the percentage of recovery method also applies in situations where, although the parties claim that the fee and settlement are independent, they actually come from the same source." *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 820-21 (3rd Cir. 1995). "[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case." *Id.* at 821.

"[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal." *Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996). This court should evaluate these supposedly separate payments as if they were part of a functionally-identical common fund recovery. "If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees" then "the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel." *Manual for Complex Litigation* (4th ed. 2008), § 21.71, p. 525. The attorneys' fees may be measured against this total fund to determine whether the allocation between attorneys and the class is reasonable. *See id.*

## III. Named Plaintiffs Have Granted Themselves Valuable Entitlements While Shutting Out Most of the Class.

The parties argue that the named plaintiffs receive no compensation for agreeing to extinguish the claims of the class. But the named plaintiffs' contractual right to direct a total of $35,000 in charitable donations is a valuable entitlement. This reward is infinitely more valuable than what the unnamed class members receive: nothing.

Studies show that individuals find value in directing charitable contributions. Charitable giving produces physically-measurable neural responses similar to the satisfaction that humans feel when receiving money. A recent study measured the physical and self-reported responses of subjects who were given $100 and who were randomly confronted with one of two scenarios: (1) they were given the option to donate some amount of the money to a local food bank, or (2) they would have the money "taxed" away from them and given to the food bank. *See* William T. Harbaugh, et al., *Neural Responses to Taxation and Voluntary Giving Reveal Motives for Charitable Donations*, *Science* **316**, 1622-1624 (2007). The mandatory donations of subject's money produced "activation in specific brain areas that have been tied to concrete, individualistic rewards." *Id.* These researchers found that "three very different things—monetary payoffs to oneself, observing a charity get money, and a warm-glow effect related to free choice—all activate similar neural substrates." *Id.* That is, charitable giving produced similar neural brain patterns of satisfaction as being directly paid money. These results accord with economics research, which has modeled charitable giving as the product of a "warm glow"—happiness that donors feel by contributing to a cause they believe in. *See, e.g.*, Crumpler and Grossman, *An experimental test of warm glow giving*, *Journal of Public Economics*, **92**, No. 5-6 (June 2008), 1011-1021, and studies cited therein.

The named plaintiffs' donation rights are especially valuable because the donations are being made in their name. Each donation "shall reference the respective Settlement Class Representative." Agreement ¶ 24. Economics studies suggest that public recognition is one of the most valuable rewards experienced by charitable donors. *See*,

*e.g.*, William T. Harbaugh, *What do donations buy?: A model of philanthropy based on prestige and warm glow*, Journal of Public Economics, **67**, No. 2 (February 1998), 269-284 (concluding that charities report contributors in various donation brackets to take advantage of many donors' desire for public prestige).

Indeed, the settlement agreement itself recognizes that the representative plaintiffs are receiving valuable compensation: "No one of the Settlement Class Representatives shall receive any ***additional*** remuneration or monetary compensation pursuant to this Settlement Agreement." Agreement ¶ 24 (emphasis added).

Moreover, a Dawn Fairchild is the Associate Director of Development for the New Roads School of Santa Monica. *See* http://www.linkedin.com/pub/dawn-fairchild/11/400/b85 (attached as Exhibit 1). Named plaintiffs Dawn Fairchild and Robert Nachsin have designated the New Roads School of Santa Monica as the recipient of $17,500 of the settlement charitable donation. The Court should investigate what is apparent self-dealing masquerading as "charity," and perhaps an attempt by the plaintiffs to mislead the Court.

### IV. The Charitable Award Does Not Meet Ninth Circuit Standards For *Cy Pres*.

The settlement requires AOL to pay $25,000 each to (1) the Legal Aid Foundation of Los Angeles; (2) the Federal Judicial Center Foundation; and (3) the Boys and Girls Club of Los Angeles and Santa Monica. Settlement ¶ 23. Another $35,000 is devoted in the name of the representative plaintiffs to the New Roads School of Santa Monica, the Oklahoma Indian Legal Services, and the Friars Foundation. *Id.* ¶ 24.

These choices for the recipient of the charitable donations seem intended to benefit the personal preferences of the attorneys in the case (and possibly the preferences of this Court or the mediator), rather than the class; indeed, in the case of the three charities named in ¶ 24, they are intended to explicitly benefit the preferences of the four representative plaintiffs. Such targeted donations demonstrate the inherent conflict-of-interest problems that *cy pres* awards can have. *See* Theodore H. Frank, *Cy Pres Settlements*, Class Action Watch, March 2008 at 1 (discussing ethical problems arising

from attorney and judicial selection and approval of *cy pres* awards); Adam Liptak, "Doling Out Other People's Money," *New York Times* (Nov. 26, 2007) (same).

As in the case of *cy pres* distribution of trusts and estates, *cy pres* class action remedies are meant to distribute unclaimed funds as the "next best" means of compensating absent class members. 5 Jerold S. Solovy *et al.*, *Moore's Federal Practice* § 23.171 (3d ed. Supp. 2009). Relief should therefore be carefully crafted to benefit the class. In the Ninth Circuit, *cy pres* awards must be "rejected when the proposed distribution fails to provide the 'next best' distribution." *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990).

In *Six Mexican Workers*, the Ninth Circuit vacated an approved *cy pres* distribution that would have donated money to charities operating in Mexico where many of the absent class members were presumed to reside. *See id.* "The district court's plan permits distribution to areas where the class members may live, but there is no reasonable certainty that any member will be benefited." *Id.* "The plan does not adequately target the plaintiff class and fails to provide adequate supervision over distribution. We therefore set aside the court's cy pres application as an abuse of discretion." *Id.* at 1309.

The proposed settlement fails to provide the class with the "next best" distribution and is even more poorly targeted than the settlement in *Six Mexican Workers*. The nationwide putative class has little opportunity to benefit from contributions directed toward unrelated local charities in Southern California—youth clubs, a legal defense fund, and a private high school (totaling $67,500). Nor are many class members likely to benefit from a performing arts charity or Oklahoma Indian Legal Services ($17,500). The only truly nationwide charitable donation is to the Federal Judicial Center Foundation, which has no logical connection to AOL subscribers who were allegedly harmed by email footer advertising—and the connection there is likely to one or more of the attorneys, the mediator, or this Court. No oversight is proposed for any of the donations, and no attempt has been made to benefit the class. The proposed donations are not *cy pres* awards at all, and cannot be approved by the Court under *Six Mexican Workers*.

## V. Silence Does Not Imply That Absent Class Members Support The Proposed Settlement Agreement.

Plaintiffs and defendant contend that the two objections to the proposed settlement imply that 65 million silent class members support the settlement. This is untrue; parties have made no effort to poll a representative sample of the putative class members, and they have no basis to claim the class has reacted positively.

In fact, plaintiffs' attorneys solicited support for their agreement, but no support has materialized. Putative class members were advised that "you can ***tell the Court that you support*** or object to the Settlement or some part of it." Amended Official Notice, p. 5 (emphasis added). In spite of sending this message to 65 million AOL email addresses, zero members of the putative class wrote this court to support the settlement.

Only two absent putative class members wrote this court, and they both opposed. But why should putative class members want to jump through procedural hoops to object? According the plaintiffs, the most any putative class member could reasonably hope to recover is three cents—not nearly enough to justify the cost of a postage stamp, let alone the time required to compose a reasoned objection. The predominant response is apathy. "Acquiescence to a bad deal is something quite different than affirmative support." *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1137 (7th Cir. 1979) (reversing approval of settlement).

The absence or silence of class members "does not relieve the judge of his duty and, in fact, adds to his responsibility." *Norman v. McKee*, 290 F. Supp. 29, 32 (N.D. Cal. 1968) (denying approval of inadequate securities settlement), *aff'd* 431 F.2d 769 (9th Cir. 1970). The settlement's proponents have the burden to show the proposed settlement is fundamentally fair, adequate, and reasonable. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). Putative Class Attorneys have simply not carried this burden, so final approval of settlement should be denied.

## VI. The Fee Request Is Inflated.

Even if the Court were to apply lodestar to award fees, the Nunes and Hamner declarations seek to recover untold hours for their work in *Cecchini v. AOL*, No. 08-CV-6845, where *three* amended complaints were filed without any substantive legal briefing. Fees should not be awarded for churn, or for block billing that prevents the Court from making a determination of whether hours were reasonably expended.

## CONCLUSION

The putative class receives no ascertainable benefit, retrospectively or prospectively, from the proposed settlement. Even if the Court counts the charitable donations as *cy pres* relief, the attorneys' fees bargained by plaintiffs dwarf the relief.

Plaintiffs are either breaching their fiduciary duties by selling the class short or are bringing an extortionate "strike suit" for their own selfish benefit. Neither should be condoned; the settlement and the Putative Class Attorneys' requests for fees and costs should be rejected.

Dated: December 21, 2009

Respectfully submitted,

/s/ Theodore H. Frank
Theodore H. Frank (SB 196332)
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 23-6
Washington, DC 20036
(703) 203-3848
Attorney for Objector Darren McKinney

Case No. CV09-03568 CAS (PLAx)     10
BRIEF OF OBJECTOR DARREN MCKINNEY IN OPPOSITION TO PLAINTIFFS' AND AOL'S
MEMORANDA IN SUPPORT OF FINAL APPROVAL OF PROPOSED SETTLEMENT

# PROOF OF SERVICE

I declare that:

I am employed in the state of Illinois. I am over the age of 18 years and not party to the within action; my office address is 312 N. May Street, Suite 100, Chicago, Illinois 60607.

On December 21, 2009, I served the attached:

OBJECTION TO PROPOSED SETTLEMENT

_X_ By First-Class Mail in that I caused such envelope(s) to be delivered via First-Class Mail to the addressee(s) designated.

AOL E-mail Footer Litigation
Settlement,
P.O. Box 65771,
Sterling, VA 20165-8806

Glenn Nunes
The Nunes Law Group
15760 Ventura Blvd Ste 860
Encino, CA 91436

Christopher J. Hamner
Kimberly A. Westmoreland
Hamner Law Offices
15760 Ventura Blvd Ste 860
Encino, CA 91436

Brian Kabateck
Richard Kellner
Michael V. Storti
Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, CA 90017

Michael A. Garabed
Tamara M. Rowles
Reed Smith
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 21, 2009.

/s/ M. Frank Bednarz_____
M. Frank Bednarz