UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

DEC 13 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

---

ROBERT NACHSHIN; et al.,

    Plaintiffs - Appellees,

v.

AOL, LLC, a Delaware Limited Liability Company,

    Defendant - Appellee.

---

DARREN MCKINNEY,

    Objector - Appellant,

and

JANEL BUYCKS,

    Objector.

No. 10-55129

D.C. No. 2:09-cv-03568-CAS-PLA
U.S. District Court for Central California, Los Angeles

**MANDATE**



RECEIVED
CLERK, U.S. DISTRICT COURT

DEC 1 3 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

---

The judgment of this Court, entered November 21, 2011, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:
Molly C. Dwyer
Clerk of Court

Synitha Walker
Deputy Clerk

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT NACHSHIN; DAWN
FAIRCHILD; BRIAN GEERS; LAURENCE
GERARD, on behalf of themselves
and all others similarly situated,
   *Plaintiffs-Appellees*,

v.

AOL, LLC, a Delaware Limited
Liability Company,
   *Defendant-Appellee.*

DARREN MCKINNEY,
   *Objector-Appellant*,

and

JANEL BUYCKS,
   *Objector.*

No. 10-55129

D.C. No.
2:09-cv-03568-
CAS-PLA

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
June 7, 2011—Pasadena, California

Filed November 21, 2011

Before: Betty B. Fletcher and N. Randy Smith,
Circuit Judges, and James S. Gwin, District Judge.*

Opinion by Judge N.R. Smith

---

*The Honorable James S. Gwin, District Judge for the U.S. District Court for Northern Ohio, Cleveland, sitting by designation.

## COUNSEL

Richard L. Kellner, Kabeteck Brown & Kellner LLP, Los Angeles, California, for the plaintiffs-appellees.

Mark D. Litvack, Pillsbury Winthrop Shaw Pittman, LLP, Los Angeles, California, for the defendants-appellees.

Theodore H. Frank, Center for Class Action Fairness, Washington, D.C., for the objector-appellant.

## OPINION

N.R. SMITH, Circuit Judge:

The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the "next best" class of beneficiaries. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307-08 (9th Cir. 1990). *Cy pres* distributions must account for the nature

of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity. *See id.* The *cy pres* distributions here do not comport with our *cy pres* standards. While the donations were made on behalf of a nationwide plaintiff class, they were distributed to geographically isolated and substantively unrelated charities.

I.

In August 2009, four named plaintiffs—Dawn Fairchild, Brian Geers, Laurence Gerard, and Robert Nachshin (Plaintiffs)—brought a class action lawsuit against America Online, LLC (AOL) on behalf of a putative class consisting of more than 66 million paid AOL subscribers. Plaintiffs alleged that AOL wrongfully inserted footers containing promotional messages into e-mails sent by AOL subscribers. The amended complaint asserted six causes of action: (1) violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*; (2) unjust enrichment; (3) violation of California Business and Professions Code § 17200 *et seq.*; (4) breach of contract; (5) violations of the Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.*; and (6) violation of California Business and Professions Code § 17529 *et seq.*

The parties entered into voluntary mediation to settle their dispute. Working with retired U.S. District Court Judge Dickran Tevrizian, AOL and Plaintiffs eventually reached a class settlement (the Settlement). The Settlement calls for the certification of a settlement class consisting of "all current AOL members," or about 66 million subscribers. It further provides that (1) AOL will notify its members of the existence of the e-mail footer advertisements and their ability to opt out of the footers; (2) if AOL continues to append footer advertisements to members' outgoing e-mails, AOL will re-send the same e-mail notification to members every six months for a period of two years; and (3) AOL will inform future members of the e-

mail footers and provide a link enabling members to opt out of the footer advertisements.

The Settlement also addressed Plaintiffs' claims for monetary damages. All parties agreed monetary damages were small and difficult to ascertain. The maximum recovery at trial would have been the unjust enrichment AOL received as a result of its footer advertisement sales, or about $2 million. Divided among the more than 66 million AOL subscribers, each member of the class would receive only about 3 cents. The cost to distribute these payments would far exceed the maximum potential recovery.

In lieu of a cost-prohibitive distribution to the plaintiff class and at Judge Tevrizian's suggestion, the parties agreed that AOL would make a series of charitable donations. Because the 66,069,441 plaintiffs were geographically and demographically diverse, the parties claimed they could not identify any charitable organization that would benefit the class or be specifically germane to the issues in the case. At the parties' request, Judge Tevrizian suggested and the parties agreed that AOL would donate $25,000 to three charitable beneficiaries: (1) the Legal Aid Foundation of Los Angeles, (2) the Federal Judicial Center Foundation, and (3) the Boys and Girls Club of America (shared between the chapters in Los Angeles and Santa Monica).

In addition and at the suggestion of Judge Tevrizian, the parties agreed to compensate the named class representatives (for bringing the action) by awarding $35,000 to four charities of the class representatives' choice (rather than providing direct financial compensation). The Settlement provides that AOL will donate $8,750 to a charity designated by each named representative. These designated charities include the (1) New Roads School of Santa Monica, designated by Ms. Fairchild and Mr. Nachshin; (2) Oklahoma Indian Legal Services, designated by Mr. Geers; and (3) the Friars Foundation,

designated by Mr. Gerard. Each entity is a non-profit organization with tax deductible status under 26 U.S.C. § 501(c)(3).

The district court granted preliminary approval of the Settlement and provisionally certified the settlement class. Shortly thereafter, AOL sent an e-mail to over 60 million members of the class notifying them of the Settlement (the Notice). The Notice (1) explained that AOL will make donations to several charities totaling $110,000; (2) notified class members that the full settlement agreement is available at the district court or online at the internet addresses provided in the Notice; and (3) provided contact information, including phone numbers and an e-mail address, where inquiries could be sent. Two members of the class objected to the Settlement: Darren McKinney and Janel Buycks.[1] An additional 4,525 AOL subscribers opted out of the Settlement, but 1,037 failed to provide their names for the opt-out as required by the district court's instructions, and seven failed to submit opt-out requests before the opt-out deadline.

On December 7, 2009, McKinney filed a formal Objection to the Proposed Settlement pending before the district court. In his briefs and at oral argument, McKinney argued, among other things, that: (1) the charitable award does not meet the standard for *cy pres*, because the charities selected by the parties do not relate to the issue in the case and are not geographically diverse; (2) the district court judge should have recused herself given her husband's position as a director on the board of one of the charity beneficiaries, the Legal Aid Foundation of Los Angeles; and (3) AOL's Notice to the class was defective, because it did not specify that Ms. Fairchild worked for the charity she selected to receive a charitable donation.

---

[1] Ms. Buycks, who objected on the basis that she preferred the charitable donation be made to her own charitable foundation, the Imitators of God Foundation, Inc., was apparently the daughter of an official AOL subscriber. The district court allowed Ms. Buyck's mother to opt out of the Settlement.

The district court denied McKinney's objections, finding that (1) Judge Tevrizian's involvement in the negotiations was a significant indicator of the agreement's fairness, (2) the class was receiving significant prospective relief in addition to the *cy pres* awards, and (3) "the charities that have been chosen are [not] inappropriate or out of line with other class actions settlements that I have seen approved in this court and in other courts." Judge Snyder also declined to recuse herself, explaining "I have considered [the motion], but I do not think it is a basis for recusing myself in this matter. I certainly had no involvement in picking the charities. The parties picked the charities and I was asked to approve the settlement." On December 31, 2009, the district court issued a Final Order Re Approval of Class Action Settlement and Final Judgment Thereon, noting that the court "has considered and denied all objections filed in this action." On appeal, McKinney raises the same three objections he made before the district court.

II.

We review a district court's approval of a proposed class action settlement, including a proposed *cy pres* settlement distribution, for abuse of discretion. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). A court abuses its discretion when it fails to apply the correct legal standard or bases its decision on unreasonable findings of fact. *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

[1] We have recognized that federal courts frequently use the *cy pres* doctrine "in the settlement of class actions where the proof of individual claims would be burdensome or distribution of damages costly." *Six Mexican Workers*, 904 F.2d at 1305. The *cy pres* doctrine "takes its name from the Norman French expression, *cy pres comme possible*, which means 'as near as possible.'" *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir. 2002) (citation omitted). The doctrine originated to save testamentary charitable gifts that would otherwise default. The *cy pres* doctrine allows a

court to modify a trust to best carry out the testator's intent—that is, to effectuate the "next best" use of the gift. *Id.* In the context of class action settlements, a court may employ the *cy pres* doctrine to "put the unclaimed fund to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) (quoting 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 10:17 (4th ed. 2002)).

However, as a growing number of scholars and courts have observed, the *cy pres* doctrine—unbridled by a driving nexus between the plaintiff class and the *cy pres* beneficiaries—poses many nascent dangers to the fairness of the distribution process. *See, e.g., S.E.C. v. Bear, Stearns & Co.*, 626 F. Supp. 2d 402, 414-17 (S.D.N.Y. 2009); Martin H. Redish et al., Cy Pres *Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617 (2010). Some courts appear to have abandoned the "next best use" principle implicit in the *cy pres* doctrine. These courts have awarded *cy pres* distributions to myriad charities which, though no doubt pursuing virtuous goals, have little or nothing to do with the purposes of the underlying lawsuit or the class of plaintiffs involved. *See, e.g., In re Motorsports Merch. Antitrust Litig.*, 160 F. Supp. 2d 1392, 1396-99 (N.D. Ga. 2001) (distributing $1.85 million remaining from a price fixing class action settlement relating to merchandise sold at professional stock car races to ten organizations including the Duke Children's Hospital and Health Center, the Make-a-Wish Foundation, the American Red Cross, and the Susan G. Komen Breast Cancer Foundation); *Superior Beverage Co., Inc. v. Owens-Illinois, Inc.*, 827 F. Supp. 477, 480 (N.D. Ill. 1993) (awarding $2 million from an antitrust class action settlement to fifteen applicants, including the San Jose Museum of Art, the American Jewish Congress, a public television station, and the Roger Baldwin Foundation of the American Civil Liberties Union of Illinois).

20294      Nachshin v. AOL

When selection of *cy pres* beneficiaries is not tethered to the nature of the lawsuit and the interests of the silent class members, the selection process may answer to the whims and self interests of the parties, their counsel, or the court. Moreover, the specter of judges and outside entities dealing in the distribution and solicitation of settlement money may create the appearance of impropriety. *Bear Stearns*, 626 F. Supp. 2d at 415; *see* George Krueger & Judd Serotta, Op-Ed., *Our Class-Action System is Unconstitutional*, Wall St. J., Aug. 6, 2008 ("Judges, in their unlimited discretion, have occasionally been known to order a distribution to some place like their own alma mater or a public interest organization that they happen to favor."); Editorial, *When Judges Get Generous*, Wash. Post, Dec. 17, 2007, at A20 ("Federal judges are permitted to find other uses for excess funds, . . . giving the money away to favorite charities with little or no relation to the underlying litigation is inappropriate and borders on distasteful."); Adam Liptak, *Doling out Other People's Money*, N.Y. Times, Nov. 26, 2007 ("Lawyers and judges have grown used to controlling these pots of money, and they enjoy distributing them to favored charities, alma maters and the like.").

[2] To remedy some of these concerns, we held in *Six Mexican Workers* that *cy pres* distribution must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members.[2] *Six Mexican Workers*, 904 F.2d at 1307. The proposed *cy pres* distribution in *Six Mexican Workers* failed to meet this standard. In that case, the district court awarded a class of 1,349 undocumented Mexican workers $1,846,500 for their Fair Labor Contractor Registration Act claims against a conglomerate of fruit farmers. *Id.* at 1303-04. The district court ordered that any unclaimed funds

---

[2] We also note that the American Law Institute has adopted a rule for *cy pres* awards requiring parties "to identify a recipient whose interests reasonably approximate those being pursued by the class." Principles of the Law of Aggregate Litigation § 3.07(c) (Am. L. Inst. 2010).

be distributed through a *cy pres* award to the Inter-American Fund (IAF) for indirect humanitarian assistance in Mexico. *Id.* at 1304. We rejected this award, explaining that (1) the "proposal benefits a group far too remote from the plaintiff class," (2) "[t]he plan . . . fails to provide adequate supervision over distribution," and (3) although "the plan permits distribution to areas where the class members may live, . . . there is no reasonable certainty that any member will be benefited." *Id.* at 1308-09. We directed the district court on remand to consider escheating the funds pursuant to 28 U.S.C. § 2042 if the court could not develop an appropriate *cy pres* distribution. *Id.* at 1309.

[3] The *cy pres* distribution in this case fails to meet any of the guiding standards in *Six Mexican Workers*. The proposed awards fail to (1) address the objectives of the underlying statutes, (2) target the plaintiff class, or (3) provide reasonable certainty that any member will be benefitted. Plaintiffs in this case brought claims against AOL for breach of electronic communications privacy, unjust enrichment, and breach of contract, among others, relating to AOL's provision of commercial e-mail services. Yet none of the *cy pres* donations—$25,000 each to the Legal Aid Foundation of Los Angeles, the Boys and Girls Clubs of Santa Monica and Los Angeles, and the Federal Judicial Center Foundation—have anything to do with the objectives of the underlying statutes on which Plaintiffs base their claims.

[4] The *cy pres* distribution also fails to target the plaintiff class, because it does not account for the broad geographic distribution of the class. *See In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 683 (8th Cir. 2002) (reversing a district court's *cy pres* distribution because it "failed to consider the full geographic scope of the case"); *Houck on Behalf of U.S. v. Folding Carton Admin. Comm.*, 881 F.2d 494, 502 (7th Cir. 1989) (remanding a proposed *cy pres* award in a nationwide class action so the district court could consider "a broader nationwide use of its *cy pres* discretion"). Although

the class includes more than 66 million AOL subscribers throughout the United States, two-thirds of the donations will be made to local charities in Los Angeles, California. Even among the small percentage of plaintiffs located in Los Angeles, there is also no indication that any would benefit from donations to the Boys and Girls Clubs of Los Angeles and Santa Monica or Los Angeles Legal Aid. The proposed donation to the Federal Judicial Center Foundation at least conceivably benefits a national organization, but this organization has no apparent relation to the objectives of the underlying statutes, and it is not clear how this organization would benefit the plaintiff class. We therefore conclude that the district court applied the incorrect legal standard in approving the proposed *cy pres* distribution and, therefore, abused its discretion.

We are not persuaded by AOL's argument that courts must defer to the parties' freely-negotiated settlement, or AOL's reliance on the statement from *Rodriguez* that judicial review "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez*, 563 F.3d at 965 (internal quotation marks and citation omitted). This argument conflates two separate inquiries relating to class settlements: (1) whether the *class settlement*, "taken as a whole, is fair, reasonable, and adequate to all concerned," *id.*; and (2) whether the *distribution* of the approved class settlement complies with our standards governing *cy pres* awards. McKinney does not argue that the Settlement fails to adequately compensate Plaintiffs' injuries; instead, he argues that the (presumptively adequate) Settlement fails to comport with our established standards for *cy pres* distribution in *Six Mexican Workers*. A proposed *cy pres* distribution must meet these standards regardless of whether the award was fashioned by the settling parties or the trial court.

We are also not persuaded by the parties' claims that the size and geographic diversity of the plaintiff class make it "impossible" to select an adequate charity. It is clear that all members of the class share two things in common: (1) they use the internet, and (2) their claims against AOL arise from a purportedly unlawful advertising campaign that exploited users' outgoing email messages. The parties should not have trouble selecting beneficiaries from any number of non-profit organizations that work to protect internet users from fraud, predation, and other forms of online malfeasance. If a suitable *cy pres* beneficiary cannot be located, the district court should consider escheating the funds to the United States Treasury. *See Six Mexican Workers*, 904 F.2d at 1309.

### III.

[5] McKinney argues Judge Snyder should have recused herself from the hearing adjudicating the fairness and propriety of the proposed *cy pres* distribution in this case. We review the district court's decision whether to grant a motion for recusal for an abuse of discretion. *United States v. Wilkerson*, 208 F.3d 794, 797 (9th Cir. 2000).

A.  Recusal under 28 U.S.C. § 455(a)

McKinney first argues that 28 U.S.C. § 455(a) requires Judge Snyder to have recused herself, because her husband sat on the board of one of the proposed *cy pres* beneficiaries, the Legal Aid Foundation of Los Angeles (LAFLA). Though McKinney claims that the somewhat attenuated connections between the Settlement and Mr. Snyder's board service should raise questions about Judge Snyder's impartiality, McKinney has not shown that Judge Snyder abused her discretion in denying the motion for recusal. The test for recusal under § 455(a) is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Wilkerson*, 208 F.3d at 797 (internal quotation marks and citation omitted).

| 20298 | NACHSHIN v. AOL |
|---|---|

Although McKinney correctly points out that Judge Snyder's husband served on LAFLA's board, this board includes roughly 50 attorneys representing local law firms, corporations, and community organizations. *See Board of Directors*, LAFLA, http://www.lafla.org/board.php (last visited Aug. 22, 2011). LAFLA is a non-profit organization that provides access to legal services for low-income individuals in the Los Angeles area. There is no indication in the record that board members receive financial compensation, development commissions, or any other remuneration for their service. Although the proposed *cy pres* donation of $25,000 to LAFLA is a significant sum of money, McKinney has not shown that the donation would benefit Mr. Snyder in any way other than to enable LAFLA to continue providing legal services to the indigent.

B. Recusal under 28 U.S.C. § 455(b)(4), (5)(iii)

[6] McKinney also argues Judge Snyder should have recused herself, because her husband either (1) had a "financial interest in the subject matter in controversy or in a party to the proceeding," 28 U.S.C. § 455(b)(4) (2006); or (2) had an "interest that could be substantially affected by the outcome of the proceeding," *id.* § 455(b)(5)(iii). We disagree. The record gives no indication that Mr. Snyder had a financial interest in the subject matter in controversy. The statute defines financial interest as, among other things, "a relationship as director . . . in the affairs of a *party*." 28 U.S.C. § 455(d)(4) (emphasis added). Mr. Snyder had no interest in a "party" to the proceeding. LAFLA was not a "party" to the proceeding. LAFLA was neither named as a party nor represented by counsel. Its status as one of three proposed *cy pres* beneficiaries was the result of a fortuitous recommendation by the mediator—not by a decision made by Judge Snyder or at the encouragement of Mr. Snyder or any LAFLA representative. McKinney fails to cite precedent supporting the proposition that someone or something fortuitously impacted by a

proceeding should be treated as a "party" to the proceeding under § 455(b).

Mr. Snyder did not have an interest that could be "substantially affected" by the outcome of the proceeding. Although LAFLA would no doubt consider the $25,000 *cy pres* donation significant, there is no reason to believe Mr. Snyder (as one of 50 volunteer board members) would himself realize a significant benefit. *See Sensley v. Albritton*, 385 F.3d 591, 600 (5th Cir. 2004) (holding that, in the context of recusal under 28 U.S.C. § 455(b)(4) or (b)(5)(iii), "where an interest is not direct, but is remote, contingent or speculative, it is not the kind of interest which reasonably brings into question a judge's partiality" (internal quotation marks omitted)).

[7] We conclude that she did not abuse her discretion under § 455 in denying McKinney's motion to recuse.

IV.

Lastly, McKinney argues that the class notice was not sufficient. We decline to address the issue, because we have already held that the proper legal standard was not applied to approve the *cy pres* distribution. Therefore, it is unnecessary to decide whether the Notice was legally significant.

**REVERSED** in part, **AFFIRMED** in part, and **REMANDED.**

We **DENY** AOL's motion to take judicial notice of the amended class notice posted online.

The parties bear their own costs.