1  KABATECK BROWN KELLNER LLP
2  BRIAN S. KABATECK (State Bar No. 152054)
   bsk@kbklawyers.com
3  RICHARD L. KELLNER (State Bar No. 171416)
   rlk@kbklawyers.com
4  644 South Figueroa Street
   Los Angeles, CA  90017
5  Telephone:  213.217.5000
   Facsimile:  213.217.5010

6  THE NUNES LAW GROUP
7  GLENN C. NUNES (State Bar No. 210453)
   glenn@nuneslawgroup.com
8  1 Sansome Street, Suite 3500
   San Francisco, CA  94104
9  Telephone:  415.946.8894
   Facsimile:  415.946.8801

10 HAMNER LAW OFFICES, APC
   CHRISTOPHER J. HAMNER (State Bar No. 197117)
11 chamner@hamnerlaw.com
   555 W. 5th Street, 31st Floor
12 Los Angeles, CA  90013
   Telephone:  213.533.4160
13 Facsimile:  213.533.4167

14 Attorneys for Plaintiffs and the Proposed Class

15                UNITED STATES DISTRICT COURT

16                CENTRAL DISTRICT OF CALIFORNIA

17                     WESTERN DIVISION

18

19 DAWN FAIRCHILD, ROBERT              )  No. CV 09-03568 CAS (PLAx)
   NACHSHIN, BRIAN GEERS and          )
20 LAURENCE GERARD, on behalf of      )  MEMORANDUM OF POINTS
   themselves and all other similarly  )  AND AUTHORITIES IN
21 situated,                          )  SUPPORT OF PLAINTIFFS'
                                      )  MOTION FOR PRELIMINARY
22                      Plaintiffs,   )  APPROVAL OF PROPOSED
                                      )  REVISED CLASS ACTION
23        vs.                         )  SETTLEMENT
                                      )
24 AOL, LLC, a Delaware Limited       )  Date:      August 26, 2013
   Liability Company; and DOES 1      )  Time:      10:00 a.m.
25 through 10 inclusive,              )  Dept.:     5
                                      )
26                      Defendants.   )  Honorable Christina A. Snyder
                                      )
27

28 601944230v1

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................... 1

II.     NATURE OF THE CASE ................................................................ 3

III.    INVESTIGATION DISCOVERY AND MEDIATION ................................ 5

IV.     THE PROPOSED REVISED CLASS ACTION SETTLEMENT ................. 5

V.      LEGAL ARGUMENT ..................................................................... 6

A.      Standards for Settlement Approval .............................................. 6

B.      The Proposed Settlement is Fair and Reasonable ............................ 8

C.      The Proposed Class Satisfies the Requirements of Rule 23 .............. 9

VI.     THE PROPOSED PLAN OF NOTICE ........................................... 14

VII.    CONCLUSION ........................................................................ 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Table of Authorities</u>

<u>Cases</u>

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................... 9, 10

*Besinga v. United States*,
  923 F.2d 133 (9th Cir. 1991) ............................................................ 14

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ....................................................... 11, 13

*Cecchini v. AOL, LLC*,
  Case No. CV-08-06845 ................................................................. 4, 5

*Churchill Village, LLC v. Gen. Elec. Co.*,
  361 F.3d 566 (9th Cir. 2004) ............................................................. 7

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ........................................................... 7

*De La Fuente v. Stokely-Van Camp, Inc.*,
  713 F.2d 225 (7th Cir. 1983) ........................................................... 11

*Eisen v. Carlisle & Jacqueline*,
  417 U.S. 156 (1974) ................................................................. 14, 15

*Farinella v. PayPal, Inc.*,
  2009 U.S. Dist. Lexis 41368 (E.D.N.Y. Apr. 30, 2009) .................... 16

*General Tel Co. v. Falcon*,
  457 U.S. 147 (1982) ....................................................................... 13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................... 10, 11

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ........................................................... 12

*In re Glassine & Greaseproof Paper Antitrust Litigation*,
  88 F.R.D. 302 (ED. Pa. 1980) ......................................................... 11

601944230v1

- ii -

Case No. CV 09-03568 CAS (PLAx)
Memorandum Of Points And Authorities In Support Of Plaintiffs'
Motion For Preliminary Approval Of Proposed
Revised Class Action Settlement

*In re Initial Public Offering Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ................................................................. 7

*In re NASDAQ Market Makers Antitrust Litigation*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................... 6, 7

*In re Pac. Enter. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...................................................................... 7

*Linney v. Cellular Alaska Partnership*,
   151 F.3d 1234 (9th Cir. 1998) .................................................................. 7

*Longman v. Food Lion, Inc.*,
   1994 WL 686624 (M.D.N.C. 1999) ....................................................... 12

*Lynch v. Rank*,
   604 F. Supp. 30 (N.D. Cal. 1984) .......................................................... 12

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................................................................... 16

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ........................................................... 11, 13

*Scholes v. Stone, McGuire & Benjamin*,
   143 F.R.D. 181 (N.D. Ill. 1992) ........................................................ 10, 12

*Smith v. Univ. of Washington Law School*,
   2 F. Supp. 2d 1324 (W.D. Wa. 1998) ..................................................... 11

*Torisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ...................................................................... 7

## Statutes and Codes

California Business and Professions Code
   Sections 17200, *et seq.* ........................................................................... 4
   Sections 17529, *et seq.* ........................................................................... 4

Consumers Legal Remedies Act
   Cal. Civ. Code sections 1750, *et seq.* ...................................................... 4

Electronic Communications Privacy Act
   18 U.S.C. sections 2510, *et seq.* .............................................................. 3

## Rules and Regulations

Federal Rules of Civil Procedure

Rule 23 ................................................................................................ 1, 9, 10, 11
Rule 23(a) ................................................................................................ 10, 12, 13
Rule 23(a)(1) ............................................................................................ 10
Rule 23(a)(2) ............................................................................................ 10
Rule 23(b) ................................................................................................ 10, 13
Rule 23(b)(2) ............................................................................................ 14
Rule 23(b)(3) ............................................................................................ 10, 13, 14
Rule 23(c)(2) ............................................................................................ 14
Rule 23(e) ................................................................................................ 14
Rule 23(e)(1) ............................................................................................ 14, 15
Rule 23(e)(1)(A) ...................................................................................... 6
Rule 23(e)(1)(C) ...................................................................................... 7
Rule 23(e)(3) ............................................................................................ 15

## Other Authorities

4 Alba Conte & Herbert B. Newberg,
  *Newberg on Class Actions* Section 11.41 at 90 (4th ed. 2002) ........................... 9

4 Alba Conte & Herbert B. Newberg,
  *Newberg on Class Actions* Section 8.32 at 262-68 (4th ed. 2002) ..................... 14

# I.   **INTRODUCTION**

This motion seeks preliminary approval of a settlement that had been finally approved by this Court on December 31, 2009,[1] but was affirmed in part and reversed in part by the Ninth Circuit in an opinion issued on November 21, 2011. The revised settlement addresses the only ground upon which the Ninth Circuit reversed the granting of final approval – the *cy pres* award.  The revised settlement addresses the *cy pres* issue on which the Ninth Circuit reversed, plus (1) provides disclosures in the settlement notice and settlement agreement of the relationship between class representatives and the charities they selected to receive a donation in lieu of an incentive payment and (2) is updated to reflect events that have occurred consistent with the original settlement (*e.g.,* AOL has discontinued its practice of using the e-mail footers at issue, Plaintiffs filed an amended complaint, and attorney's fees have been paid).  (Kellner Decl., Exhibit "C" (showing in redline the revisions to the settlement agreement from the original version previously approved)).

Notwithstanding the additional work that Class Counsel performed in connection with the appeal and this subsequent approval process, Class Counsel will not be seeking a fee beyond that which had been approved under the original settlement.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Dawn Fairchild, Robert Nachshin, Brian Geers and Laurence Gerard ("Plaintiffs"), on behalf of themselves and as putative representatives of the Settlement Class, hereby move this Court for an order preliminarily approving the revised settlement reached in this case.  This case will settle, on a national basis, claims by individuals against Defendant AOL Inc., formally known as AOL LLC, ("AOL") related to AOL's wrongful insertion of footers containing promotional messages into e-mails sent by

---

[1] This Court's December 31, 2009 Final Order Re Approval of Class Action Settlement and Final Judgment (Docket No. 53-3) is attached as Exhibit G to the Declaration of Richard Kellner ("Kellner Decl."), filed concurrently.

1   Plaintiffs and the Settlement Class, and AOL's failure to provide adequate notice to

2   the Class Members on how to opt out from having such footers added to the Class

3   Members' e-mails.

4           Plaintiffs believe that the proposed settlement is fair, reasonable and adequate.

5   Since the original Class Action Settlement previously approved by this Court, AOL

6   has discontinued these e-mail footers.  Under the Revised Class Action Settlement, if

7   AOL re-establishes the practice of inserting e-mail footers containing promotional

8   messages into the e-mails sent by its subscribers, AOL will send notice to all

9   Settlement Class Members regarding the existence of the footers and their ability to

10  remove them from future e-mails. Further, if AOL re-establishes the practice, it will

11  inform all future subscribers to its service of the existence of the e-mail footers either

12  as part of registering for an AOL account or as part of an e-mail confirming

13  registration of an AOL account and provide electronic notice of their ability to avoid

14  having e-mail footers added.

15          If this matter went to trial, the harm that the Class could prove would be the

16  unjust enrichment and improper revenues that AOL sustained as result of its practice.

17  Because the total amount of such damages, if Plaintiffs were entirely successful,

18  would be about $2 million and the class is comprised of approximately 60 million

19  individuals/businesses, the monetary compensation that would be provided to each

20  class member (if it were entirely successful) would be approximately 3 cents.

21  Plaintiffs instead negotiated that AOL will donate $110,000 to certain charities.

22          Accordingly, under the settlement, AOL will donate $37,500 each to two

23  charitable organizations: (1) the Electronic Frontier Foundation and (2) the

24  Information Technology & Innovation Foundation. These entities are specifically

25  chosen because they: (1) have no relation to any Party; (2) focus upon information

26  technology and Internet related issues which address the objective of the statutes

27  underlying the litigation; (3) are not local charities, but rather account for the broad

28

geographic distribution of the Class; and (4) are likely to benefit the Class of over 60 million Internet users.  In addition, a total of $35,000 will be donated to charities chosen by the Settlement Class Representatives, who will not be receiving an incentive payment.  Each Class Representative's relationship with the charity they selected to receive a donation is disclosed in the Revised Settlement Agreement. [2] Neither the Class' recovery nor the charitable donations will be impacted or diminished in any way by the payment of Class Counsel's fees, costs or the administration of this Settlement, because AOL has separately paid Class Counsel's fees and will administer its obligations at its own expense for purposes of the settlement. Each class member will also prospectively benefit by the fact that AOL will no longer be able to profit from this practice without their consent.

The settlement is the product of intensive arms' length negotiations and was reached with the assistance and approval of the Honorable Dickran M. Tevrizian, a retired United States District Court Judge, who oversaw three separate in person sessions between the parties.

Based upon the foregoing, Plaintiffs requests that this proposed revised settlement be preliminarily approved by the Court.

## II.    <u>NATURE OF THE CASE</u>

On August 13, 2009, Plaintiffs filed a Second Amended Class Action Complaint ("Complaint") against AOL and DOES 1 through 10 in the United States District Court for the Central District of California. The Complaint was filed on behalf of a putative class consisting of all current AOL members and asserts the following claims: (1) violation of the Electronic Communications Privacy Act, 18

---

[2] The relationships between the class representatives and their selected charities are as follows: (1) Ms. Fairchild is employed at her designated charity the New Roads School of Santa Monica; (2) Mr. Nachshin's wife is on the Board of Trustees of his designated charity the New Roads School of Santa Monica, (3) Mr. Geers has previously personally supported his designated charity the Oklahoma Indian Legal Services; and (4) Mr. Gerard has previously worked at his designated charity the Friars Foundation.

U.S.C. §§ 2510 *et seq*.; (2) unjust enrichment; (3) violation of California Business and Professions Code, §§ 17200, *et seq*.; (4) breach of contract; (5) violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.; and (6) violation of California Business and Professions Code §§ 17529 *et seq*. AOL has yet to respond to the allegations of the Complaint.

Discovery and AOL records establish that Plaintiffs are current members of AOL and each registered an AOL account that allowed Plaintiffs to send e-mails.[3]  In or around February 2006, AOL began inserting promotional messages as a footer attached to the end of e-mails sent by AOL members. The footers are separated from the text of the e-mails by a black line and include messages such as "Find phone numbers fast with the New AOL Yellow Pages!" At first, these footers promoted only AOL's own products and services. Beginning in October 2008, the footers began to display advertisements from third parties that paid AOL for advertising space. (Declaration of Richard L. Kellner ("Kellner Decl."), Ex. "A", pp. 9:16-10:21.) Discovery has revealed that AOL has generated under $2 million in revenue from these third-party advertisements since October 2008. (Kellner Decl., Ex. A, pp. 37:6 8.)

AOL did not disclose in its terms of service that it would attach the footers to its members' e-mails. Moreover, until April 2008, AOL did not provide a method for its members to discontinue the ad placements. (*Id*. at pp. 22:10-24:3.) After that time, a paid subscriber could contact AOL and request that AOL stop inserting the footers at the bottom of that subscriber's e-mail. (*Id.*) AOL, however, never notified its paid subscribers of its new policy. (*Id.* at pp. 24:7-26:3.)

In addition to the instant case, another action was filed in this District that arises out of identical allegations on behalf of a putative nationwide class. The case is entitled *Cecchini v. AOL, LLC*, Case No. CV-08-06845, originally filed on

---

[3] Some features of the AOL website are free for all subscribers. Other types of services require subscribers to register for an AOL account and pay a monthly fee. The putative class consists of both "free" and "paid" AOL members.

October 17, 2008. Because the *Cecchini* case was dismissed and the plaintiffs there
have joined this action, this settlement resolves all claims against AOL relating to
footer advertisements on a national basis.

## III.    INVESTIGATION DISCOVERY AND MEDIATION

Plaintiffs have conducted a comprehensive factual investigation into the
matters set forth in the litigation, including an analysis of relevant documents and
related data, as well as taking the deposition of Roy Ben-Yousef, the Vice President
of AOL responsible for the e-mail footers. (Kellner Decl., ¶¶ 5-6.)

Immediately upon receipt of the Complaint, counsel for Plaintiffs and AOL
engaged in numerous formal and informal settlement discussions, including multiple
mediation sessions under the direction of the Honorable Dickran M. Tevrizian,
United States District Court Judge for the Central District of California (Retired).
(Kellner Decl., ¶ 7.) Judge Tevrizian was instrumental in assisting all Parties reach
the determination that the Proposed Settlement was fair. Plaintiffs determined that
the proposed settlement would be fair, reasonable, adequate, and in the best interests
of the Settlement Class, and that it is desirable that the litigation be settled in the
manner and upon the terms and conditions set forth. (Kellner Decl., ¶¶ 7-8.) Because
the gravamen of the Complaint is that AOL should be found liable because it did not
disclose in its terms of service that it would attach these footers to its members' e-
mail, or notify its members of its opt-out policy, the settlement will fully address the
Settlement Class' concerns without the time, risk, and expense of litigation.

## IV.    THE PROPOSED REVISED CLASS ACTION SETTLEMENT

The terms of the proposed class settlement are set forth fully in the Revised
Class Action Settlement Agreement and the amendments thereto. (Kellner Decl.,
Exhibit "B"). It calls for the certification by the Court of a Settlement Class
consisting of:

*All current AOL members.*

1    Plaintiffs believe that the proposed settlement is fair, reasonable, and adequate.

2   Since the original settlement previously approved by this Court, AOL has

3   discontinued the practice of appending e-mail footers.

4    Under the revised settlement, if AOL elects to re-establish the practice of

5   appending footers onto subscribers' outgoing e-mails, AOL will send notice to all

6   Settlement Class Members of the existence of the footers and their ability to remove

7   them from future e-mails. Further, if AOL re-establishes this practice, AOL will

8   inform all future members of the existence of the e-mail footers either as part of

9   registering for an AOL account or as part of an e-mail confirming registration of an

10  AOL account. Finally, AOL will donate $37,500 to each of the two charities named

11  in the Revised Class Action Settlement Agreement and an additional $35,000 to

12  charities chosen by the Settlement Class Representatives. (*See* Kellner Decl., Ex. B,

13  ¶¶ 23-24.)

14    Plaintiffs' Counsel has been awarded  and paid the following attorneys' fees

15  and costs under the original Settlement Agreement: $160,000 for Kabateck Brown

16  Kellner LLP and $160,000 to be shared between the Nunes Law Group and the

17  Hamner Law Offices.  The Parties agree that there will be no additional request for

18  attorneys' fees or costs.

19  **V.**    **LEGAL ARGUMENT**

20    **A.**    **Standards for Settlement Approval**

21    Federal Rule of Civil Procedure 23(e)(1)(A) requires court approval of any

22  settlement of claims brought on a class basis. Approval of a class action settlement

23  occurs in two steps. First, the Court grants preliminary approval of the settlement and

24  conditionally certifies the class. Second, after notice of the settlement is provided to

25  the class, the Court conducts a fairness hearing. *See* Manual for Complex Litigation

26  (4th ed. 2004) § 21.632; and *In re NASDAQ Market Makers Antitrust Litigation*, 176

27  F.R.D. 99, 102 (S.D.N.Y. 1997).  A court may approve a class settlement upon a

28

finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Pro. 23(e)(1)(C). The decision to grant preliminary approval is committed to the Court's sound discretion. *Officers for Justice v. Civil Service Com 'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

In determining whether a settlement is fair, reasonable, and adequate, a court must consider the following factors: (1) the risk, expense, complexity, and likely duration of further litigation; (2) the amount offered in settlement; (3) the solvency of the defendant; (4) the extent of discovery completed and the stage of the proceedings; (5) the views and experience of counsel; (6) the presence of a governmental participant; and (7) any opposition to the settlement by class members. *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exclusive, and a court may balance and weigh these factors depending on the circumstances of the case. *Torisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

Settlements of complex class actions prior to trial are strongly favored. *See, e.g., Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); and *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Preliminary approval should be granted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re NASDAQ Market Makers*, 176 F.R.D. at 102. "If the court preliminarily approves the settlement, it must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." *In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186, 192 (S.D.N.Y. 2005).

### B.   The Proposed Settlement is Fair and Reasonable

Since this litigation started, AOL has discontinued its practice of appending email footers.  As such, the revised settlement addresses the issues raised in the Complaint and corrects the improper conduct going forward because AOL also has agreed to notify all  subscribers of the existence of the footers if it re-establishes this practice. Moreover, AOL will make substantial charitable donations as recompense for its alleged wrongful conduct and the alleged profits it unjustly obtained from third party advertisers.

While Plaintiffs seek compensatory and general damages in addition to restitution and disgorgement, Plaintiffs acknowledge for settlement purposes that due to the nature of the wrongful conduct, each Class Members' damages will be small and difficult to ascertain. Thus, the primary focus of a recovery at trial would be to hold AOL liable for unjust enrichment. The amount of restitution recoverable based on AOL's unjust enrichment would primarily (if not exclusively) focus upon amounts AOL earned for sale of advertising space in its subscribers' e-mail. The evidence shows that AOL received under $2 million in revenue since October 2008 when it began inserting promotional messages from third parties in its subscribers outgoing e-mails. Even if AOL were to pay the entire $2 million in damages to the Class, each of the Class Members would receive approximately 3 cents, before the costs of administering such a settlement were factored in.

Plaintiffs recognize that the cost of administering the settlement checks to such a large class would clearly exceed the amount of potential damages. Pursuant to a suggestion by Judge Tevrizian (who served as the Settlement Mediator), monies will be donated to well-established charities in the realm of technology and the Internet in lieu of a negligible payment made to class members. In addition, and again at the suggestion of Judge Tevrizian, the class representatives have agreed and requested that, even though they have each spent significant time on this matter and

have been subject to either depositions and/or confirmatory discovery, they not receive any monies directly as incentive payments, but instead simply direct a total of $35,000 to charities of their choice.

As a result, the settlement provides full prospective redress for AOL members and a means for redressing the alleged unjust enrichment of funds that AOL received from third party advertisers.

And, if there are any Class Members who may seek to recover compensatory or general damages as a result of AOL's wrongful conduct, the Settlement provides a means for these Class Members to opt-out of the settlement so that they can seek their own redress.

The settlement in this case is a fair, reasonable, and adequate compromise that was reached in arms' length negotiations between highly experienced counsel under the supervision of distinguished United States District Court Judge Dickran M. Tevrizian (Retired). The settlement reflects not only the assistance and expertise of Judge Tevrizian, but also his approval. Likewise, Plaintiffs' experienced class counsel believe that this settlement provides a significant benefit for the Class and is a fair, reasonable, and adequate result. (Kellner Decl., ¶¶ 7-8.) As the Court is aware, there is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arms' length negotiations. *See* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 at 90 (4th ed. 2002).

## C.   <u>The Proposed Class Satisfies the Requirements of Rule 23</u>

Before granting preliminary approval of a settlement, the Court must determine that the proposed settlement class can be certified for settlement purposes. *See Manual for Complex Litigation* (4th ed. 2004) § 21.632; and *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Rule 23 governs the issue of class certification, whether the proposed class is a litigated class or, as here, a settlement class. All criteria for certification of a class for litigation purposes, except

1   manageability, apply to certification for settlement purposes. Courts routinely and

2   properly certify classes for settlement purposes only and the proposed certification of

3   the class is completely consistent with the applicable authorities. *Amchem Prods.*,

4   521 U.S. at 619-29.

5       Certification is appropriate where the proposed class and the proposed class

6   representatives meet the four prerequisites of Rule 23(a) -- numerosity,

7   commonality, typicality, and adequacy of representations -- and one of the three

8   requirements of Rule 23(b). Certification of a class action for damages requires a

9   showing that "questions of law and fact common to the members of the class

10  predominate over any questions affecting only individual members, and that a class

11  action is superior to other available methods for the fair and efficient adjudication of

12  the controversy." Fed. R. Civ. P. 23(b)(3).

13          **1.    <u>Numerosity</u>**

14      The first requirement for maintaining a class action under Rule 23(a) is that

15  the class is so numerous that joinder of all members would be "impracticable." Fed.

16  R. Civ. P. 23(a)(1). "A finding of numerosity may be supported by common sense

17  assumptions." *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill.

18  1992).

19      Here, there are approximately sixty million putative class members. (Kellner

20  Decl., Ex. A, pp. 34:11-35:7; 57:8-9.) These subscribers are geographically dispersed

21  across the country, making joinder impractical. Therefore, the proposed class meets

22  the first prerequisite of Rule 23 for settlement purposes.

23          **2.    <u>Commonality</u>**

24      The second prerequisite to class certification is the existence of questions of

25  law or fact common to the class. Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has

26  made clear that the commonality requirement is to be "construed permissively."

27  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Commonality can be

28

established by showing "that the class is united by a common interest." *See Blackie*, 524 F.2d at 901 (holding, "[S]light differences in class members' positions" will not defeat commonality.) The existence of "shared legal issues" will satisfy the commonality requirement, even if there are "divergent factual predicates." *Hanlon*, 150 F.3d at 1019-20). Commonality is established where the proposed class' claims stem from the same source. *Id.*

The overarching and unifying allegations in this action are that AOL placed promotional messages in the form of e-mail footers into outgoing e-mail messages and failed to notify members of the existence of the footers or their ability to opt-out. These issues are common to all Class Members and this case satisfies the second prerequisite of Rule 23 for settlement purposes.

### 3.   <u>Typicality</u>

A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Slight factual distinctions between the named plaintiffs and the claims of absent class members do not undermine typicality. *In re Glassine & Greaseproof Paper Antitrust Litigation*, 88 F.R.D. 302, 304 (ED. Pa. 1980). Rather, courts focus on the defendants' conduct and the plaintiff's legal theory. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiffs and the class sought to be represented, the typicality requirement is usually satisfied, irrespective of varying fact patterns which underlie individual claims. *Smith v. Univ. of Washington Law School*, 2 F. Supp. 2d 1324, 1342 (W.D. Wa. 1998) ("Typicality turns on the defendant's actions toward the plaintiffs' class, not particularized defenses against individual class members.") Furthermore, the test for typicality is whether other members have the same or similar injury, whether the action is based

on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985). The typicality requirement is liberally construed. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

In this case, the claims of the representative plaintiffs arise from AOL's insertion of promotional messages in the form of e-mail footers into outgoing e-mails sent by Plaintiffs and the Class Members and AOL's failure to notify its subscribers of their ability to opt-out of the automatic insertion of the footers. Plaintiffs' allegations are typical of those of the Class Members who also had footers inserted automatically into their outgoing e-mails. Plaintiffs assert the same legal claims on behalf of themselves and the proposed class. Therefore, Plaintiffs' claims are typical of the claims of the other members of the Class.

### 4.    <u>Adequacy of Representation</u>

The final requirement of Rule 23(a) is that the representative plaintiffs fairly and adequately represent the interests of the class. Adequacy of the representation requires that the named representative's attorney be qualified, experienced and generally capable to conduct the litigation, and that the named representative's interests not be antagonistic to the interests of the class. *Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984).

Adequacy of representation does not require the representative plaintiffs to "possess encyclopedic knowledge of the legal theories supporting a class' claims." *Longman v. Food Lion, Inc.*, 1994 WL 686624 (M.D.N.C. 1999). Rather, a plaintiff is an adequate class representative if he or she "has a basic understanding of the allegations in [the] case." *Yamner v. Botch*, 1994 WL 514035, slip op. at 7 (N.D. Cal. September 15, 1994).

Here, the interests of the representative Plaintiffs are not antagonistic to the Class because they are all similarly interested in obtaining prompt and fair relief from AOL and ensuring that similar conduct does not happen in the future. There is no question that Plaintiffs have a genuine interest in the litigation and a basic understanding of the allegations in this case. (Kellner Decl., Exs. E and F.) Additionally, as set forth in the accompanying Declaration of Richard L. Kellner, Plaintiffs are represented by counsel who are highly qualified in class action litigation. (Kellner Decl., ¶¶ 16-18.) Therefore, the proposed Class meets the adequacy of representation requirement.

### 5. The Action Meets the Requirements of Rule 23(b)

Once the four prerequisites of Rule 23(a) are met, "the potential class must also satisfy at least one provision of Rule 23(b)." *Rosario*, 963 F.2d at 1017; *see also General Tel Co. v. Falcon*, 457 U.S. 147, 161 (1982).

Rule 23(b)(3) states that a class may be certified when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [...] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." These requirements are satisfied here.

The questions of law and fact common to all Class Members are set forth above. These common issues predominate over any individual issues such as the nature and extent of damages. *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment."). The damages issues in this case are easily manageable because Plaintiffs are not seeking individual recovery, but rather, Plaintiffs are securing a permanent change in AOL's conduct and policies and several donations to various charities.

Additionally, a class action is clearly superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all Class Members would be impracticable. Finally, because the damages suffered by individual members of the Settlement Class may be indeterminable or in many cases nonexistent, the expense and burden of individual litigation would make it impossible for all Settlement Class Members to individually redress the harm done to them.

In short, the Settlement Class is suitable for certification, and the Court should certify the Settlement Class pursuant to Rule 23(b)(3), for purposes of granting preliminary approval to the settlement.[4]

## VI.   THE PROPOSED PLAN OF NOTICE

Rule 23(e)(1) states that, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e) requires that notice of a proposed settlement inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing. 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 8.32 at 262-68 (4th ed. 2002). The notice must also indicate an opportunity to opt out, that the judgment will bind all class members who do not opt out, and that any member who does not opt out may appear through counsel. Fed. R. Civ. P. 23(c)(2).

Here, Plaintiffs request approval of the proposed "Official Notice of Pendency of Class Action and Proposed Settlement" (the "Notice"). (Kellner Decl., Exhibit "D".) The Notice meets all of the requirements of Rule 23(e) -- it identifies

---

[4] While Plaintiffs' Complaint also seeks injunctive relief, certification for settlement purposes pursuant to Rule 23(b)(2) is inappropriate for this action because the Complaint sought individual damages for the plaintiffs. *See Besinga v. United States*, 923 F.2d 133, 135 (9th Cir. 1991) ("Where individual damages are sought, generally a class action must be certified under 23(b)(3)"). Therefore, the heightened notice requirements pursuant to Rule 23(c)(2) for classes certified under 23(b)(3) must be met. *Eisen v. Carlisle & Jacqueline*, 417 U.S. at 173-174.

the Plaintiffs and the Defendant, and describes the lawsuit and the settlement Class in a straightforward manner; it succinctly describes the essential terms of the settlement, and identifies all parties whose against whom claims are being released; it provides Class Members with information on how to opt-out of the Class and provides all applicable deadlines for such action; and it informs Class Members that if they do not exclude themselves from the Class, and the settlement is approved, they will be bound by the resulting judgment. In addition, the Notice instructs Class Members to contact Class Counsel to obtain more detailed information and provides information regarding counsel's fee and expense application. In short, the Notice will provide the necessary information for Class Members to make an informed decision regarding the proposed settlement.

As a general rule, due process requires individualized notice where the names and addresses of class members "may be ascertained through reasonable effort" [*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173, 177 (1974)], and "is appropriate, for example, if class members are required to take action - such as filing claims - to participate in the judgment, or if the court orders a settlement opt-out opportunity under Rule 23(e)(3)." *See* Fed. Rules Civ. Proc. R. 23(e)(1) (Committee Note of 2003).

The Settlement Agreement provides that AOL will serve as Settlement Administrator under the supervision of the Hon. Dickran M. Tevrizian, who shall function as the Settlement Arbitrator. As Settlement Administrator, AOL will be responsible for communicating to the Settlement Class via e-mail the Official Notice of Pendency of Class Action and Proposed Revised Settlement, the Final Order and Judgment, and the notices contemplated by the settlement agreement regarding the existence of the footers and the opt-out policy in the event AOL elects to re-establish its former footer practice. AOL will also handle returned e-mail not delivered and will provide Settlement Class Counsel with copies of objections, notices of intention

to appear, and requests for exclusion from the Settlement Class. The Settlement Agreement details the protocol for implementing the settlement and notifying the Settlement Class. (Kellner Decl., Exhibit B, ¶¶ 8-24).

The Settlement Agreement contemplates that any notice or communication to the Settlement Class will be sent via e-mail. This notice is adequate and "reasonably calculated to reach the members of the class." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Here, the Settlement Class Members are well-suited to receive e-mail notification because the claims relate to e-mail accounts the Class Members have with AOL and because the entire class consists of AOL subscribers with AOL e-mail accounts. These e-mail accounts can be verified by AOL while the Settlement Class Members' mailing addresses, in many instances cannot. *See Farinella v. PayPal, Inc.*, 2009 U.S. Dist. Lexis 41368, *10-11, n. 10 (E.D.N.Y. Apr. 30, 2009) (finding that class members were "uniquely suited" for e-mail notification because "(1) their interactions with defendants have exclusively or predominantly been via e-mail and over the internet and (2) while the e-mail addresses associated with their PayPal accounts have been verified by the defendants, their mailing addresses have not"). Thus e-mail notice is more practical and efficient in this case than notice via U.S. mail.

Additionally, the Settlement provides for a website to be re-established which will also post the Notice approved by this Court. Given that the subject matter of this dispute is solely about activities on the Internet, this two-pronged approach of Internet notification is reasonably calculated to reach each member of the class.

1    **VII.    <u>CONCLUSION</u>**

2        For the foregoing reasons, Plaintiffs respectfully requests that the Court grant

3    preliminary approval of the proposed settlement and enter the Proposed Order for

4    notice and hearing on settlement of class action.

5

6    DATED: July 29, 2013

7                                KABATECK BROWN KELLNER LLP
                                 BRIAN S. KABATECK
8                                RICHARD L. KELLNER

9

10                               By ___/s/ Brian S. Kabateck_____
11                                        Brian S. Kabateck

12                               THE NUNES LAW GROUP
                                 GLENN C. NUNES
13

14

15                               By ___/s/ Glenn C. Nunes_____
                                          Glenn C. Nunes
16

17                               HAMNER LAW OFFICES, APC
                                 CHRISTOPHER J. HAMNER
18

19
                                 By ____/s/ Christopher J. Hamner_____
20                                        Christopher J. Hamner

21

22                               *Attorneys for Plaintiffs and the Proposed Class*

23

24

25

26

27

28