Brian S. Kabateck (State Bar No. 152054)
bsk@kbklawyers.com
Richard L. Kellner (State Bar No. 171416)
rlk@kbklawyers.com
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, CA  90017
Telephone:  213.217.5000
Facsimile:  213.217.5010

Glenn C. Nunes (State Bar No. 210453)
glenn@nuneslawgroup.com
THE NUNES LAW GROUP
1 Sansome Street, Suite 3500
San Francisco, CA  94104
Telephone:  415.946.8894
Facsimile:  415.946.8801

Christopher J. Hamner (State Bar No. 197117)
chamner@hamnerlaw.com
HAMNER LAW OFFICES, APC
555 W. 5th Street, 31st Floor
Los Angeles, CA  90013
Telephone:  213.533.4160
Facsimile:  213.533.4167

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

|  |  |
|---|---|
| DAWN FAIRCHILD, ROBERT NACHSHIN, BRIAN GEERS and LAURENCE GERARD, on behalf of themselves and all other similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> AOL, LLC, a Delaware Limited Liability Company; and DOES 1 through 10 inclusive, <br><br> Defendants. | No. CV 09-03568 CAS (PLAx) <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF REVISED CLASS ACTION SETTLEMENT <br><br> Date:       December 23, 2013 <br> Time:       12:00 p.m. <br> CrtRm:     5 <br><br> Honorable Christina A. Snyder |

601944516v2

Case No. CV 09-03568 CAS (PLAx)
MEMORANDUM OF POINTS & AUTHORITIES I/S/O
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF REVISED
CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

## Contents

I.      INTRODUCTION ........................................................................................ 1

II.     OVERVIEW OF THE ACTION ................................................................ 3

III.    SUMMARY OF THE SETTLEMENT TERMS AND THE DUE
        DILIGENCE INVESTIGATION ............................................................. 4

        A.      The Settlement Class ........................................................................ 4

        B.      The Settlement Relief ...................................................................... 5

        C.      Notice ................................................................................................ 6

        D.      Attorneys' Fees ................................................................................ 7

IV.     THE STANDARD FOR JUDICIAL APPROVAL OF CLASS
        SETTLEMENTS ....................................................................................... 7

        A.      The Court Should Approve the Proposed Revised Settlement .......... 7

        B.      Final Approval is Appropriate Because the Proposed Revised
                Settlement is "Fair, Reasonable and Adequate" .............................. 11

                1.      The Revised Settlement is the Result of Arm's-Length
                        Negotiations ........................................................................ 13

                2.      The Class Received Benefits Through Prospective Relief
                        and Charitable Contributions ............................................. 15

                3.      Class Counsel Performed Sufficient Research and Analysis
                        to Adequately Assess the Revised Settlement and Was
                        Able to Identify the Strengths and Weaknesses of the Case ...... 15

                4.      The Recommendations of Experienced Class Counsel
                        Heavily Favor Approval of the Revised Settlement .................. 16

                5.      The Reaction of the Class Supports Approval of the
                        Revised Settlement .............................................................. 17

V.      CONCLUSION ....................................................................................... 18

i

1

2

# TABLE OF AUTHORITIES

3

## <u>Cases</u>

4

*Amchem Products, Inc. v. Windsor*,
      521 U.S. 591(1997) ...................................................................7

5

6

*Blackie v. Barrack*,
      524 F.2d 891 (9th Cir. 1975)..............................................8, 11

7

8

*Boyd v. Bechtel Corp.*,
      485 F. Supp. 610 (N.D. Cal. 1979) .......................................13

9

10

*Class Plaintiffs v. City of Seattle*,
      955 F.2d 1268 (9th Cir. 1992)...............................................13

11

12

*Cotton v. Hinton*,
      559 F.2d 1326 (5th Cir. 1977)...............................................17

13

*County of Suffolk v. Long Island Lighting Co.*,
      907 F.2d 1295 (2d Cir. 1990)................................................14

14

15

*De La Fuente v.  Stokely - Van Camp, Inc*.,
      713 F.2d 225 (7th Cir. 1983).................................................9

16

*Ellis v. Naval Air Rework Facility*,
      87 F.R.D. 15 (N.D. Cal. 1980), *aff'd without op*.,
      661 F.2d 939 (9th Cir. 1981).................................................12

17

18

*Hanlon v. Chrysler Corp*.,
      150 F.3d 1011 (9th Cir. 1998)...................................... 7, 8, 17

19

20

*Hanon v. Dataproducts Corp*.,
      976 F.2d 497 (9th Cir. 1992)................................................9

21

22

*In re Glassine & Greaseproof Paper Antitrust Litigation*,
      88 F.R.D. 302 (E.D. Pa. 1980) ................................................9

23

*In re Holocaust Victim Assets Litigation*,
      105 F. Supp. 2d 139 (E.D.N.Y. 2000)....................................14

24

25

*In re Lorazepam*,
      205 F.R.D. 369 (D.D.C. 2002) ...................................... 13, 16

26

27

28

ii

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000)................................................................12

*In re NASDAQ Market-Makers Antitrust Litigation*,
    176 F.R.D. 99 (S.D.N.Y. 1997)............................................................14

*In re Pacific Enter. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995)..................................................................12

*In re PaineWebber Ltd. Partnerships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*,
    117 F.3d 721 (2d Cir. 1997).................................................................17

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000)...................................................................7

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir. 1998)..............................................................12

*Longman v. Food Lion, Inc.*,
    Nos. 4:92CV00696, 4:92CV00705, 1994 WL 686624
    (M.D.N.C. Oct. 17, 1994)....................................................................10

*Luevano v. Campbell*,
    93 F.R.D. 68 (D.D.C. 1981) ................................................................16

*Lynch v. Rank*,
    604 F. Supp. 30 (N.D. Cal. 1984) ........................................................10

*Marshall v. Holiday Magic, Inc.*,
    550 F.2d 1173 (9th Cir. 1977)........................................................ 12, 18

*MWS Wire Indus., Inc. v. California Fine Wire Co.*,
    797 F.2d 799 (9th Cir. 1986)................................................................11

*Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .........................................................17

*Officers for Justice v. Civil Service Commission*,
    688 F.2d 615 (9th Cir. 1982), *cert. denied*,
    459 U.S. 1217 (1983) .................................................................... 12, 13

*Pigford v. Glickman*,
    185 F.R.D. 82 (D.D.C. 1999)...............................................................14

601944516v2
iii
Case No. CV 09-03568 CAS (PLAx)
MEMORANDUM OF POINTS & AUTHORITIES I/S/O
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF REVISED
CLASS ACTION SETTLEMENT

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ..........................................................9, 11

*Sala v. National R.R. Passenger Corp.*,
    721 F. Supp. 80 (E.D. Pa. 1989) .............................................................17

*Scholes v. Stone, McGuire & Benjamin*,
    143 F.R.D. 181 (N.D. Ill. 1992) ...............................................................9

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985) .............................................................9

*Smith v. University of Washington Law School*,
    2 F. Supp. 2d 1324 (W.D. Wa. 1998) ......................................................9

*Thomas v. Albright*,
    139 F.3d 227 (D.C. Cir. 1998) ...............................................................11

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ....................................................................12

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ............................................................ 11, 12

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910) ...............................................................................11

*Yamner v. Boich*,
    No. C-92-20597 RPA, 1994 WL 514035
    (N.D. Cal. Sept. 15, 1994) .....................................................................10

## Rules and Regulations

Federal Rule of Civil Procedure
    Rule 23(a) ................................................................................ 7, 8, 10
    Rule 23(a)(2) .........................................................................................8
    Rule 23(b) ............................................................................ 7, 8, 10, 11
    Rule 23(b)(3) .......................................................................................11
    Rule 23(e) ....................................................................................2, 7, 12

## Other Authorities

Manual for Complex Litigation (Third) § 30.42 (1995)...................................16

Moore's Federal Practice § 23.22[1][a] (2013) .................................................8

Newberg on Class Actions § 11.41 ...................................................................16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This motion seeks final approval of a settlement that had previously been finally approved by this Court on December 31, 2009,[1] but was affirmed in part and reversed in part by the Ninth Circuit in an opinion issued on November 21, 2011.  The revised settlement addresses the only ground upon which the Ninth Circuit reversed the granting of final approval – the *cy pres* award.  The revised settlement addresses the *cy pres* issue on which the Ninth Circuit reversed, plus (1) provides disclosures in the settlement notice and revised settlement agreement of the relationship between class representatives and the charities they selected to receive a donation in lieu of an incentive payment; (2) is updated to reflect events that have occurred consistent with the original settlement (*e.g.,* AOL has discontinued its practice of using the e-mail footers at issue, Plaintiffs filed an amended complaint, and attorneys' fees have been paid); and (3) revises the class definition to AOL members as of August 1, 2009, which is the date on or around when AOL discontinued its practice of appending footers to its members' outgoing e-mails.[2]

Notwithstanding the additional work that Class Counsel performed in connection with the appeal and this subsequent approval process, Class Counsel will not be seeking a fee beyond that which had been approved under the original settlement.

---

[1] This Court's December 31, 2009, Final Order Re Approval of Class Action Settlement and Final Judgment (Docket No. 53-3) is attached as Exhibit D to the Declaration of Richard Kellner ("Kellner Decl."), filed concurrently.

[2] A copy of the settlement agreement showing in redline the revisions to the revised settlement agreement from the original version previous approved is attached as Exhibit C to the Kellner Decl.

1

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs respectfully submit this Memorandum of Points & Authorities in support of their motion seeking entry of an Order for Final Approval of the Revised Class Action Settlement.

This class action concerns claims by all AOL members as of August 1, 2009.  During the months following filing of the complaint, all parties expended substantial amounts of time, energy, and resources to investigate and develop their respective positions.  Based on their prosecution of this case and their independent evaluation, Class Counsel is of the opinion that the settlement with AOL is reasonable, fair and adequate.  The settlement is in the best interest of the class in light of known facts and circumstances.  The settlement is the result of arm's-length negotiations between Class Counsel, experienced in complex class actions, and counsel for Defendant AOL Inc., formerly known as AOL, LLC ("AOL").

Pursuant to the proposed revised settlement agreement ("Revised Settlement"), AOL will provide: (i) prospective relief to customers through reformed business practices, and (ii) retrospective relief in the form of substantial charitable donations.  AOL no longer uses the e-mail footers at issue in this action.  Each class member will benefit by the fact that if AOL elects to re-establish its footer practice, it will no longer be able to profit from the offending practice without notifying class members of the footers and their ability to disable them.  Under the terms of the Revised Settlement, AOL will donate $110,000 to five charities.  Recovery will not be diminished in any way by the payment of reasonable attorneys' fees and costs, or the administration of this Revised Settlement.  AOL has already paid Class Counsel's fees separately and will serve as Settlement Administrator at its own expense for purposes of this Revised Settlement.

The proposed Revised Settlement is manifestly fair, reasonable and adequate relief.  It ends AOL's ability, if it elects to re-establish its former footer practice, to profit from intrusive advertisements without first notifying class members and benefits several worthy charities.  These benefits come without the delay and risk associated with complex litigation.  For the above reasons, Plaintiffs respectfully request that the Court grant Final Approval of the Revised Settlement.

## II.   OVERVIEW OF THE ACTION

AOL offers numerous Internet related services on both a free and paid basis.  Plaintiffs and class members obtained internet services through AOL by registering AOL accounts that enabled the account-holders to generate and receive e-mails.  In or around February 2006, AOL began inserting promotional messages as a footer attached to the end of e-mails sent by paying and non-paying subscribers to AOL's e-mail service.  At first, these footers promoted AOL's own products and services.  Beginning in October 2008, the footers began to display promotional materials from third party advertisers. (Declaration of Richard L. Kellner ("Kellner Decl."), Ex. A, pp. 9:16-10:21.) Discovery has revealed that AOL generated approximately $1.1 million in revenue from this practice.  (*Id.* at pp. 37:6-8.)

AOL did not disclose in its terms of service that it would place the footers on subscriber e-mails.  Moreover, until April 2008, AOL did not provide a method to discontinue the ad placements.  (*Id*. at pp. 22:10-24:3.) After that time, a paid subscriber could contact AOL and request that AOL stop inserting the footers at the bottom of that subscriber's e-mail.  (*Id*.)  AOL, however, never notified paid subscribers of its new policy.  (*Id*. at pp. 24:7-26:3.)

After extensive, arm's-length negotiations under the auspices of retired United States District Court Judge Dickran M. Tevrizian, and following substantial factual investigation and legal analysis of the claims and defenses of the parties, the parties reached a proposed settlement as set forth in the original settlement agreement.  This Court granted final approval of the original settlement on December 31, 2009.  On November 21, 2011, the Ninth Circuit affirmed in part and reversed in part, reversing only the *cy press* recipients.

On August 26, 2013, the parties appeared for Preliminary Approval of the Revised Class Action Settlement and concomitant notice plan.  On September 4, 2013, the Court preliminarily approved the Revised Settlement, certified the class for purposes of the Revised Settlement, and approved the proposed method of giving notice.  On or about September 10, 2013, AOL provided notice via e-mail to all class members.  Notice was sent to each class members' AOL e-mail address and the period for opting out or objecting to the settlement expires on the date this Motion is filed (December 9, 2013).

## III.    SUMMARY OF THE SETTLEMENT TERMS AND THE DUE DILIGENCE INVESTIGATION

The following is only a summary of the Revised Settlement.  The full text of the Revised Settlement, and its accompanying exhibits, are attached as Exhibit B to the Declaration of Richard L. Kellner in support of Plaintiffs' Motion for Final Approval and are incorporated herein by this reference.  Undefined capitalized terms have the meanings described in the Revised Settlement.

### A.    The Settlement Class

The Revised Settlement provides for the certification of a settlement class defined as: All AOL members as of August 1, 2009, which is the date on

601944516v2

4

Case No. CV 09-03568 CAS (PLAx)
MEMORANDUM OF POINTS & AUTHORITIES I/S/O
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF REVISED
CLASS ACTION SETTLEMENT

or around when AOL discontinued its practice of appending footers to its members' outgoing e-mails ("Class," "Settlement Class" or "Class Members").

## B.   The Settlement Relief

Since the original settlement previously approved by this Court, AOL has discontinued the practice of appending e-mail footers.  Under the Revised Settlement, if AOL elects to re-establish its practice of appending footers onto subscribers' outgoing e-mails, AOL will send notice to all Class Members of the existence of the footers and their ability to remove them from future e-mails.  Further, if AOL re-establishes this practice, AOL will inform all future subscribers of the existence of the e-mail footers either as part of registering for an AOL account or as part of an e-mail confirming registration of an AOL account.

The Revised Settlement also provides that AOL will donate $37,500 each to two charitable organizations: (1) the Electronic Frontier Foundation and (2) the Information Technology & Innovation Foundation. These entities are specifically chosen because they meet the criteria set out by the Ninth Circuit in that they: (1) have no relation to any Party; (2) focus upon information technology and Internet related issues which address the objective of the statutes underlying the litigation; (3) are not local charities, but rather account for the broad geographic distribution of the Class; and (4) are likely to benefit the Class of over 60 million Internet users.  (Kellner Decl., Ex. B, ¶ 23.)

In addition, a total of $35,000 will be donated to charities chosen by the four settlement class representatives, who will not be receiving any incentive payment.  (Kellner Decl., Ex. B, ¶ 24.)  Dawn Fairchild and Robert Nachshin both designated the New Roads School of Santa Monica.  Brian Geers

601944516v2

5

Case No. CV 09-03568 CAS (PLAx)
MEMORANDUM OF POINTS & AUTHORITIES I/S/O
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF REVISED
CLASS ACTION SETTLEMENT

designated the Oklahoma Indian Legal Services.  Laurence Gerard designated the Friars Foundation.  (*Id.*)  Each class representative's relationship with the charity they selected to receive a donation is disclosed in the Notice and the Revised Settlement.[3]

These donations total $110,000 and are to be disbursed within 30 days after entry of final approval.

Individual Class Members were not compelled to take affirmative steps to avail themselves of the proposed Revised Settlement.  The Notice to the Class provided clear and detailed instructions to enable dissenters to exclude themselves from, object to, or appear in opposition to the content of the Revised Settlement.

### C.    Notice

As Settlement Administrator, AOL assumed primary responsibility for directing Notice to the Class Members and handling any undelivered e-mail or responses.  Notice was sent to the AOL e-mail addresses of all AOL members as of August 1, 2009.  Additionally, AOL and Class Counsel established websites designed to inform Class Members of their rights and responsibilities vis-à-vis the Revised Settlement (www.aole-mailfootersettlement.com).  On this website Class Members could access copies of the Notice and the Revised Settlement Agreement.  AOL also provided a list of frequently asked questions and their answers ("FAQs"), which could be accessed online at http://emailfooternotice.com.  AOL notified Class Members of these online FAQs and where to access them in the Notice.  This multi-pronged Internet-

---

[3] The relationships between the class representatives and their selected charities are as follows: (1) Ms. Fairchild is employed at her designated charity the New Roads School of Santa Monica; (2) Mr. Nachshin's wife is on the Board of Trustees of his designated charity the New Roads School of Santa Monica, (3) Mr. Geers has previously personally supported his designated charity the Oklahoma Indian Legal Services; and (4) Mr. Gerard has previously worked at his designated charity the Friars Foundation.  (Kellner Decl., Ex. Ex. B, ¶ 24.)

6

based approach was reasonably calculated to reach each Class Member, and was substantially successful in doing so.

### D.     Attorneys' Fees

Plaintiffs' Counsel has been awarded and paid the following attorneys' fees and costs under the original settlement agreement: $160,000 for Kabateck Brown Kellner LLP and $160,000 to be shared between the Nunes Law Group and the Hamner Law Offices.  (Kellner Decl., Ex. B, ¶¶ 26-27.) The Parties agree that there will be no additional request for attorneys' fees or costs.  (*Id.*)

## IV.    THE STANDARD FOR JUDICIAL APPROVAL OF CLASS SETTLEMENTS

Federal Rule of Civil Procedure, 23(e) requires court approval of any settlement that effects the dismissal of a class action.  Settlement agreements reached before class certification must be reviewed both as to the requirements for class certification and fairness of the settlement.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621-22 (1997).  First, the district court must determine whether a certifiable class exists.  *Id*.  Then, "the district court [must] determine that a class action settlement is fair, adequate, and reasonable." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).

### A.     The Court Should Approve the Proposed Revised Settlement

Certification of the class is appropriate here.  The usual standards for Rule 23(a) and (b) certification apply in the settlement context, with the exception of possible problems of trial management with respect to the settling defendant, which are not to be considered, since the settled case will not be tried.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621-22 (1997).

1   A class action is to be certified where, as here, the class satisfies the

2   four prerequisites of Rule 23(a), as well as one of the three subsections of Rule

3   23(b).  This case fully meets the requirements of Rule 23(a):

4   **Numerosity:** There is no issue of numerosity in the present case, since

5   the class numbers in the tens of millions.  *See generally*, 5 Moore, Moore's

6   Federal Practice § 23.22[1][a] (2013) (modern trend is that twenty-one or

7   fewer plaintiffs will be insufficient, between twenty-one and forty plaintiffs

8   will receive a mixed response, and with more than forty plaintiffs the courts

9   generally find that the requirement of numerosity has been met).

10   **Commonality:**  The second prerequisite to class certification is the

11   existence of questions of law or fact common to the class.  Fed. R. Civ. P.

12   23(a)(2).  The Ninth Circuit has made clear that the commonality requirement

13   is to be "construed permissively."  *Hanlon*, 150 F.3d at 1019.  Commonality

14   can be established by showing "that the class is united by a common interest."

15   *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)  (holding, "[S]light

16   differences in class members' positions" will not defeat commonality).  The

17   existence of "shared legal issues" will satisfy the commonality requirement,

18   even if there are "divergent factual predicates."  *Hanlon*, 150 F.3d at 1019-20.

19   Commonality is established where the proposed class' claims stem from the

20   same source.  *Id.*

21   The overarching and unifying allegations in this action are the same:

22   (i) AOL placed promotional messages in the form of e-mail footers into

23   outgoing e-mail messages and failed to notify subscribers of their existence;

24   (ii) AOL lacked procedures by which customers could prevent this; and (iii)

25   when implemented, AOL failed to notify its customers of their ability to opt-

26   out.

27

28

8

**Typicality:**  A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."  *De La Fuente v.  Stokely-Van Camp, Inc*., 713 F.2d 225, 232 (7th Cir. 1983).  Slight factual distinctions between the named plaintiff and the claims of absent class members do not undermine typicality.  *In re Glassine & Greaseproof Paper Antitrust Litig.*, 88 F.R.D. 302, 304 (E.D. Pa. 1980).  Rather, courts focus on the defendants' conduct and the plaintiff's legal theory.  *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually satisfied, irrespective of varying fact patterns which underlie individual claims.  *Smith v. Univ. of Washington Law School*, 2 F. Supp. 2d 1324, 1342 (W.D. Wa. 1998) (stating, "[t]ypicality turns on the defendant's actions toward the plaintiff class, not particularized defenses against individual class members.").  Furthermore, the test for typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.  *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  The typicality requirement is liberally construed.  *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

In this case, the claims of the representative Plaintiffs arise from AOL's allegedly wrongful insertion of promotional footers into subscriber e-mails, and AOL's failure to provide adequate notice to the Class Members on how to opt-out from having such footers added.  Plaintiffs assert the same legal claims

1   on behalf of themselves and the proposed Class.  They claim that AOL
2   violated several state and federal laws by this common practice, and that AOL
3   was unjustly enriched as a result.  Therefore, Plaintiffs' claims are certainly
4   typical of the claims of the other members of the Class.

5   **Adequacy**:  The final requirement of Rule 23(a) is that the
6   representative plaintiff fairly and adequately represents the interests of the
7   class.  Adequacy of the representation requires that the named representative's
8   attorney be qualified, experienced and generally capable to conduct the
9   litigation, and that the named representative's interests not be antagonistic to
10  the interests of the class.  *Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984).

11  Adequacy of representation does not require the representative plaintiff
12  to "possess encyclopedic knowledge of the legal theories supporting a class'
13  claims."  *Longman v. Food Lion, Inc*., Nos. 4:92CV00696, 4:92CV00705,
14  1994 WL 686624, at *3 (M.D.N.C. Oct. 17, 1994).  Rather, a plaintiff is an
15  adequate class representative if he or she "has a basic understanding of the
16  allegations in [the] case."  *Yamner v. Boich*, No. C-92-20597 RPA, 1994 WL
17  514035, at *7 (N.D. Cal. Sept. 15, 1994).

18  Here, the interests of the representative Plaintiffs are not antagonistic to
19  the Class because they are all similarly interested in obtaining prompt and
20  valuable relief from AOL and ensuring that similar conduct does not happen in
21  the future.  Plaintiffs have a genuine interest in the litigation and a basic
22  understanding of the allegations in this case.  Additionally, Plaintiffs are
23  represented by counsel who are highly qualified in class action litigation.
24  (Kellner Decl., ¶ 9, Exs. E at ¶¶ 21-23, D at ¶¶ 13-15.)  Therefore, the
25  proposed Class meets the adequacy of representation requirement.

26  **Rule 23(b):**  Once the four prerequisites of Rule 23(a) are met, as they
27  are in this case, the potential class must also satisfy at least one provision of

28

Rule 23(b).  *Thomas v. Albright,* 139 F.3d 227, 234 (D.C. Cir. 1998); *see also Rosario,* 963 F.2d at 1017.  Pursuant to Rule 23(b)(3), certification is proper when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  These requirements are satisfied here.

The questions of law and fact common to all class members are set forth above.  These common issues predominate over any individual issues such as the nature and extent of damages.  *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment.").  Indeed, the underlying former AOL practice of inserting promotional material into the footers of Class Members' outgoing e-mail is the central issue that predominates this class action.  The damages issues in this case are easily manageable because Plaintiffs are not seeking individual recovery, but rather securing a permanent change in AOL's conduct and policies as well as several charitable donations.

Additionally, a class action is clearly superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all Class Members would be impracticable.

## B.   Final Approval is Appropriate Because the Proposed Revised Settlement is "Fair, Reasonable and Adequate"

The "overriding public interest in settling and quieting litigation" is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted).  Without question, "[c]ompromises of disputed claims are favored by the courts."  *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *see also*, *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986); *Officers for Justice v.*

*Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983) ("[v]oluntary conciliation and settlement are the preferred means of dispute resolution.").  Class actions are particularly amenable to settlement because of the uncertainties of the outcome, the difficulty of proof and the typical length of litigation.  *Van Bronkhorst*, 529 F.2d at 443.

Under Federal Rule of Civil Procedure 23(e), a court should approve the settlement of a class action if it is "fundamentally fair, adequate and reasonable."  *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995); *see also Officers for Justice,* 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

The authority to approve a class settlement is committed to the sound discretion of the trial court.  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd without op.*, 661 F.2d 939 (9th Cir. 1981).  The Ninth Circuit has prescribed a non-exhaustive list of relevant factors that a trial court may consider in evaluating the fairness of a class action settlement, which includes the following:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Torrisi*, 8 F.3d at 1375).

While the district court exercises discretion in approving a settlement, the court's evaluation of a proposed class settlement "must be limited to the

12

extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice,* 688 F.2d at 625.  In *Officers for Justice*, the Ninth Circuit further explained:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Id.* (citations omitted).

Moreover, it is well established that "[t]he recommendations of Plaintiffs' Counsel should be given a presumption of reasonableness."  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (citation omitted).

An examination of all of the relevant factors shows that this settlement is fair, adequate and reasonable.

### 1.    The Revised Settlement is the Result of Arm's-Length Negotiations

A proposed settlement is presumed to be fair and reasonable when it is the result of arm's-length negotiations.  *See* Newberg on Class Actions § 11.41)); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Lorazepam*, 205 F.R.D. 369, 375-76 (D.D.C. 2002) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations'") (quoting Manual for Complex Litigation (Third) § 30.42 (1995)); *In re Holocaust Victim Assets*

*Litig.*, 105 F. Supp. 2d 139, 145-46 (E.D.N.Y. 2000) (stating that in determining fairness, the "consideration focuses on the negotiating process by which the settlement was reached").

It is well established that so long as settlement negotiations are conducted at arm's-length by experienced counsel, a "strong initial presumption of fairness attaches to the proposed settlement." *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d at 145-46 (internal citations and quotations omitted); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval should be granted.").

Here, the Revised Settlement is the result of arm's-length negotiations between experienced Class Counsel and counsel for AOL.  Further, settlement negotiations were conducted under the supervision of retired United States District Court Judge Dickran M. Tevrizian.  The Revised Settlement reflects not only the assistance and expertise of Judge Tevrizian, but also his approval. Such extensive involvement of skilled professionals in settlement discussions supports the conclusion that the settlement does not result from collusion.  *See County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323 (2d Cir. 1990); *Pigford v. Glickman*, 185 F.R.D. 82, 101 (D.D.C. 1999) (finding no evidence of collusion between counsel due to presence of a neutral and detached mediator at all settlement negotiations).

In short, nothing in the negotiations or the substance of the Revised Settlement gives reason to doubt its fairness.

601944516v2

14

Case No. CV 09-03568 CAS (PLAx)
MEMORANDUM OF POINTS & AUTHORITIES I/S/O
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF REVISED
CLASS ACTION SETTLEMENT

### 2.     The Class Received Benefits Through Prospective Relief and Charitable Contributions

Since the original settlement approved by this Court, AOL discontinued its footer practice.  Through this Revised Settlement, AOL has agreed to change it business practice so that if it elects to re-establish its footer practice it will no longer be able to profit from intrusive e-mail footer advertisements without notifying Class Members of such footers and the ability to disable them.  Further if AOL elects to re-establish its footer practice, it will give the same notice and instructions regarding disabling the footers to every new subscriber.

In addition to the prospective relief, AOL will donate $110,000 to several worthy charities as recompense for its allegedly wrongful conduct and the alleged profits it unjustly obtained from third party advertisers.  The parties agreed to a settlement based on prospective relief because even if the Class were able to recover the full amount AOL earned from the footer advertisements, the amount due to each Class Member would be much less than the cost to administer the payment.  The evidence shows that AOL received under $2 million in revenue since October 2008 when it began inserting promotional messages from third parties in its subscribers outgoing e-mails.  Even if AOL were to pay the entire $2 million in damages to the Class, each of the Class Members would receive approximately 3 cents, before the costs of administering such a settlement were factored in.

### 3.     Class Counsel Performed Sufficient Research and Analysis to Adequately Assess the Revised Settlement and Was Able to Identify the Strengths and Weaknesses of the Case

This Revised Settlement follows a substantial factual investigation and legal analysis of the claims and defenses of the parties.  Plaintiffs have

1    conducted a comprehensive factual investigation into the matters set forth in

2    the litigation, including an analysis of relevant documents and related data, as

3    well as taking the deposition of Roy Ben-Yousef, the Vice President of AOL

4    responsible for the e-mail footers.  (Kellner Decl., ¶¶ 5-6.)

5        Counsel for Plaintiffs and AOL engaged in numerous formal and

6    informal settlement discussions, including two mediation sessions under the

7    direction of the Hon. Dickran M. Tevrizian (Ret'd).  (Kellner Decl., ¶ 7.)

8    Judge Tevrizian was instrumental facilitating the mutual determination that the

9    proposed Settlement was fair.

10        Based upon the foregoing, Class Counsel has concluded that a

11    settlement according to the terms and conditions set forth in the Revised

12    Settlement is fair, reasonable, adequate, and in the best interest of the Class.

13    (Kellner Decl., ¶¶ 7-8.)  *See In re Lorazepam,* 205 F.R.D. at 377 (citing

14    *Luevano v. Campbell*, 93 F.R.D. 68, 86 (D.D.C. 1981) ("In evaluating the

15    fairness and adequacy of a settlement, it is important to consider whether the

16    settlement was reached after extensive factual development, so that counsel on

17    both sides would have had information sufficient to make a reasonable

18    assessment of their risks of litigation.")).

19        ### 4.    *The Recommendations of Experienced Class Counsel Heavily*

20        *Favor Approval of the Revised Settlement*

21        Class Counsel and counsel for AOL entered into the Revised Settlement

22    after extensive, arduous, arm's-length negotiations following substantial

23    factual investigation and legal analysis of the claims and defenses of the

24    parties.  (Kellner Decl., ¶¶ 5-7.)  Class Counsel endorse the Revised

25    Settlement as fair, reasonable and adequate.

26        "'Great weight' is accorded to the recommendations of counsel, who are

27    most closely acquainted with the facts of the underlying litigation." *Nat'l*

28

*Rural Telecoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation and internal quotations omitted).  "This is because 'parties represented by competent counsel are better positioned than Courts to produce a Settlement that fairly reflects each party's expected outcome in the litigation.'"  *Id.* (citations omitted).  Moreover, absent fraud or collusion, the Court "should be hesitant to substitute its own judgment for that of counsel." *Id.* at 582 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

Counsel reached the Revised Settlement terms based upon the evaluation of information received from AOL, the independent investigation performed by Plaintiffs and the evaluation of the risks of proceeding forward. In sum, the terms of the Revised Settlement were fairly, honestly and aggressively negotiated by all parties in good faith and at arm's-length.

### 5. The Reaction of the Class Supports Approval of the Revised Settlement

It is well settled that "the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989).  In fact, the lack of objections may well evidence the fairness of the settlement. *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Out of the over sixty million Class Members who received notice, as of December 5, 2013, there are only five objections to the Revised Settlement.[4] This is strong evidence that this Revised Settlement is fair, reasonable, and adequate.  *Hanlon,* 150 F.3d at 1027 ("the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at

---

[4] The last day to file an objection is the date this Motion is filed: December 9, 2013.

601944516v2

17

Case No. CV 09-03568 CAS (PLAx)
MEMORANDUM OF POINTS & AUTHORITIES I/S/O
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF REVISED
CLASS ACTION SETTLEMENT

least some objective positive commentary as to its fairness"); *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977) ("the small number of class members indicating their disapproval of the settlement, here only one percent, also indicates its acceptability.").

As elaborated in a separate pleading by AOL to address the arguments raised by the few objectors, the paucity of the objections – both in number and in substance – further supports approval of this Revised Settlement.  Simply put, this is an acceptable settlement for the Class.

## V.    CONCLUSION

Based upon the foregoing, this Revised Settlement merits final approval.  Plaintiffs respectfully request that this Court enter an Order finally approving the Revised Class Action Settlement and grant such other and further relief as this Court deems just and proper.

Dated:  December 9, 2013            KABATECK BROWN KELLNER, LLP
                                    BRIAN S. KABATECK
                                    RICHARD L. KELLNER

                                    By:    /s/ Richard L. Kellner
                                            Richard L. Kellner
                                    *Attorneys for Plaintiffs and the Settlement Class*

Dated:  December 9, 2013            THE NUNES LAW GROUP
                                    GLENN C. NUNES

                                    By:    /s/ Glenn C. Nunes
                                            Glenn C. Nunes
                                    *Attorneys for Plaintiffs and the Settlement Class*

Dated:  December 9, 2013            HAMNER LAW OFFICES, APC
                                    CHRISTOPHER J. HAMNER

                                    By:    /s/ Christopher J. Hamner
                                            Christopher J. Hamner
                                    *Attorneys for Plaintiffs and the Settlement Class*